Kelly M. Dermody (Cal. Bar No. 171716)
Jahan C. Sagafi (Cal. Bar No. 224887)
Marc A. Pilotin (Cal. Bar No. 266369)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
E-Mail: kdermody@lchb.com
E-Mail: jsagafi@lchb.com
E-Mail: mpilotin@lchb.com
[additional attorneys on signature page]

*Attorneys for Plaintiffs and proposed Class Members*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ERIC BENEDICT, RICHARD BOWDERS, and KILRICANOS VIEIRA, on behalf of themselves and classes of those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> HEWLETT-PACKARD COMPANY, <br><br> Defendant. | Case No. C 13-0113 LHK <br><br> **PLAINTIFF ERIC BENEDICT'S MOTION FOR RULE 11 SANCTIONS AGAINST DEFENDANT HEWLETT-PACKARD COMPANY AND ITS COUNSEL** <br><br> Date: November 21, 2013 <br> Time: 1:30 p.m. <br> Courtroom: 8, 4th Floor <br> Judge: The Honorable Lucy H. Koh |
| HEWLETT-PACKARD COMPANY, <br><br> Counterclaimant, <br><br> v. <br><br> ERIC BENEDICT, <br><br> Counterdefendant. | |

1

## TABLE OF CONTENTS

2

**Page**

3  NOTICE OF MOTION AND MOTION ........................................................................................ 1

4  I.  INTRODUCTION .................................................................................................................. 2

5  II.  FACTUAL BACKGROUND .................................................................................................. 4

6  A.  Mr. Benedict Notified HP Regarding Disputed Material In Order To Discuss Its
    Orderly Return To HP. ................................................................................................ 4

7

8  B.  After Being Alerted To The Existence Of Imaged Material, HP Refused To Meet and
    Confer About Its Return or To Provide Authority and Evidence To Support Its
    Assertion That Mr. Benedict Had No Further Property Rights In Non-HP Material.

9  ...................................................................................................................................... 5

10  C.  HP Filed a Premature TRO Motion Unsupported by Evidence of Imminent Harm. .... 7

11  D.  HP Refused to Provide Mr. Benedict with Good Faith Bases for its Proposed
    Counterclaims. ............................................................................................................ 8

12

13  E.  HP Filed Its Original Counterclaims Without Basis Or Good Faith Investigation. .... 10

14  F.  Without Foundation, HP Has Filed Amended Counterclaims That Fail To Cure The
    Same Fundamental Flaws In The Original Set. ......................................................... 11

15  III.  ARGUMENT ....................................................................................................................... 12

16  A.  HP's Factual Contentions Lack Evidentiary Support. ............................................... 12

17  B.  HP's Counterclaims Are Not Warranted By Existing Law. ....................................... 14

18  C.  At This Point, HP's Conduct Can Only Be Interpreted as Being Brought for an
    Improper Purpose, Such As Harassment Of or Retaliation Against Mr. Benedict
19  for Filing a Claim Against HP. .................................................................................. 15

20  IV.  CONCLUSION .................................................................................................................... 17

21

22

23

24

25

26

27

28

1125292.3

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Am. Fire Protection Serv. v. Williams*,
171 Cal. App. 2d 397 (1959) ....................................................................................... 9

*Bramalea Cal., Inc. v. Reliable Interiors, Inc.*,
119 Cal. App. 4th 468 (2004) .................................................................................... 14

*Cal. Packing Corp. v. Stone*,
64 Cal. App. 488 ......................................................................................................... 14

*Copple v. Astrella & Rice, P.C.*,
442 F. Supp. 2d 829 (N.D. Cal. 2006) ....................................................................... 12

*Davis v. Air Tech. Indus.*,
22 Cal. 3d 1 (1978) ...................................................................................................... 8

*Holgate v. Baldwin*,
425 F.3d 671 (9th Cir. 2005) ............................................................................... 11, 13

*Hudson v. Moore Business Forms*,
836 F.2d 1156 (9th Cir. 1987) .................................................................................... 15

*Huetting & Schromm, Inc. v. Landscape Contractors Council*,
790 F.2d 1421 (9th Cir. 1986) .................................................................................... 15

*John Hancock Mut. Life Ins. Co. v. Sester*,
42 Cal. App. 4th 1524 (1996) ...................................................................................... 9

*Kendrick v. Zanides*,
609 F. Supp. 1162 (N.D. Cal. 1985) ........................................................................... 12

*KinderStart.com, LLC v. Google Inc.*,
Case No. C 06-2057 JF (RS), 2007 U.S. Dist. LEXIS 22648 (N.D. Cal. Mar. 16, 2007) ......... 12

*Marcavage v. City of N.Y.*,
689 F.3d 98 (9th Cir. 2012) ......................................................................................... 9

*Scripps Health v. Marin*,
72 Cal. App. 4th 324 (1999) ......................................................................................... 9

*Shum v. Intel Corp.*,
630 F. Supp. 2d 1063 (N.D. Cal. 2009) ...................................................................... 14

*Terran v. Kaplan*,
109 F.3d 1428 (9th Cir. 1997) ............................................................................... 12, 13

*Townsend v. Holman Consulting Grp.*,
929 F.2d 1358 (9th Cir. 1990) .................................................................................... 14

*W. Coast Theater Corp. v. City of Portland*,
897 F.2d 1519 (9th Cir. 1990) .............................................................................. 12, 13

1125292.3

*Xerox Corp. v. A & M Printing*,
   Case No. CV 12-00043 MMM (Ex), 2013 U.S. Dist. LEXIS 74179 (C.D. Cal. May 20, 2013)
   ............................................................................................................................... 14

**Statutes**

Cal. Civ. Proc. Code § 1021................................................................................................. 8

**Rules**

Fed. R. Civ. P. 11(b)(1)-(3).................................................................................. 11, 13, 15

1

**NOTICE OF MOTION AND MOTION**

2          PLEASE TAKE NOTICE, on November 21, 2013 at 1:30 p.m., or as soon as practicable

3   thereafter, before the Honorable Lucy H. Koh in Courtroom 8 of the United States District Court

4   for the Northern District of California – San Jose Division, Plaintiff-Counterdefendant Eric

5   Benedict will move the Court to impose sanctions on Defendant-Counterclaimant Hewlett-

6   Packard Company and its counsel for violating Federal Rule of Civil Procedure 11 in connection

7   with HP's filing of its First Amended Counterclaims ("Amended Counterclaims" or "FACC")

8   against him.

9          This motion is based on this Notice of Motion and Motion, the supporting Memorandum

10  of Points and Authorities, the accompanying Declaration of Jahan C. Sagafi, any papers filed in

11  response, the argument of counsel, and all papers and records on file in this matter.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **I.      INTRODUCTION**

2           Despite Plaintiff Eric Benedict's consistent efforts to cooperate with Defendant Hewlett-

3   Packard Company ("HP"), HP insists on suing him to get a remedy it is already receiving through

4   Mr. Benedict's voluntary cooperation.  After filing deficient counterclaims two months ago, HP

5   has now filed amended counterclaims for breach of contract and replevin, which suffer from the

6   same serious flaws as the original frivolous pleading.  It is becoming clear that HP is not sincerely

7   interested in an orderly return of material, but instead desires to prolong unnecessary satellite

8   litigation and harass Mr. Benedict.

9           The backdrop to this story is well documented.  Like countless other employers, HP

10  supplied its employees, including Mr. Benedict, with a laptop on which he was expected to

11  perform work remotely.  As he carried this laptop with him outside of business hours as part of

12  his normal job responsibilities, Mr. Benedict stored both work documents and personal materials

13  on it.  When he left HP, he wanted to be sure to collect all the personal material he maintained on

14  his company-issued laptop.  Accordingly, he imaged the laptop hard drive to ensure he captured

15  his personal material.  Mr. Benedict has kept those documents to himself and not shared them

16  with anyone, except his attorneys at Lieff, Cabraser, Heimann & Bernstein ("LCHB Attorneys").

17  In turn, his LCHB Attorneys provided the documents to two data analysis vendors solely for the

18  purpose of returning the documents to HP after HP expressed a preference that Mr. Benedict not

19  segregate and return the documents himself, but use such a vendor.

20          As the Court is aware, when Mr. Benedict's counsel learned about the nature of those

21  documents, they notified HP to discuss how to handle the documents.  HP requested that Mr.

22  Benedict return everything that had been imaged.  Mr. Benedict's counsel noted that some of the

23  material constituted Mr. Benedict's co-mingled personal property and attempted to agree on a

24  process by which Mr. Benedict could return any HP documents to HP, while keeping his personal

25  documents.  Since then, the parties have moved forward with the segregation process, stipulating

26  to a four-page protocol to guide the vendor's return of the parties' respective material.

27  Declaration of Jahan C. Sagafi ("Sagafi Decl.") ¶ 14.

28          Throughout this process, Mr. Benedict has consistently agreed that he will return material

- 2 -

1125292.3

1   in which HP asserts a property interest ("Disputed Material").  As the Court noted at the May 29,

2   2013 Case Management Conference ("CMC"), Mr. Benedict deposited the imaged HP hard drive

3   in his possession with a neutral third-party vendor.  Sagafi Decl., Ex. J, at 30:3-31:13 (May 29,

4   2013 CMC Tr.).  Since May 21, 2013, Mr. Benedict has relinquished control of any devices in his

5   possession that he knows to contain Disputed Material, and has confirmed that he has done so in a

6   sworn written statement confirmed by deposition testimony.  Declaration of Eric Benedict

7   ("Benedict Decl.") ¶ 4 (Dkt. No. 56); Sagafi Decl., Ex. I at 24:14-19, 25:14-23 (relevant excerpts

8   of transcript of July 15, 2013 deposition of Eric Benedict).

9          Despite these facts and the sworn testimony Mr. Benedict gave during a special two-hour

10   deposition -- at which he confirmed he did not disclose any Disputed Material to anyone other

11   than his LCHB Attorneys -- HP insists on asserting new and amended counterclaims against him

12   based on unsubstantiated assertions.  HP's current iteration of counterclaims includes the

13   following frivolous allegations:

14   • HP asserts, "Counter-Defendant either held concurrent employment
       while employed with HP or left HP for a company that, like HP is
15     involved in Enterprise Security products, and he performs
       substantially similar work for his current employer as he performed
16     for HP."  HP 1st Am. Counterclaim ("FACC") ¶ 29 (emphasis
       added).[1]  This is patently false.  As HP's counsel knows (having
17     been provided the identity of Mr. Benedict's employer), Mr.
       Benedict's employer is not "involved in Enterprise Security," but
18     rather specializes in webcasting.

19   • HP alleges, "Although the Imaged Drive and certain other devices
       containing HP property have been provided to a third-party vendor,
20     Counter-Defendant (including through his counsel) has delayed and
       impaired the timely return of HP's property and HP's ability to
21     access it property directly."  Id. ¶ 34.  This is fantasy.  Mr. Benedict
       has not "delayed" or "impaired" the return of any Disputed
22     Material, a process to which he has consistently agreed.  The parties
       are now proceeding with the segregation process, pursuant to the
23     Court's May 10, 2013 Order (Dkt. No. 49), the parties' May 10,
       2013 Joint Report (Dkt. No. 50), the Court's May 30, 2013 Order
24     (Dkt. No. 60), and the parties' August 2, 2013 Supplemental
       Stipulation (Dkt. No. 92). To the extent that HP bases its claim of
25     delay on the ongoing Court-approved process, such claim is

26   _____

27   [1] HP explains that "Enterprise Security" relates to "security management" for various entities
    "seeking to safeguard their trade secrets and confidential consumer data for which they may have
    stringent legal obligations to protect."  FACC ¶ 9; *see also* Decl. of Lydia Lim in Support of *Ex*
28   *Parte Notice* for Appl. for Mots. ("Lim Decl.") ¶¶ 2-3 (Dkt. No. 45) (explaining "HP's Enterprise
    Security products").

1    patently in bad faith.

2    Further, HP has no evidentiary basis to support its allegation that it has suffered harm and

3    damages in the forms of "lost profits, unjust enrichment, and/or reasonable royalties."  FACC

4    ¶ 35; *id.* at 34 (seeking "nominal or compensatory damages, lost profits, restitution, and/or

5    royalties").  Mr. Benedict confirmed in a May 21, 2013 declaration and at his July 15 deposition

6    that he has not shared any information with anyone other than his attorneys and has provided such

7    information to a vendor HP identified, all at Mr. Benedict's expense.  Benedict Decl. ¶ 4; Thus,

8    HP cannot have suffered harm or damages.

9        HP's insistence on asserting ill-founded counterclaims against Mr. Benedict, despite

10   already being given fair warning about the problems associated with filing first and investigating

11   later, serves only to highlight HP's ongoing effort to harass a former employee seeking to

12   vindicate his rights, unnecessarily delay this litigation, and deplete needlessly Mr. Benedict's and

13   the Court's resources.  This conduct violates Rule 11 of the Federal Rules of Civil Procedure.

14   Sanctions against HP and its counsel are warranted.

15   **II.**    **FACTUAL BACKGROUND**

16       Mr. Benedict recounts much of the chronology of the parties' interactions regarding the

17   Disputed Material in his Opposition to HP's *Ex Parte* Motion for a Temporary Restraining Order,

18   etc. (Dkt. No. 47).  Below, Mr. Benedict summarizes and supplements that chronology as

19   necessary to provide context.

20       **A.**    **Mr. Benedict Notified HP Regarding Disputed Material In Order To Discuss Its Orderly Return To HP.**

21        On Friday, May 3, 2013, Mr. Benedict's counsel notified HP by letter that Mr. Benedict

22   had retained an image of the hard drive of his HP-issued laptop.  Sagafi Decl. ¶ 5.  Mr. Benedict's

23   counsel assured HP that Mr. Benedict "has not shared any HP Property with anyone besides

24   LCHB's attorneys."  *Id.*, Ex. A at 1.  Mr. Benedict's counsel also promised that Mr. Benedict

25   would "return to HP all documents, electronic or otherwise, that appear to constitute HP

26   Property."  *Id.* at 2.  Mr. Benedict's counsel also advised, "We look forward to working with you

27

28

PLAINTIFF ERIC BENEDICT'S MOT. FOR RULE 11
SANCTIONS AGAINST DEF. HEWLETT-PACKARD
CASE NO. C 13-0113 LHK

1125292.3

1   productively to resolve this issue." *Id.* at 3.[2]

2       **B.    After Being Alerted To The Existence Of Imaged Material, HP Refused To
              Meet and Confer About Its Return or To Provide Authority and Evidence To
3             Support Its Assertion That Mr. Benedict Had No Further Property Rights In
              Non-HP Material.**

4

5           After Mr. Benedict's counsel alerted HP's counsel that Mr. Benedict had retained an

6   image of his HP-issued laptop, HP refused to cooperate in a plan for segregating and returning

7   Disputed Material to HP.  Instead, HP's counsel emailed a few hours later (at 4:02 p.m. on May

8   3):

9       •   "[W]e demand that you return the entire image of Plaintiff's HP
            issued laptop hard drive NOW and all copies thereof.  You should
10          retain nothing."

11      •   "The fact that your client intermingled his personal information on
            HP's system is not HP's problem.  He has waived any right to
12          privacy with regard to it."

13  Sagafi Decl., Ex. B at 2.

14          When Mr. Benedict's counsel emailed requesting further support for HP's position, and

15  noting that HP had failed to cite any law or facts to support an argument that (a) Mr. Benedict

16  waived his constitutional right to privacy in the personal material stored on the laptop, (b) Mr.

17  Benedict had lost his property interest in his own data, or (c) Mr. Benedict was required to

18  immediately provide his data to HP in discovery, (at 4:38 p.m.), HP's counsel responded, "Figure

19  it out."  Sagafi Decl., Ex. B at 1.

20          For the next five days, Mr. Benedict's counsel repeatedly reaffirmed Mr. Benedict's and

21  Mr. Benedict's counsel's commitment to return all Disputed Material, attempted to meet and

22

23  [2] HP conflates the disclosure of the imaged laptop with the unrelated discussion between the
    parties regarding five hardcopy documents that Mr. Benedict provided to his counsel to produce
24  to HP in connection with initial disclosures.  FACC ¶ 33.  The hardcopy document discussion
    arose because of a courtesy call Mr. Benedict's counsel placed to HP counsel on Wednesday,
25  April 17, 2013, to discuss the confidentiality designation of five documents Mr. Benedict
    intended to produce in connection with his Rule 26 disclosures.  Sagafi Decl. ¶ 4.  Mr. Benedict's
26  counsel volunteered to designate the documents "CONFIDENTIAL" if HP so desired, to save HP
    the time of having to re-designate them under the Protective Order should it disagree with the
27  designation.  *Id.*  HP accepted Mr. Benedict's counsel's offer.  *Id.*  When HP later insisted that
    Mr. Benedict return the originals of the five documents, Mr. Benedict did so notwithstanding that
28  he disagreed with HP's position, solely to reduce the disagreements between the parties about a
    satellite issue.  *Id.*

confer regarding how to accomplish this logistically-complicated segregation project, and, to the

extent HP believed that any segregation of the two parties' data was inappropriate, requested legal

authority and facts supporting HP's claims of waiver of Mr. Benedict's privacy and property

interests in his own material:

- May 7:  During the parties' telephone call, Mr. Benedict's counsel reaffirmed Mr. Benedict's desire to return all Disputed Material and requested legal authority supporting HP's argument that no segregation was first required due to waiver of Mr. Benedict's privacy and property interests in his own data.  Sagafi Decl. ¶¶ 7-8.

- May 8 at 9:00 a.m.:  Mr. Benedict's counsel wrote a letter reiterating, "[w]e have consistently agreed with you . . . that Plaintiff shall return non-public information that HP asserts is HP property ('HP Property'). . . .  If you believe that there is an HP policy that Mr. Benedict acknowledged that touches on his reasonable expectation of privacy, please produce it and explain how you believe it affects his privacy rights."  Sagafi Decl., Ex. C at 1-3.

- May 8 at 4:44 p.m.: Mr. Benedict's counsel wrote another letter reassuring you that "the material on the hard drive has not been reviewed, that the hard drive images are secure, and that we are attempting to meet and confer with you to reach a mutually agreeable solution that satisfies both parties' interests."  Mr. Benedict's counsel again requested "all versions of any policy affecting Plaintiff's reasonable expectation of privacy in effect at the time of his employment and Plaintiff's signed acknowledgment of any such policy."  Mr. Benedict's counsel confirmed that they had conveyed the hard drive to a third-party vendor (Teris), in response to HP's earlier proposal that they use a third-party vendor to segregate the data, and to accommodate HP's expressed desire that Mr. Benedict and his counsel not hold any Disputed Material. Sagafi Decl., Ex. D at 1-2.

- May 9, morning: HP wrote Teris, asserting that if it did not return the hard drive to HP, HP reserved "its right to seek any and all available judicial redress as against Teris and any of its agents in concert with it, including but not limited to emergency injunctive relief."  Sagafi Decl., Ex. E at 2.  HP expressly reserved "any claim, right, duty, obligation, defense or objection against Teris or its agents."  *Id.*  That afternoon, Teris returned the hard drive to Mr. Benedict's counsel.  Sagafi Decl. ¶ 10.

- May 9 at 4:48 p.m.: Having retrieved the hard drive from Teris in response to HP's objection to Teris holding the data, Mr. Benedict's counsel emailed HP's counsel to confirm that Mr. Benedict's counsel had retrieved the data from Teris and stating, "I propose that we agree on a meet and confer process to resolve the hard drive issue.  The factual and legal issues have not been fleshed out." Sagafi Decl., Ex. F at 1.

- HP refused to respond to Plaintiff's request for a further discussion on the issue.  Sagafi Decl. ¶ 10.

**C.      HP Filed a Premature TRO Motion Unsupported by Evidence of Imminent Harm.**

On May 9, 2013, seventeen minutes after Mr. Benedict's counsel informed HP that it had retrieved the Disputed Material from third-party vendor Teris (in light of HP's threats of legal action against Teris), HP escalated the issue by serving Mr. Benedict with a surprise motion for a temporary restraining order ("TRO Motion") with proposed counterclaims against him.  Sagafi Decl. ¶ 11.  HP did this despite Mr. Benedict's repeatedly-stated commitment to return (and actions in furtherance of returning) any Disputed Material, and his repeated unsuccessful requests for a meet and confer to understand HP's assertion that he was required to return imaged material containing his own property without first segregating it.  *Id.*  HP served the TRO Motion on the contrived basis that HP was unable to get Mr. Benedict to return the Disputed Material, even though HP knew that Mr. Benedict had relinquished that material to a third-party for that very purpose that same day and that the material was only once again in Mr. Benedict's counsel's possession due to HP's actions forcing the vendor to return it to Mr. Benedict's counsel.  *Id.* ¶ 10.

Before filing the TRO Motion (and since), HP has never provided Mr. Benedict any evidence showing that he had waived his reasonable expectation of privacy or lost his property interests in his own data, or that he was required to immediately turn over devices that contained his personal material.  Sagafi Decl. ¶ 11.

The TRO Motion was unsupported by evidence of immediate and irreparable harm.  Instead, HP merely relied on the Declaration of Lydia Lim, a Director of Technical Support who did not directly supervise Mr. Benedict.  In her declaration, Ms. Lim stated no facts to support her opinions that:

- Mr. Benedict "is untrustworthy."

- She had "no confidence that [Mr.] Benedict has or will fully and truthfully cooperate with HP's request to return all HP Confidential Information."

- Mr. Benedict "has systematically planned to misappropriate Confidential Information so that he could use it for his own personal benefit and/or make it available to a competitor of HP."

1   Lim Decl. ¶¶ 8-9.  Ms. Lim stated that she based her opinion solely on Mr. Benedict's counsel's

2   May 3 letter.  *Id.* ¶ 8.  It is hard to understand how Mr. Benedict's counsel's May 3 letter – which

3   promised **to return** all Disputed Material and confirmed that to Mr. Benedict's knowledge, no

4   one but he and Mr. Benedict's counsel ever had the data – could provide a basis for Ms. Lim's

5   opinions, concerns, and speculation.  Sagafi Decl., Ex. A (May 3, 2013 letter to HP counsel).

6   Notably, Mr. Benedict's direct supervisors did not so speculate about or defame his character in

7   their companion declarations.  *See* Decl. of Ravneet Gill in Support of HP's *Ex Parte* Notice of

8   Application for Motions (Dkt. No. 43); Decl. of Ans Gregory in Support of HP's *Ex Parte* Notice

9   of Application for Motions (Dkt. No. 44).

10       Mr. Benedict's counsel worked all night around the clock to inform the Court of the

11  groundless nature of HP's TRO Motion, filing an opposition in the morning on May 10 that also

12  requested that the Court order HP to meet and confer.  (Dkt. No. 47.)  Within three hours, the

13  Court issued an order requiring the parties to meet and confer and noting that it "remains

14  disappointed by the parties' lack of cooperation and reasonableness in this case."  (Dkt. No. 49.)

15  On May 13, the Court denied as moot the TRO Motion, directed the parties to meet and confer

16  regarding HP's proposed counterclaims, and "urg[ed] the parties to be more cooperative and

17  reasonable."  (Dkt. No. 51.)

18       **D.    HP Refused to Provide Mr. Benedict with Good Faith Bases for its Proposed Counterclaims.**

19

20       On May 15, the parties met and conferred pursuant to the Court's May 13 Order.  At that

21  time, Mr. Benedict's counsel reiterated their commitment to resolving this matter quickly and

22  getting all Disputed Material segregated and returned.  Sagafi Decl. ¶ 12.  Mr. Benedict's counsel

23  also requested that HP specify its basis to allege injury or damage, which are elements of each of

24  HP's three original counterclaims (*i.e.*, violation of the California Uniform Trade Secrets Act

25  ("CUTSA"), breach of contract, and conversion) identified in the TRO Motion.  *Id.*  Mr.

26  Benedict's counsel explained that it was difficult to understand how HP could colorably assert

27  that it suffered any harm.  *Id.*  During that meet and confer call, HP's counsel refused to provide

28  any basis for believing that HP had suffered injury, stating that it was not required to do so.  *Id.*

1    Mr. Benedict's counsel noted that Rule 11 still applies to assertions of injury as an element of the

2    alleged claims.  *Id.*  Given Mr. Benedict's counsel's consistent confirmation that the data had not

3    been shared, that any hypothetical risk of injury had been addressed by turning over the material

4    to a third party, and that Mr. Benedict and Mr. Benedict's counsel were committed to

5    immediately returning the Disputed Material once it has been segregated from Mr. Benedict's,

6    Mr. Benedict's counsel advised that they could not see a good faith basis for the counterclaims.

7    *Id.*

8            On May 15 at 6:11 p.m., HP's counsel emailed to address Mr. Benedict's counsel's

9    concern that HP lacked a good faith basis for alleging injury and damages.  Sagafi Decl. ¶ 13.

10   HP's counsel referred to "substantial fees" HP has incurred "in connection with its efforts to

11   divest Mr. Benedict and his agents of its property."  *Id.*, Ex. G at 2.  Respectfully, the ballooning

12   fees that HP incurred (and has continued to incur) on this project are wholly avoidable, as Mr.

13   Benedict's counsel has repeatedly assured HP that the Disputed Material would be returned and

14   HP counsel refused to meet and confer about it.  Regardless, fees alone do not constitute damages

15   sufficient to sustain a claim, absent statutory or contractual authority providing otherwise.  *See*

16   Cal. Civ. Proc. Code § 1021; *Davis v. Air Tech. Indus.*, 22 Cal. 3d 1, 8 (1978) ("It has long been

17   held under section 1021 that attorney's fees are not an ordinary item of actual damages.") (citing

18   cases), *superseded by statute as noted in*, *John Hancock Mut. Life Ins. Co. v. Sester*, 42 Cal. App.

19   4th 1524, 1532 (1996) (noting that Cal. Civ. Proc. Code section 1021.6 superseded *Davis* in the

20   context of indemnification); *Am. Fire Protection Serv. v. Williams*, 171 Cal. App. 2d 397, 404

21   (1959) ("Generally, fees paid to attorneys are not recoverable from the opposing party either as

22   costs, damages, or otherwise, in the absence of express statutory or contractual authority.").

23           In HP's counsel's May 15 email, and in HP's prayer for relief in its Amended

24   Counterclaims, HP inappropriately has sought injunctive relief.  Sagafi Decl., Ex. G.  Any

25   conceivable injunctive remedy that could be sought has already been accomplished by Mr.

26   Benedict providing the data to the vendor for segregation and return, with an agreed-upon process

27   between the parties underway.  Courts issue injunctions only if the plaintiff can show that there is

28   "certainly impending future injury."  *Marcavage v. City of N.Y.*, 689 F.3d 98, 103 (9th Cir. 2012);

1125292.3

*Scripps Health v. Marin*, 72 Cal. App. 4th 324, 332 (1999) ("purpose of a prohibitory injunction is to prevent future harm to the applicant by ordering the defendant to refrain from doing a particular act"). Injunctive relief "lies only to prevent threatened injury and has no application to wrongs that have been completed." *Scripps Health*, 72 Cal. App. 4th at 332. No threatened injury exists as the orderly return of HP's Disputed Material has begun.

### E. HP Filed Its Original Counterclaims Without Basis Or Good Faith Investigation.

HP filed its original countercomplaint on June 14, 2013. Notably, HP rushed to file this pleading even though, at that point, HP had not even taken the two-hour deposition with Mr. Benedict that the Court had ordered on May 30 to allow HP to discover exactly what was imaged on the laptop. May 30 Case Management Order at 2:16-18 (Dkt. No. 60); Sagafi Decl., Ex. H (June 18, 2013 email between W. Lazerson and J. Sagafi regarding scheduling Mr. Benedict's deposition for July 15). Lacking a good faith basis and without even taking advantage of the specially-ordered deposition to investigate whether it had any basis for its counterclaims, HP's original countercomplaint recklessly alleged:

- "Despite HP's best efforts to obtain the return of its property, *Benedict has refused*, thus necessitating the present Counterclaim[s]." HP Counterclaim ¶ 8 (emphasis added) (Dkt. No. 74). As noted above and as the Court knows, Mr. Benedict consistently has agreed to return Disputed Material.

- That HP repeatedly alleged that Mr. Benedict has failed to return its property as a basis for its counterclaims, even though the material had been deposited with a third-party vendor chosen by HP for the sole purpose of segregating and returning each party's purported property, all at Plaintiff's expense. *Id.* ¶¶ 27, 29, 31.

- That Mr. Benedict had "current" and "continuing" possession of Disputed property, even though HP knew such material was not in his possession, manufacturing "imminent harm" that does not exist. *Id.* ¶¶ 29-30.

- That there was a risk of Mr. Benedict's "actual or imminent disclosure of Confidential Information to a competitor" when there was no basis for such assertion. *Id.* ¶ 33.

After reviewing the countercomplaint, Mr. Benedict's counsel filed a Rule 12 motion with the Court (Dkt. No. 88) and continued their informal dialogue with HP regarding their concerns that HP lacked a good faith basis for the pleading.

On July 15, 2013, HP finally completed Mr. Benedict's special two-hour deposition, at which Mr. Benedict gave the following testimony under oath,

> MS. LAZERSON: Can you tell me if you disclosed any HP material, as we've defined it today, since leaving HP to anyone?
>
> MR. BENEDICT: Yes.
>
> MS. LAZERSON: Okay.  And to whom have you disclosed it?
>
> MR. BENEDICT: My attorneys.
>
> . . . .
>
> MS. LAZERSON: Other than your attorneys, was there anybody else to whom you disclosed it?
>
> MR. BENEDICT: No.
>
> MS. LAZERSON: Have you used any HP data in connection -- just for reference in doing your own thing, whatever you might do?
>
> MR. BENEDICT: No.
>
> . . . .
>
> MS. LAZERSON: And does your current employer share any of the same -- is it in the same business of any of HP's what you refer to as noncore areas?
>
> MR. BENEDICT: They create enterprise software which HP divisions create enterprise software, but they don't, to the best of my knowledge, compete with any division of HP in any area that I'm aware of.
>
> MS. LAZERSON: All right.

Sagafi Decl., Ex. I at 42:21-43:1, 43:9-15, 89:7-14 (excerpts from transcript of July 15, 2013 deposition of Eric Benedict).

### F.     Without Foundation, HP Has Filed Amended Counterclaims That Fail To Cure The Same Fundamental Flaws In The Original Set.

On August 8, 2013, HP filed Amended Counterclaims that do not include its prior claims under the California Uniform Trade Secrets Act and for conversion, but contain an amended breach of contract claim and a new claim for replevin.  These changes fail to cure the

1   fundamental defects in the amended pleading and continue to manifest HP's bad faith.  In fact,

2   the Amended Counterclaims ignore Mr. Benedict's sworn deposition testimony and alleges

3   without basis that Mr. Benedict left HP to work for a company that "is involved in Enterprise

4   Security products," that HP has suffered "harm and damages," and that HP is entitled to "lost

5   profits" and "reasonable royalties."  FACC ¶¶ 29 and 35.  HP and its counsel's lack of

6   compliance with Rule 11 must not be tolerated.

7   **III.   ARGUMENT**

8        Under Rule 11, an attorney presenting a pleading certifies that the document has "factual

9   contentions [that] have evidentiary support," "claims . . . [that] are warranted by existing law,"

10  and "is not being presented for any improper purpose."  Fed. R. Civ. P. 11(b)(1)-(3).  When a

11  complaint is challenged under Rule 11, "a district court must conduct a two-prong inquiry to

12  determine (1) whether the complaint is legally or factually baseless from an objective perspective,

13  and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing

14  it."  *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (citation and internal quotation marks

15  omitted).

16       Thus far, HP and its counsel have knowingly filed an unnecessary TRO and two sets of

17  counterclaims that have no evidentiary basis.  HP's and its counsel's conduct have been

18  egregious.  As explained below, HP and its counsel have failed to satisfy Rule 11's pleading

19  requirements and should be sanctioned.

20       **A.   HP's Factual Contentions Lack Evidentiary Support.**

21       HP's counterclaims are based on speculation and false contentions.  HP's filing of such

22  counterclaims justifies Rule 11 sanctions.

23       Claims that are based on "bare accusations unsupported by allegations of fact" support

24  Rule 11 sanctions.  *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1528 (9th Cir.

25  1990).  To be grounded in fact, allegations must be supported by credible evidence, not opinions

26  or conclusions.  *Kendrick v. Zanides*, 609 F. Supp. 1162, 1172 (N.D. Cal. 1985) (Schwarzer, J.);

27  *accord Copple v. Astrella & Rice, P.C.*, 442 F. Supp. 2d 829, 837 (N.D. Cal. 2006) (White, J.).

28  Allegations based on speculation "are sanctionable under Rule 11 because they are factually

- 12 -

baseless" and demonstrate that the plaintiff "failed to perform an adequate investigation before filing them." *KinderStart.com, LLC v. Google Inc.*, Case No. C 06-2057 JF (RS), 2007 U.S. Dist. LEXIS 22648, at *10 (N.D. Cal. Mar. 16, 2007) (Fogel, J.). For example, allegations of damage that are not based on a reasonable inquiry and that are subsequently proved false will subject a litigant to Rule 11 sanctions. *See Terran v. Kaplan*, 109 F.3d 1428, 1435 (9th Cir. 1997) (concluding that Rule 11 sanctions were warranted in part because there was no evidence of the damage alleged in the complaint).

HP makes the following allegations in support of its Amended Counterclaims:

- "HP has been harmed and damaged by Counter-Defendant's, [sic] theft, secret retention, and/or use of HP's commercially valuable property, including its valuable Confidential Information and Proprietary Developments; such harm and damages include but are not necessarily limited to lost profits, unjust enrichment, and/or reasonable royalties." FACC ¶ 35.

- "[A]s a proximate result of Counter-Defendant's breach of contract, HP has suffered harm and damage and is entitled to recover damages in an amount to be proved at trial, and/or for unjust enrichment or reasonable royalties based on the value of property retained and/or used." *Id.* ¶ 40.

HP has no factual basis for these damages allegations. Although HP provides a laundry list of complaints about Mr. Benedict in support of these damages allegations, none of them identify facts suggesting it suffered *any* damage. *See id.* ¶¶ 35(a)-(h). In the context of the factual background here, where HP has received substantial evidence of *no* harm, HP's attempts to manufacture harm and damage are more than suspect.

HP's vague responses thus far are similar to those of the sanctioned party in *Terran*. There, in response to questions about the plaintiff's actual damages, the sanctioned party responded that "[i]f, in fact, the doctor says that he couldn't see any damages arising out of [the claimed emotional distress], then, of course, we would drop the claim for actual damages and just proceed with the statutory damage request." *Terran*, 109 F.3d at 1435 n.7. The district court responded, "Well, I take it from what you are saying, you haven't done any investigation, at the time you filed the lawsuit, about the actual damages. Doesn't Rule 11 require you to do that?" *Id.* As *Terran* shows, alleging damages without investigating whether damages actually exist is

1    sanctionable.

2         Here, HP does not appear to have investigated whether it has suffered any damages.  Its

3    approach has been to shoot first and ask questions later.  This failure to investigate in good faith

4    warrants Rule 11 sanctions.

5         **B.     HP's Counterclaims Are Not Warranted By Existing Law.**

6         HP cannot and does not properly allege the elements of any of its two claims – breach of

7    contract and replevin.  As a result, Rule 11 sanctions are warranted.

8         Rule 11 sanctions may be granted if a plaintiff fails to allege the necessary elements of a

9    claim.  *Baldwin*, 425 F.3d at 676 (affirming award of sanctions when plaintiff failed to allege

10   element); *W. Coast Theater Corp.*, 897 F.2d at 1526-28 (affirming award of sanctions when

11   plaintiff failed to allege facts in support of necessary element).  Although a plaintiff need not

12   "detail the facts upon which their claims are based, . . . plaintiffs [must] provide a short and plain

13   statement of the claim to give the defendants fair notice of what the claim is and the grounds upon

14   which it is based." *Holgate*, 425 F.3d at 676 (citation and internal quotation marks omitted).  The

15   presence of any frivolous claim in a complaint makes the pleading susceptible to Rule 11

16   sanctions.  *Id.* at 677 (citing *Townsend v. Holman Consulting Grp.*, 929 F.2d 1358, 1364 (9th Cir.

17   1990)).

18        **1.     HP Has No Factual Basis on Which to Allege Damages Based on Mr.**
19        **Benedict's Conduct.**

          It is elementary that a "breach of contract is not actionable without damage." *Bramalea*
20
     *Cal., Inc. v. Reliable Interiors, Inc.*, 119 Cal. App. 4th 468, 473 (2004) (citation omitted).  "The
21
     'breaching party is only liable to place the non-breaching party in the same position as if the
22
     specific breach had not occurred.'" *Shum v. Intel Corp.*, 630 F. Supp. 2d 1063, 1077 (N.D. Cal.
23
     2009) (Jensen, J.) (citation omitted).  Where there is no evidence "of any . . . detriment,"
24
     judgment as a matter of law will be entered against the plaintiff.  *Id.*
25
          Mr. Benedict pointed out this rudimentary element of contract law during the extensive
26
     communications with HP about its lack of a good faith basis for its breach of contract claim.
27
     Nevertheless, HP's amended breach of contract claim continues to be devoid of any allegations
28

PLAINTIFF ERIC BENEDICT'S MOT. FOR RULE 11
SANCTIONS AGAINST DEF. HEWLETT-PACKARD
CASE NO. C 13-0113 LHK

1   regarding *how* HP was damaged.  Such a claim is legally unsustainable.

2            **2.      HP Cannot Maintain an Action in Replevin Because the Disputed**
          **Material is Not in Mr. Benedict's Possession and Mr. Benedict Has No**
3            **Power Over it.**

4        "Under California law, an action filed in replevin is an action to recover wrongfully seized

5   property." *Xerox Corp. v. A & M Printing*, Case No. CV 12-00043 MMM (Ex), 2013 U.S. Dist.

6   LEXIS 74179, at *14-15 (C.D. Cal. May 20, 2013).  "In an action in replevin . . . , being an action

7   for the recovery of specific personal property, in order to sustain a judgment for a plaintiff, it

8   must be shown that possession is in the defendant at the time of the beginning of the action or that

9   he has the power to make delivery of the personal property for the recovery of which the action is

10  prosecuted." *Cal. Packing Corp. v. Stone*, 64 Cal. App. 488, 492 (1923); *accord Xerox Corp.*

11  2013 U.S. Dist. LEXIS 714179, at *15.

12       HP's action in replevin has no factual basis, ignores the jointly agreed-upon segregation

13  process the parties are following, and contradicts the Court's instructions regarding the return of

14  Disputed Material.  On May 10, 2013, the Court "recommend[ed] that the parties identify a third-

15  party litigation vendor that will maintain custody of the subject hard drive and all copies of the

16  hard drive pending resolution of this issue."  (Dkt. No. 49.)  Pursuant to that Order and the

17  parties' subsequent agreement, Mr. Benedict deposited the Disputed Material with a third-party

18  vendor.  *See* May 10, 2013 Joint Report at 2 (Dkt. No. 50) (explaining segregation process).  On

19  August 2, 2013, the parties agreed to a specific protocol, outlining a segregation process through

20  which HP will receive its Disputed Material.  (Dkt. No. 92.)

21       HP will obtain its Disputed Material through the parties' agreed-upon segregation process.

22  Thus, HP's replevin action has no basis in law and fails any standard of good faith.

23       **C.      At This Point, HP's Conduct Can Only Be Interpreted as Being Brought for**
          **an Improper Purpose, Such As Harassment Of or Retaliation Against Mr.**
24            **Benedict for Filing a Claim Against HP.**

25       Because HP appears to have no credible basis for its claims, and because the Disputed

26  Material is in the process of being returned, it appears that the real purpose of HP's latest round of

27  counterclaims is tactical.  "Attorneys do not serve the interests of their clients, of the profession,

28  or of society when they assert claims or defenses grounded on nothing but tactical or strategic

expediency." *Huetting & Schromm, Inc. v. Landscape Contractors Council*, 790 F.2d 1421, 1426-27 (9th Cir. 1986).  An attorney's expertise and experience, taken together with factually or legally baseless claims, support a "strong inference . . . that [the] bringing of an action . . . was for an improper purpose." *Id.*  Here, HP's counsel has substantial experience in litigating employment claims on behalf of employers.  An improper purpose can be found in an employer's assertion of retaliatory damage prayers against a former employee.  *Hudson v. Moore Business Forms*, 836 F.2d 1156, 1163 (9th Cir. 1987).

In *Hudson*, an employee sued her former employer for wrongful discharge and sex discrimination.  836 F.2d at 1157.  In response, the employer filed claims for tortious conduct and sought $4 million in punitive damages.  *Id.*  The Ninth Circuit affirmed the district court's award of Rule 11 sanctions based on "the frivolousness and improper purpose underlying the damage claim."  This case is similar.  HP's insistence on pursuing its counterclaims in the face of solid evidence that no damage whatsoever has resulted from Mr. Benedict's conduct, and despite Mr. Benedict's consistent willingness to cooperate in an on-going process to which both parties have agreed, strongly suggests HP's frivolous claims are motivated by the improper purpose of punishing Mr. Benedict for suing his former employer.  *See id.* at 1163 (approving sanctions where employer's counsel could not identify factual basis for $4 million punitive damages claim other than that plaintiff had sought the identical amount, and concluding that such an admission "strongly suggests a retaliatory motive and erases the factual underpinning from [an] essential element of [employer's counsel's] damage claims") (internal quotation and citation omitted).

Further supporting a conclusion that HP has had an improper purpose throughout this process are HP's persistent refusal to meet and confer, resistance to providing authority or evidence supporting its positions, and apparent desire to escalate this matter despite Mr. Benedict's attempts to cooperate and expedite solutions.[3]  HP has defamed Mr. Benedict in the public record, exposing him to significant negative impacts on his reputation and ability to secure

---

[3] Indeed, further exemplifying HP's bad faith, HP's counsel has threatened retaliation against Mr. Benedict and his counsel for filing this Rule 11 motion.  Sagafi Decl., Ex. K ("As we have discussed with you explicitly on prior occasions, HP believes that any attempt to challenge its counterclaim on the basis of Rule 11 will result in significant adverse consequences to you and/or Mr. Benedict.").  Litigation by threat defies the principle of good faith.

PLAINTIFF ERIC BENEDICT'S MOT. FOR RULE 11
SANCTIONS AGAINST DEF. HEWLETT-PACKARD
CASE NO. C 13-0113 LHK

1  employment in the future.[4]  Furthermore, perhaps by design, HP's hyper-charged pursuit of Mr.

2  Benedict, despite all rational efforts by Mr. Benedict to work through matters cooperatively,

3  sends a powerful message to employees throughout the company that their assertion of claims

4  against HP will not be tolerated.  The Federal Rules prohibit such conduct.

5  IV.  **CONCLUSION**

6      For the reasons set forth above, Plaintiffs respectfully request that the Court dismiss HP's

7  First Amended Complaint and Counterclaims and order appropriate sanctions under Rule 11.

8  Dated:  September 9, 2013            Respectfully submitted,

9

10                                      By:    _/s/ Jahan C. Sagafi_____
                                               Jahan C. Sagafi

11

12                                      Kelly M. Dermody (Cal. Bar No. 171716)
                                        Jahan C. Sagafi (Cal. Bar No. 224887)
                                        Marc A. Pilotin (Cal. Bar No. 266369)
13                                      LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                        275 Battery Street, 29th Floor
14                                      San Francisco, CA 94111-3339
                                        Telephone:  (415) 956-1000
15                                      Facsimile:  (415) 956-1008
                                        E-Mail: kdermody@lchb.com
16                                      E-Mail: jsagafi@lchb.com
                                        E-Mail: mpilotin@lchb.com
17
                                        Adam T. Klein (admitted *pro hac vice*)
18                                      Juno Turner (admitted *pro hac vice*)
                                        Jennifer L. Liu (Cal. Bar No. 279370)
19                                      OUTTEN & GOLDEN LLP
                                        3 Park Avenue, 29th Floor
20                                      New York, NY 10016
                                        Telephone:  (212) 245-1000
21                                      Facsimile:  (212) 977-4005
                                        E-Mail: atk@outtengolden.com
22                                      E-Mail: jturner@outtengolden.com

23                                      *Attorneys for Plaintiff and Counter-Defendant Eric*
                                        *Benedict*
24

25

26  [4] Conduct of this nature provides a basis for a claim of FLSA retaliation for compensatory and
    punitive damages under 29 U.S.C. § 215(a)(3).  *See Ford v. Alfaro*, 785 F.2d 835, 841 (9th Cir.
27  1986) ("[The FLSA] protects employees from retaliatory conduct by the employer."); *see also*
    *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.*, 25 F. Supp. 2d 1053, 1056 (N.D. Cal. 1998)
28  (Conti, J.) (holding that FLSA protects former employees from retaliation); *Darveau v. Detecon,*
    *Inc.*, 515 F.3d 334, 343 (4th Cir. 2008) (same) (citing Tenth, Sixth, and Fifth Circuit decisions).

PLAINTIFF ERIC BENEDICT'S MOT. FOR RULE 11
SANCTIONS AGAINST DEF. HEWLETT-PACKARD
CASE NO. C 13-0113 LHK

1125292.3