1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ERIC BENEDICT, RICHARD BOWDERS, and
KILRICANOS VIEIRA, on behalf of themselves
and classes of those similarly situated,

        Plaintiffs,

      v.

HEWLETT-PACKARD COMPANY,

        Defendant.

_____

ERIC BENEDICT,

        Counterdefendant,

      v.

HEWLETT-PACKARD COMPANY,

        Counterclaimant.

_____

Case No.:  13-CV-00119-LHK

ORDER DENYING ERIC BENEDICT'S
MOTION TO DISMISS HEWLETT-
PACKARD'S COUNTERCLAIMS
AGAINST ERIC BENEDICT

     This Order addresses a motion to dismiss which arises in the context of a class action

lawsuit brought by Plaintiffs Eric Benedict, Richard Bowders, and Kilricanos Vieira, on behalf of

themselves and classes of those similarly situated, against Defendant Hewlett-Packard Company

(hereinafter "HP") for violations of the Fair Labor Standards Act and various state wage and hour

laws. *See* First Amended Complaint, ECF No. 64. Hewlett-Packard, as Counterclaimant, filed two

1

United States District Court
For the Northern District of California

1 counterclaims against individual Eric Benedict, as Counterdefendant, alleging breach of contract

2 and replevin for Benedict's alleged wrongful copying, retention, and/or use of HP's proprietary

3 material. *See* ECF 100 (HP's First Amended Countercomplaint, hereinafter "FACC"). Benedict

4 moves to dismiss the FACC in full. ECF No. 107. Pursuant to Civil Local Rule 7–1(b), the Court

5 finds this matter appropriate for resolution without oral argument and hereby VACATES the

6 hearing on this motion scheduled for January 23, 2014, at 1:30 p.m. Having considered the parties'

7 arguments, the relevant law, and the record in this case, the Court DENIES Benedict's Motion to

8 Dismiss the FACC.

9 **I.      BACKGROUND**

10         **A.      Procedural History**

11         On January 10, 2013, Plaintiffs filed their complaint in this class action lawsuit against HP

12 for violations of the Fair Labor Standards Act and various state wage and hour laws. ECF No 1. On

13 February 22, 2013, HP filed its answer to the complaint. ECF No. 22. On May 31, 2013, Plaintiffs

14 filed their First Amended Complaint. ECF No. 64. On June 14, 2013, HP filed its First Amended

15 Answer and Counterclaims to Plaintiffs' First Amended Complaint. ECF No. 74. On August 19,

16 2013, HP filed its First Amended Answer to Plaintiff's First Amended Complaint and First

17 Amended Counterclaims. ECF 100 ("FACC").

18         On September 9, 2013, Benedict moved to dismiss both counterclaims in the FACC. ECF

19 No. 107 ("Mot."). On September 9, 2013, Benedict also filed a motion for Rule 11 sanctions

20 against HP and HP's counsel. ECF No. 105. On October 3, 2013, HP filed a combined opposition

21 to both Benedict's motion to dismiss and Benedict's motion for Rule 11 sanctions. ECF No. 130

22 ("Opp'n."). On October 21, 2013, Benedict filed a consolidated reply in support of his motion to

23 dismiss and his motion for rule 11 sanctions. ECF No. 145.[1]

24         **B.      Factual Allegations in the FACC**

25                 **1.      Breach of Contract Counterclaim**

26

27

28

---

[1] The Court addresses Benedict's motion for Rule 11 sanctions against HP and HP's counsel in a separate Order.

2

Eric Benedict was a technical solutions consultant at HP, a worldwide technology company that develops software products including HP's "Enterprise Security" products, from March 2011 to February 2012, when Benedict resigned. FACC ¶¶ 2, 8, 12, 22. HP has developed commercially valuable, confidential, and proprietary technology and trade secret information in connection with its Enterprise Security products (hereinafter "confidential information"). *Id.* ¶ 9. HP's confidential information has market value, and disclosure of HP's confidential information would cause grave and irreparable harm to HP because HP's technology provides HP with a substantial competitive advantage over its competitors. *Id.* ¶¶ 9-10. During Benedict's time at HP, Benedict had access to some of HP's confidential information. *Id.* ¶ 12.

When Benedict was hired at HP, he accepted and agreed to HP's terms and conditions of employment, including the Agreement Regarding Confidential Information and Proprietary Developments ("Confidentiality Agreement"), which provided that Benedict agreed "to use [HP's confidential information] only in the performance of HP duties," "to hold such information in confidence and trust," and "to assure that such information is not disclosed to unauthorized persons or used in an unauthorized manner both during and after [Benedict's] employment with HP." *Id.* ¶¶ 14-15. The Confidentiality Agreement also covered "Proprietary Developments," which are defined as "the sole property of HP," and include "inventions and discoveries (whether or not patentable), designs, works of authorship, mask works, improvements, data, processes, computer programs and software" that are conceived or made by the employee in the course of his duties "or that are developed in whole or in part, using HP's equipment, supplies, facilities or trade secret information." *Id.* ¶ 16. Critically, the Confidentially Agreement further provided that Benedict would "not remove any HP property from HP premises without HP's permission. Upon termination with HP, I will return all HP property to HP unless HP's written permission to keep it is obtained." *Id.* ¶ 18. Benedict also agreed to abide by HP's Standards of Business Conduct, which state, "We protect sensitive information: Use and disclose HP, customer, business partner, and supplier sensitive information only for valid business purposes. . . . Share sensitive information outside HP only with authorized parties who have signed a confidential disclosure agreement." *Id.* ¶¶ 14, 19.

United States District Court
For the Northern District of California

1    HP also maintains a written policy regarding employees' use of HP-provided computers

2  and equipment, which defines all information on such equipment as HP property, and reserves

3  HP's right to inspect employee's devices: "HP-supplied communication and computer systems and

4  all messages and information created, transmitted, received, stored or displayed on such systems

5  are company property and are not personal or private in any way. . . . You should not have any

6  expectation of personal privacy in any messages or records created or transmitted by HP systems."

7  *Id.* ¶ 20. Every time Benedict logged into his work-issued computer, he was informed by the login

8  screen, "This computing system is a company owned asset and provided for the exclusive use of

9  authorized personnel for business purposes." *Id.* ¶ 21. During his time at HP, Benedict used his HP-

10  issued laptop as his primary computer and claims to have performed "back-ups" of his HP-issued

11  laptop onto personal devices without informing his supervisor. *Id.* ¶ 23.

12    A few days before his resignation on February 21, 2012, Benedict secretly created two

13  complete copies of his HP-issued laptop hard drive, which contained a substantial amount of data.

14  *Id.* ¶¶ 22, 24. A letter from Benedict's counsel to HP's counsel on May 3, 2013 indicated that

15  Benedict made these copies "because that hard drive contained his personal and work documents

16  comingled together." *Id.* ¶ 24. The files Benedict copied are HP property and contain HP

17  confidential information. *Id.* ¶ 25. Benedict was not authorized to remove, copy, or retain HP

18  property by creating these copies, and by doing so, he violated the HP Confidentiality Agreement

19  and the HP nondisclosure policies to which Benedict had agreed. *Id.* ¶¶ 26, 31. In addition to

20  retaining the copies of the hard drive, Benedict also retained HP property on other personal drives

21  and devices after his resignation. *Id.* ¶ 28. Benedict also removed and retained manager-only

22  confidential information that he was not authorized to access during his employment with HP as a

23  non-manager. *Id.* ¶ 27. Benedict did not inform anyone at HP that he had or was retaining all of this

24  HP property. *Id.* Benedict has claimed that he knew he was leaving HP for another company at

25  least two weeks prior to his resignation. *Id.* ¶ 30. Benedict had the technological knowledge and

26  ability to segregate and separately save any personal information from his HP-issued laptop during

27  this time. *Id.*

28

4

Case No.: 13-CV-00119-LHK
ORDER DENYING BENEDICT'S MOTION TO DISMISS HEWLETT-PACKARD'S COUNTERCLAIMS

1          Benedict's copying and retention of HP property was discovered when, in the course of the

2    instant class action litigation brought by Plaintiffs against HP, Benedict disclosed sensitive, HP-

3    proprietary documents to his attorneys. *Id.* ¶ 33. This was discovered on April 17, 2013, when

4    Benedict's attorneys produced to HP five confidential and proprietary HP documents as part of his

5    initial disclosures. *Id.* Since that disclosure, HP has attempted to recover its property but the copies

6    of the hard drive and other HP property still have not been returned to HP. *Id.* ¶ 34. Although the

7    copies and "certain other devices containing HP property have been provided to a third-party

8    vendor," Benedict has delayed and impaired the timely return of HP's property and HP's ability to

9    access its property directly. *Id.*

10         After resigning, Benedict started working for a company that, like HP, is involved in

11   "enterprise security," and he performs substantially similar work for his new employer as he

12   performed for HP. *Id.* ¶ 29.

13         HP has been "harmed and damaged by [Benedict's] theft, secret retention, and/or use of

14   HP's commercially valuable property, including its valuable confidential information and

15   proprietary developments; such harm and damages includes but are not necessarily limited to lost

16   profits, unjust enrichment, and/or reasonable royalties." *Id.* ¶ 35. This allegation of harm is based

17   on the following allegations, among others: (1) the confidential information and other HP property

18   Benedict retained included documents to which Benedict should not have had access in the normal

19   course of his duties; (2) the nature and volume of material he copied and retained, and his technical

20   capacity to segregate his personal files from work files, are inconsistent with Benedict's copying

21   and retaining HP property for a legitimate reason; (3) Benedict has admitted to reading HP

22   documents in his possession after ending his employment with HP; (4) Benedict has conceded that

23   his new employer creates enterprise software; (5) Benedict's declaration, submitted in this

24   litigation, does not deny that he has used or accessed HP proprietary material after leaving HP; and

25   (6) although Benedict's declaration says he provided to his attorneys all devices he knows to

26   contain HP proprietary material, he has since admitted that he continues to possess certain HP

27   proprietary material in an email account, that he has not searched all of his personal devices for

28

**United States District Court**
For the Northern District of California

5

HP-related material, and that it is conceivable that he has not returned or dispossessed himself of all HP property. *Id.* ¶ 35 (a)-(h).

In HP's breach of written contract cause of action section in the FACC, HP specifically alleges that the confidentiality and nondisclosure agreements entered into between HP and Benedict constitute valid and binding written promises and contracts. *Id.* ¶ 37. HP alleges Benedict breached his obligations under those agreements by taking, retaining, and/or using HP confidential information and other property, and by not returning all improperly acquired confidential information and HP property to HP upon leaving HP's employment. *Id.* 39. Finally, HP alleges that as "a proximate result of [Benedict's] breach of contract, HP has suffered harm and damage and is entitled to recover damages in an amount to be proved at trial, and/or for unjust enrichment or reasonable royalties based on the value of property retained and/or used." *Id.* ¶ 40.

## 2.  Counterclaim in Replevin

In HP's counterclaim in replevin to recover its property, HP alleges that Benedict's HP-issued laptop contained HP confidential information and proprietary developments and other files and materials defined to be HP property under the confidentiality and nondisclosure agreements HP entered into with Benedict, and that Benedict was under an obligation to return all such HP property to HP upon terminating his employment. FACC ¶¶ 42-43. HP alleges that Benedict wrongfully seized HP property by making the two hard drive copies and copies onto his other personal devices, "which he wrongfully retained after terminating his employment with HP." *Id.* ¶ 44. The HP property Benedict wrongfully seized and retained has not been returned to HP. *Id.* ¶ 45. HP further alleges that "Benedict continues to possess HP property himself and to the extent he has provided personal devices containing HP property to a vendor, he has the power to make delivery of such property by instructing the vendor to return it immediately to HP," *id.* ¶ 46, and that HP demands the "immediate return of all HP property, and that [Benedict] immediately provide HP access to and the right to inspect the devices containing HP property." *Id.* ¶ 47.

Case No.: 13-CV-00119-LHK
ORDER DENYING BENEDICT'S MOTION TO DISMISS HEWLETT-PACKARD'S COUNTERCLAIMS

II.     **LEGAL STANDARD**

      A.     **Motion to Dismiss Under Rule 12(b)(6)**

      Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (internal quotation marks omitted). The plausibility requirement "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" to support the claim, even if recovery seems unlikely. *Twombly*, 550 U.S. at 556. For purposes of ruling on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

      However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor is the court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that

7

*United States District Court*
For the Northern District of California

1   [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir.

2   1997) (internal quotation marks and citation omitted).

3   **B.   Requests for Judicial Notice**

4   When ruling on a motion to dismiss, a district court generally should not look beyond the

5   four corners of a complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

6   However, Federal Rule of Evidence 201(d) provides that "[a] court shall take judicial notice [of an

7   adjudicative fact] if requested by a party and supplied with the necessary information."  An

8   adjudicative fact is subject to judicial notice when the fact is "not subject to reasonable dispute in

9   that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable

10  of accurate and ready determination by resort to sources whose accuracy cannot be reasonably

11  questioned."  Fed. R. Evid. 201(b).

12  **III.   DISCUSSION**

13  Benedict moves to dismiss both HP's breach of contract counterclaim, and HP's

14  counterclaim in replevin. Mot. at 7-9. The Court addresses both claims in turn below, and DENIES

15  Benedict's Motion to Dismiss both claims.

16  **A.   Breach of Contract Counterclaim**

17  The Court first addresses Benedict's motion to dismiss HP's breach of contract claim. HP

18  essentially alleges that Benedict breached his obligations under the confidentiality and

19  nondisclosure agreements he entered into with HP by improperly taking, retaining, and using HP's

20  confidential information and other property, and by not returning all improperly acquired

21  confidential information and HP property to HP upon leaving HP's employment. FACC ¶ 39.

22  Further, HP alleges that "as a proximate result of [Benedict's] breach of contract, HP has suffered

23  harm and damage and is entitled to recover damages in an amount to be proved at trial, and/or for

24  unjust enrichment or reasonable royalties based on the value of property retained and/or used." *Id.*

25  ¶ 40. HP also alleges more specifically that "HP has been harmed and damaged by [Benedict's]

26  theft, secret retention, and/or use of HP's commercially valuable property, including its valuable

27  confidential information and proprietary developments; such harm and damages includes but are

28  not necessarily limited to lost profits, unjust enrichment, and/or reasonable royalties." *Id.* ¶ 35.

*United States District Court*
*For the Northern District of California*

Case No.: 13-CV-00119-LHK
ORDER DENYING BENEDICT'S MOTION TO DISMISS HEWLETT-PACKARD'S COUNTERCLAIMS

1    Benedict's motion to dismiss HP's breach of contract claim is limited in scope to one issue.

2    Benedict argues that HP's claim fails because while California law requires a showing of

3    "appreciable and actual damage" to assert a breach of contract claim, HP has pleaded conclusory

4    allegations of damages, and second, that HP's damages allegations are implausible. The Court

5    disagrees, as explained below, and accordingly DENIES Benedict's motion to dismiss HP's breach

6    of contract claim.

7            To state a claim for breach of contract under California law, a plaintiff must allege four

8    elements: (1) the existence of a contract; (2) its performance or excuse for nonperformance of the

9    contract; (3) defendant's breach of the contract; and (4) resulting damage. *See Armstrong*

10   *Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal.App.4th 1375, 1390 n.6 (2004). To establish

11   damages, a plaintiff must establish "appreciable and actual damage." *Aguilera v. Pirelli Armstrong*

12   *Tire Co.*, 223 F.3d 1010, 1015 (9th Cir. 2000) (citing *Patent Scaffolding Co. v. William Simpson*

13   *Constr. Co.*, 256 Cal. App.2d 506, 511 (Cal. Ct. App. 1967) ("A breach of contract without damage

14   is not actionable.")). Nominal damages, speculative harm, or threat of future harm do not suffice to

15   show legally cognizable injury. *See Aguilera*, 223 F.3d at 1015; *see also Ruiz v. Gap Inc.*, 622

16   F.Supp.2d 908, 917 (N.D. Cal. 2009).

17           Benedict first argues that HP's damage allegations are conclusory and speculative and that

18   HP does not allege "any actual damage." Mot. at 7. The Court disagrees. Rule 8's pleading

19   standard requires only a "short and plain statement" showing that the plaintiff is entitled to relief.

20   Fed. R. Civ. Proc. 8(a)(2). HP's damages allegations in its breach of contract cause of action meet

21   that standard by specifically alleging that "HP has been harmed and damaged by [Benedict's] theft,

22   secret retention, and/or use of HP's commercially valuable property, including its valuable

23   confidential information and proprietary developments; such harm and damages includes but are

24   not necessarily limited to lost profits, unjust enrichment, and/or reasonable royalties." FACC ¶ 35.

25   In other words, the FACC specifically alleges that Benedict's use and retention of HP's property

26   harmed HP by forcing it to lose profits and to lose certain reasonable royalties it could have

27   obtained otherwise. "Lost profits" and "reasonable royalties" are specific allegations of damage

28

United States District Court
For the Northern District of California

9

1    that are sufficient to satisfy the requirement to plead "actual and appreciable" damages under

2    California breach of contract law.

3         Benedict does not provide any argument in support of his contention that HP's damages

4    allegations are conclusory other than to simply recite HP's allegation that "such harm and damages

5    includes but are not necessarily limited to lost profits, unjust enrichment, and/or reasonable

6    royalties," Mot. at 7 (citing FACC ¶ 35), and to thereafter assert that these damages are speculative.

7    *Id.* He also fails to provide any authority in support of his implicit suggestion that allegations of

8    lost profits and reasonable royalties do not qualify as "actual and appreciable" damages under

9    California breach of contract law.[2] On the contrary, courts have routinely held that allegations of

10   lost profits and reasonable royalties, as HP pleads here, suffice to adequately plead damages in

11   breach of contract cases. *See, e.g.*, *Marsteller v. ECS Fed., Inc.*, No. 1:13cv593 (JCC/JFA), 2013

12   WL 4781786, at *7-*8 (E.D. Va. 2013) (holding that damages for Virginia breach of contract state

13   law claim were sufficiently alleged where plaintiff alleged that as a result of defendant failing to

14   return and using plaintiff's proprietary information, plaintiff suffered "damages in the form of

15   royalty payments for the use of the Proprietary Information and the actual loss of the materials.");

16   *N'genuity Enterprises Co. v. Pierre Foods, Inc.*, No. 09–CV–00385–PHX-GMS, 2009 WL

17   2905722, at *11 (D.C. Ariz. 2009) (rejecting motion to dismiss breach of contract claim on basis

18   that plaintiff had supposedly insufficiently alleged damages where complaint had alleged damages

19   in the form of lost profits); *c.f. Toland Marketing Inc. v. EMAP USA, Inc.*, 2004 WL 918104, at *6

20   (Cal. App. 2d. 2004) (unpublished) (holding that complaint adequately alleged plaintiff suffered

21   damages from breach of contract under California law where complaint alleged plaintiff suffered

22   lost profits and loss of trained personnel); *Mintel Learning Tech., Inc. v. Ambow Educ. Holding*

23   *Ltd.*, 5:11-CV-01504-EJD, 2012 WL 762126, at *3 (N.D. Cal. 2012) (holding, albeit concerning

---

[2] Benedict simply cites authorities which state the obvious proposition that damages cannot be
speculative or imaginary. *See* Mot at 8, Reply at 5-6 (citing *McDonald v. John P. Scripps Newsp.*,
257 Cal. Rptr. 473, 476 (Cal. App. 2d 1989) (holding that "damages which are speculative, remote,
imaginary, contingent, or merely possible cannot serve as a legal basis for recovery" for breach of
contract) and citing *Ventura County Humane Socy. v. Holloway*, 115 Cal. Rptr. 464, 471 (Cal. App.
1st Dist. 1974) (holding it "is black-letter law that damages may not be based upon sheer
speculation or surmise, and the mere possibility or even probability that damage will result from
wrongful conduct does not render it actionable")).

Case No.: 13-CV-00119-LHK
ORDER DENYING BENEDICT'S MOTION TO DISMISS HEWLETT-PACKARD'S COUNTERCLAIMS

1    trade secret misappropriation claim, that plaintiff had adequately alleged damages by merely

2    alleging "lost profits" from defendants' use of plaintiff's trade secrets).[3]

3          Furthermore, although Benedict does not cite to the following cases, the Court notes that

4    the allegations in HP's FACC are clearly distinguishable from other cases in the Ninth Circuit

5    where courts dismissed breach of contract claims for failure to adequately allege damages, as those

6    cases actually involved conclusory allegations of "damages" or "losses," and thus complaints

7    which only recited the damages element of the breach of contract cause of action. *See, e.g.*, *Stein v.*

8    *Bank of America, N.A.*, No. 2:10–cv–02827–GEB–EFB, 2011 WL 4594916, at *2-*3 (E.D. Cal.

9    2011) (holding that as pled, the complaint did not adequately allege damages for breach of contract

10   where complaint only alleged that plaintiff "suffered damages"); *In re Zynga Priv. Litig.*, C 10-

11   04680 JWW, 2011 WL 7479170, at *2 (N.D. Cal. 2011) (holding that as pled, the complaint did

12   not adequately allege damages for breach of contract where complaint only alleged that plaintiffs

13   have "suffered and will continue to suffer damages and losses."). In contrast here, HP alleges a

14   specific form of damages, i.e., that the company lost profits and reasonable royalties as a result of

15   Benedict's use and retention of HP property. While Benedict asserts that these damages allegations

16   do not "contain sufficient factual matter" and "detail as to what actual damages [HP] incurred,"

17   Reply at 4, the Court fails to surmise what more specific detail the FACC would need to include in

18   order to properly allege damage or harm. *C.f. Sheppard v. David Evans and Assoc.*, 694 F.3d 1045,

19   1049 (9th Cir. 2012) (holding that Rule 8 does not require "detailed factual allegations" but simply

20   a "short and plain statement") (citation omitted). Courts not do "flyspeck complaints looking for

21   any gap in the facts" when the basis for relief can be inferred. *Lacey v. Maricopa County*, 693 F.3d

22   896, 924 (9th Cir. 2012).[4]  Accordingly, the Court concludes that HP has alleged more than simply

23   conclusory or speculative allegations of damages.[5]

---

[3] The Court further notes that the other cases Benedict relies on concern non-contract causes of
action, and in any event, fall into the category of clearly distinguishable cases discussed by the
Court above, given the truly conclusory allegations of damages in those cases. *See, e.g.*, Mot. at 8,
Reply at 5 (citing *Basham v. P. Funding Group*, 2:10-CV-96 WBS GGH, 2010 WL 2902368, at *3
(E.D. Cal. 2010) (holding that plaintiffs' assertion that they "have suffered compensable damages
according to proof" was conclusory and insufficient to allege harm for *negligence* claim)).

[4] While the FACC does not allege exactly when and how Benedict used HP's property and
precisely how HP lost profits as a result, this does not mean the FACC fails to adequately plead

Case No.: 13-CV-00119-LHK
ORDER DENYING BENEDICT'S MOTION TO DISMISS HEWLETT-PACKARD'S COUNTERCLAIMS

1    Having addressed Benedict's contention that HP does not allege any actual damages, the

2    Court turns to Benedict's second argument that HP's allegations of damage are "implausible." Mot.

3    at 8. Specifically, Benedict argues that HP's "conclusory damages allegations are implausible in

4    light of and contradicted by Mr. Benedict's counsel's May 3, 2013 letter to HP's counsel, on which

5    HP's countercomplaint relies." Mot. at 8 (citing Sagafi Declaration, Ex. A ('letter'), ECF No. 106-

6    1). Benedict notes how in that letter, Benedict's counsel related that "upon leaving HP's employ,

7    Mr. Benedict retained an image (i.e., a complete copy) of the hard drive of his HP-issued laptop"

8    and that he only "did so because that hard drive contained his personal and work documents

9    comingled together." Letter at 1. Further, Benedict's counsel claimed they would, "[a]s soon as

10   practicable, return to HP all documents, electronic or otherwise, that appear to constitute HP

11   property." *Id.* at 2. Benedict's counsel also stated that Benedict "confirmed that he has not shared

12   any HP property with anyone besides LCHB's attorneys." *Id.* at 1. Benedict argues that he

13   confirmed this statement in a May 21, 2013 declaration of his own. *See* Mot. at 8 n.3 (citing

14   Benedict's Declaration attached to May 2013 Joint Case Management Statement, ECF No. 56,

15   stating he has not "shared, sold, or otherwise conveyed any material in which HP may have a

16   proprietary interest."). Accordingly, Benedict argues that "[t]hese facts demonstrate Mr. Benedict's

17

18   damages. To require such specific detail would contradict Federal Rule of Civil Procedure
     11(b)(3), which expressly allows pleading based on a belief that the allegations "will likely have
19   evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R.
     Civ. P. 11(b)(3); *see also Twombly*, 550 U.S. at 556 (holding that a claim is facially plausible if
20   there is at least a "reasonable expectation that proof will be uncovered in discovery).
     [5] In HP's opposition, HP argues it has adequately alleged damages by presenting various theories
21   of damages separate from lost profits and reasonably royalties which are not alleged in the FACC.
     Opp'n. at 24-26. Notably, it presents factual allegations that it suffered cognizable harm in the form
22   of "deprivation of its property rights, including its rights to access, possess, and control its
     property" and "mitigation efforts" such as having to "incur substantial time and expense to comply
23   with [HP's] contractual obligations to third parties." *Id.* Benedict rebuts each of these theories in
     his Reply. Reply at 6-7. Because the Court finds that HP has sufficiently alleged damages in the
24   form of lost profits, the Court need not address whether or not HP's other alleged theories of
     damages are sufficient to allege "actual and appreciable damage." In any event, the Court must
25   disregard these new theories because the Court may not consider new facts not alleged in the
     FACC when determining the sufficiency of the FACC. *Schneider v. Cal. Dep't of Corrections*, 151
26   F.3d 1194, 1197 n.1 (9th Cir. 1998) (when ruling on motion to dismiss, the court may not look
     beyond the complaint to allegations contained in an opposition to the motion); *see also Broam v.*
27   *Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (same).

28

12

1    retention of purported HP property was harmless and confirm his willingness to return it. Because

2    these facts contradict HP's damages allegations, the Court may disregard those allegations." Mot.

3    at 8. In essence, Benedict's argument is that HP's allegation of damages or harm is implausible

4    given that Benedict himself has stated that he did not disclose the HP property to anyone apart

5    from his attorneys and was willing to return it to HP.

6         In response, HP argues that its allegation of damages *is* plausible because one highly

7    plausible explanation for Benedict's undisputed copying and retention of HP's property is that he

8    "stole HP's confidential information and/or Proprietary Developments to use [it], whether in his

9    subsequent job or for his own gain, entitling HP to the lost profits, unjust enrichment, and/or

10   reasonably royalties it pleads." Opp'n. at 19. HP asserts that its counterclaims provide sufficient

11   factual allegations to make it plausible that Benedict stole the HP property for an illegitimate use,

12   that he used it, and that HP lost profits as a result. *Id.* at 19-21. In particular, HP cites the allegation

13   in the FACC that just before resigning, Benedict created the copies of his HP-issued laptop drive

14   which contain HP property and HP confidential information for no legitimate business reason, that

15   he did not tell anyone he was doing this, and that for over a year he secretly retained those copies

16   and other HP property as well until his attorneys sent highly sensitive HP documents to HP as part

17   of Benedict's initial disclosures. *Id.* at 20 (citing FACC ¶¶ 24, 26-28, 33, 35(a)(b)). HP cites its

18   allegation that Benedict also had taken documents relating to HP enterprise business marketing

19   strategy which Benedict would not have had access to in the normal course of his duties. *Id.* (citing

20   FACC ¶ 27, 35(b)). Third, HP cites its allegation that the nature and volume of material Benedict

21   copied and retained, in combination with his technical capacity to segregate his personal files, is

22   inconsistent with any legitimate explanation for why he copied and retained the HP property. *Id.*

23   (citing FACC ¶¶ 30, 35(c)). Fourth, HP cites the allegation that Benedict took this information as

24   he was leaving to work for a company that competes with HP in the enterprise software industry,

25   suggesting that he had the opportunity to exploit the HP information in his new job and thus took

26   the information to do so. *Id.* at 21 (citing FACC ¶ 35(f)). Fifth, HP cites the allegation that

27   Benedict disclosed the material to his attorneys to use against HP in this lawsuit, and the allegation

28   that he thus "disclose[d] such material to an unauthorized third-party when he believed it suited his

13

1    purposes." *Id.* (citing FACC ¶ 35(d)). HP argues this shows "Benedict had no regard for his

2    obligations to keep HP property confidential and has the propensity to use HP's materials for his

3    own gain." *Id.* Finally, HP cites the allegation that Benedict "admitted to reading HP material after

4    ending his employment with HP." *Id.* (citing FACC ¶ 35(e)).

5         As an initial matter, before analyzing the plausibility of HP's damages allegations, the

6    Court notes that it may consider Benedict's counsel's May 3, 2013 letter and Benedict's own

7    declaration when analyzing the plausibility of HP's counterclaim, because HP cites and relies on

8    the contents of this letter and declaration in the FACC. *See* FACC ¶ 24 (explicitly citing the May 3,

9    2013 letter); FACC ¶¶ 35(f)-(h) (discussing parts of Benedict's declaration); *Davis v. HSBC Bank*

10   *Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (under the incorporation by reference doctrine,

11   courts may take into account, when analyzing a motion to dismiss, "documents whose contents are

12   alleged in a complaint and whose authenticity no party questions, but which are not physically

13   attached to the [plaintiff's] pleading.") (citation and internal quotation marks omitted).[6]

14        The Court now holds that HP's damages allegations are sufficiently plausible to pass

15   muster under *Twombly*. *See Martsteller*, 2013 WL 4781786, at *7 (holding that allegations that

16   defendant took and used proprietary information, thereby entitling plaintiff to reasonable royalties,

17   was sufficient to state plausible damages allegations in breach of contract claim). When reviewing

18   a motion to dismiss, the Court must construe the complaint in the light most favorable to the

19   plaintiff, resolving any apparent ambiguity in the plaintiff's favor. *See Jenkins v. McKeithen*, 395

20   U.S. 411, 421 (1969); *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). "If there are

21   two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both

22   of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."

---

[6] HP argues that the Court should disregard the allegation by Benedict's attorneys, in the May 3 letter, that Benedict did not disclose any HP property because HP's claims "arise from the *fact of* Benedict's breach, not the letter admitting it, and thus the letter is not 'integral' to the claim or 'dispositive' in the dispute." Opp'n. at 22. The Court is not convinced. HP cannot simultaneously rely in the FACC on the aspects of the May 3 letter that are in its favor but prevent the Court from utilizing the incorporation by reference doctrine to consider aspects of the letter that hinder HP's position. This would contradict the policy behind the incorporation rule which is to "prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting . . . documents upon which their claims are based." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

1    *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). This is because "[t]he standard at this stage of

2    the litigation is not that plaintiff's explanation must be true or even probable." *Id.* The factual

3    allegations of the complaint need only "plausibly suggest an entitlement to relief." *Ashcroft v.*

4    *Iqbal*, 556 U.S. 662, 680-81 (2009).

5          Applying this standard here, the Court first notes that Benedict obviously has his own

6    explanation for his actions: he copied the HP property only to ensure that he retained his personal

7    files, and he did not use or disclose any HP property after his termination, thus suggesting HP

8    could not have suffered any damage from any alleged use or disclosure of HP property. His theory

9    finds support in his attorneys' May 3 letter in which his attorneys claim that Benedict stated he had

10   not disclosed HP property to anyone but his attorneys, and in which his attorneys claim that they

11   intend to return all HP property to HP.[7] It also finds support in his own declaration in which he

12   claims he has not shared or sold any HP property to anyone after his resignation. ECF No. 56.

13   However, as explained below, HP has provided its own plausible alternative explanation based on

14   the allegations in the FACC. Under *Starr*, this means that Benedict's motion to dismiss the breach

15   of contract claim must be denied.

16         HP's theory is essentially that Benedict would not have copied and retained substantial

17   volumes of company property simply to make sure he retained his personal files, but did so in order

18   to use the HP property in some illicit way, and subsequently did use the property, leading to lost

19   profits and reasonable royalties by HP. The FACC alleges circumstantial evidence sufficient to

20   make this theory plausible. *Roughgarden v. Yottamark, Inc.*, 5:10-CV-04098 EJD, 2011 WL

21   2837041, at *3 (N.D. Cal. 2011) (holding that claim can be found to be plausible based solely on

22   allegations consisting of circumstantial evidence). Notably, the FACC alleges, as set forth above,

23   that (1) Benedict copied and retained, without asking and without authorization, a large amount of

---

[7] HP argues that the Court should not consider the statements by Benedict's counsel in the May 3 letter because they are double hearsay and can only be used against Benedict under the admission by party opponent exception to the hearsay rule. *See* Opp'n. at 22 (referring to Fed. R. Evid. 801(d)(2)). The Court overrules the objection, as evidentiary objections have no bearing on a motion to dismiss, in which all allegations in the complaint are taken as true. *United States v. $97,667.00 in U.S. Currency*, 538 F. Supp. 2d 1246, 1253 n.6 (C.D. Cal. 2007). Given that the May 3 letter is incorporated by reference into the FACC, the Court construes all allegations in that letter as true.

Case No.: 13-CV-00119-LHK
ORDER DENYING BENEDICT'S MOTION TO DISMISS HEWLETT-PACKARD'S COUNTERCLAIMS

United States District Court
For the Northern District of California

1   highly sensitive company information, some of which he would not even have had access to as a

2   regular non-managing employee; (2) Benedict did not disclose this fact to HP for over a year after

3   he left and only did so when HP found out through Benedict's attorneys' Rule 26 disclosures in the

4   instant putative class action litigation; (3) Benedict's explanation for the copying was implausible

5   because a technologically sophisticated person would know how to segregate out his personal files;

6   (4) Benedict took the information right as he was leaving for a competing company where he could

7   readily apply the HP property, suggesting he had the opportunity to exploit it; and (5) Benedict was

8   not opposed to using and disclosing the HP property to others, given that he admitted reading some

9   HP proprietary material and given that he disclosed some of it to his attorneys for use in the class

10  action litigation. *See* FACC. The Court finds that these allegations, when viewed as a whole, at

11  least plausibly suggest that Benedict took the HP property for an illicit use, did in fact use the

12  property in some way, and that HP suffered lost profits as a result. This is because the allegations

13  that he kept his copying and retention of the property a secret, did not ask for authorization despite

14  company policy, somehow came into contact with information to which he would not have had

15  access normally, and admitted he read HP proprietary material after no longer being employed

16  there, all comprise circumstantial evidence that Benedict had an illicit motive when copying his

17  laptop drive.[8]

18          The Court further notes that the fact that the FACC does not allege exactly when and how

19  Benedict used HP's property and precisely how HP lost profit as a result does not necessarily

20  render HP's breach of contract claim implausible. *See Migliore & Associates, LLC v. Kentuckiana*

21  *Reporters, LLC*, 3:13-CV-315-H, 2013 WL 5323035, at *2-*3 (W.D. Ky. 2013) (holding that

22  plaintiffs' damages allegation in cyberpiracy claim was plausible despite the fact that plaintiffs

23  were unable "to verify whether and to what extent [defendant] profited from its actions" or allege

24  precisely how plaintiffs lost profits as a result of the diversion of customers; plaintiffs' inability to

25  do so was "immaterial at this early stage of litigation" and the court was "satisfied that the

26

27  _____

    [8] In reaching this conclusion, the Court emphasizes that it makes no assessment regarding whether
28  HP's claim would survive at the summary judgment stage, but merely assesses whether or not HP's
    claim is *plausible* under *Twombly*.

Case No.: 13-CV-00119-LHK
ORDER DENYING BENEDICT'S MOTION TO DISMISS HEWLETT-PACKARD'S COUNTERCLAIMS

**United States District Court**
For the Northern District of California

1    allegations in the complaint do sufficiently link [d]efendant's actions to injury in order to push

2    [p]laintiffs' claim to relief . . . from possible to plausible."). Here, it is at least plausible to infer,

3    based on the allegations in the FACC, that if Benedict used HP property or disclosed HP's

4    proprietary information to other entities, HP would lose profits because the very information in

5    which HP invested many resources to develop would be utilized for free by HP's competitors. *See,*

6    *e.g.*, FACC ¶ 10 ("Disclosure of HP's Confidential Information to a competitor would cause grave

7    and irreparable harm to HP. HP's technology provides HP with a substantial competitive advantage

8    over its competitors. Purchasing and developing the technology involved a substantial investment

9    of company resources by HP, and the disclosure of such Confidential Information could harm HP's

10   competitive position in a way that would adversely affect its business.").

11            The Court concludes that HP has adequately stated damages for its breach of contract

12   claim, and accordingly, Benedict's motion to dismiss this claim is DENIED.

13            **B.        Counterclaim in Replevin**

14            The Court now addresses Benedict's motion to dismiss HP's counterclaim in replevin to

15   secure the return of all of HP's property. Benedict argues this counterclaim must be dismissed

16   because pursuant to the Court's Orders and the parties' stipulations[9] in this litigation,[10] a "third-

17   _____

18   [9] The docket in this case tells the following chronological story regarding the parties' dispute over
     the return of HP property in Benedict's possession. In short, after HP learned that Benedict had
19   made copies of his HP-issued work laptop before resigning, HP filed an application for a temporary
     restraining order and an order to show cause regarding injunctive relief, asking the Court to order
20   Benedict to return the copies he made immediately to HP. ECF No. 41. Benedict opposed, claiming
     he had a privacy interest in some of his personal material on those copies. ECF No. 47. In response,
21   without reaching the merits of the TRO, the Court ordered the parties to meet and confer and
     identify a third-party vendor who would segregate all of Benedict's personal material from HP's
22   property on any devices Benedict provided the vendor. ECF No. 49. Once the parties selected a
     vendor and notified the Court that they would meet and confer to discuss how the third-party
23   vendor process would work, ECF No. 50, the Court denied the TRO as moot. ECF No. 51. On May
     30, 2013 the Court issued a Case Management Order providing further instructions regarding the
24   "Segregation and Return of Data to Plaintiff and HP." ECF No. 60. On August 2, 2013, the parties
     filed a stipulation regarding data segregation in which they further outlined the process through
25   which the parties' property would be separated by the vendor. ECF No. 92.
26   [10] Benedict requests that the Court take judicial notice of its May 10, 2013 Order to Meet and
     Confer, ECF No. 49, the Court's May 30, 2013 Case Management Order, ECF No. 60, the parties'
27   May 10, 2013 Joint Report Regarding the Meet and Confer, ECF No. 50, the parties' August 2,
     2013 Stipulation Regarding Data Segregation, ECF No. 92, and the parties' September 6, 2013
28   Discovery Dispute Joint Report #2, ECF No. 103. Mot. at 9 n.4; Reply at 9 n.6. HP does not

Case No.: 13-CV-00119-LHK
ORDER DENYING BENEDICT'S MOTION TO DISMISS HEWLETT-PACKARD'S COUNTERCLAIMS

United States District Court
For the Northern District of California

1  party vendor is currently sorting through and separating the parties' respective property" and that

2  Benedict thus "does not have possession or control over HP's alleged property," thereby precluding

3  HP's replevin counterclaim as a matter of law. Mot. at 3. Benedict states that he "has surrendered

4  to a third-party vendor all storage devices in his possession that he knows may possibly contain HP

5  purported property." Mot. at 9. Benedict's argument fails, as explained below.

6         Under California law, an action filed in replevin is an action to recover wrongfully seized

7  property. The plaintiff in such an action "never ceases to claim the property as his own, but seeks

8  to obtain it rather than its value." *Harris v. Dixon Cadillac Co.*, 132 Cal.App.3d 485, 490 (1982)

9  (citations omitted). "In an action for replevin . . ., being an action for the recovery of specific

10 personal property, in order to sustain a judgment for the plaintiff, it must be shown that possession

11 was in the defendant at the time of the beginning of the action, or that he had the power to make

12 delivery of the personal property for the recovery of which the action is prosecuted." *California*

13 *Packing Corp. v. Stone*, 64 Cal. App. 488 (1923).

14        Here, the Court finds that HP's counterclaim more than sufficiently pleads that Benedict

15 possesses HP property, has not yet returned it, and that he has the power to make delivery of HP's

16 property to HP to the extent he no longer possesses some of the property he allegedly copied and

17 retained upon leaving HP's employment. Notably, HP first alleges that Benedict's HP-issued

18 laptop contained HP confidential information and proprietary developments and "other files and

19 materials defined to be HP property," and that Benedict was under an obligation to return all such

20 HP property to HP upon terminating his employment. FACC ¶¶ 42-43. Second, HP alleges that

21 Benedict wrongfully seized this HP property by making two copies of the laptop hard drive and

22 then making other copies onto his personal devices, "which he wrongfully retained after

23 terminating his employment with HP." *Id.* ¶ 44. Third, HP alleges that "[i]n addition to retaining

24 the [copies of his work-issued laptop] after his resignation, [Benedict] retained HP property on

25

26 indicate any opposition to these requests. The Court GRANTS the request as to all these
   documents, as they are matters of the public record. *MGIC Indem. Co. v. Weisman*, 803 F.2d 500,
27 505 (9th Cir. 1986) (holding a court may take judicial notice of court records); *Missud v. Oakland
   Coliseum Joint Venture*, No. 12–02967 JCS, 2013 WL 812428, at *10 (N.D. Cal. 2013) (taking
28 judicial notice of court orders because they are matters of public record).

Case No.: 13-CV-00119-LHK
ORDER DENYING BENEDICT'S MOTION TO DISMISS HEWLETT-PACKARD'S COUNTERCLAIMS

other personal drives and devices." *Id.* ¶ 28. Fourth, HP alleges that the copies and "other HP property still have not been returned to HP." *Id.* ¶ 34. Fifth, HP alleges that "Benedict continues to possess HP property himself and to the extent he has provided personal devices containing HP property to a vendor, he has the power to make delivery of such property by instructing the vendor to return it immediately to HP." *Id.* ¶ 46. Sixth, HP alleges that although Benedict "provided a declaration saying that he had provided to his attorneys all devices he knows to contain HP-proprietary material, he has since admitted that he continues to possess certain HP-proprietary material in an email account, that he has not searched all of his personal devices for HP-related material, and that it is conceivable that he has not returned or dispossessed himself of all HP property." *Id.* ¶ 35(h). The Court finds these allegations are sufficient to plead both alternative elements of a replevin claim: that Benedict currently possesses HP property, and that he has the power to deliver HP property to HP to the extent he has given some of the HP property in his possession to the third-party vendor. While Benedict claims that HP's allegations are based on "speculation" because "HP must allege possession, not potential possession," Reply at 9, the Court fails to see how the allegations recited above fail to allege that Benedict actually possesses HP property. *See id.* ¶ 46 (alleging "Benedict continues to possess HP property himself" even despite the ongoing third-party vendor process ordered by the Court); ¶ 35(h) (alleging "[Benedict] has since admitted that he continues to possess certain HP-proprietary material in an email account").[11]

Benedict's argument against the replevin counterclaim is unavailing. In essence, Benedict argues the claim is moot due to this Court's Orders and the parties' stipulations which have established a process through which a third-party vendor is currently segregating all HP property from Benedict's personal property on any devices Benedict has provided the vendor. Mot. at 9. Benedict argues that this process means not only that HP will eventually receive its property back but also that Benedict now "lacks possession of and control over HP's property." *Id.*; *id.* at 10 ("No

---

[11] While Benedict claims that this "email account" is irrelevant because it "has already been disclosed to Mr. Benedict through the discovery process," he cites nothing in support of this contention. Reply at 8 n.5. Absent judicially noticeable documents in support of his assertion, the Court must construe the FACC in the light most favorable to the nonmoving party, HP. *Manzarek*, 519 F.3d at 1031.

Case No.: 13-CV-00119-LHK
ORDER DENYING BENEDICT'S MOTION TO DISMISS HEWLETT-PACKARD'S COUNTERCLAIMS

1    threatened injury exists as the orderly return of HP's Disputed Material has begun."). The Court

2    first notes that those Orders, stipulations, and discovery updates by the parties, *see* ECF Nos. 49,

3    50, 60, 92, 103, do in fact demonstrate that this Court established a process through which a third-

4    party vendor is currently segregating HP property from Benedict's personal property on the devices

5    Benedict provided the third-party vendor, and through which the vendor will return any HP

6    property the vendor finds back to HP. Further, the FACC does allege that at least the two copies of

7    the work-issued laptop drive which Benedict made "and certain other devices containing HP

8    property have been provided to a third-party vendor [by Benedict]." FACC ¶ 34. However,

9    Benedict's argument nonetheless fails because nothing in those Court Orders or stipulations

10   definitively guarantees or establishes that Benedict no longer possesses any HP property, or that

11   HP will certainly get all of its property back at the end of the process such that this Court must

12   conclude HP's replevin claim is now moot. *See Chew v. Gates*, 27 F.3d 1432, 1437 (9th Cir. 1994)

13   (holding that to dismiss a claim as moot, it must be shown that there is no longer a live dispute

14   between the parties or there is no longer a possibility that the plaintiff can obtain relief). Notably,

15   Benedict provides no conclusive evidence that the third-party vendor process is now complete such

16   that HP has received all of its proprietary material back,[12] or more importantly, that the third-party

17   vendor process is fool proof such that HP can be assured that Benedict rendered *all* HP property in

18   his possession to the vendor. Thus, while Benedict asserts that he no longer has possession or

19   control over HP property, there is still a live dispute on this issue and it is at least still plausible, as

20   HP alleges, that Benedict kept some HP property without turning it over to the vendor. *See* FACC ¶

21   34 (alleging that the two copies of the hard drive Benedict made and only "*certain* other devices

22   containing HP property have been provided [by Benedict] to the third-party vendor") (emphasis

23   added); *id.* ¶ 35(h) (alleging that Benedict admitted in his deposition that "he continues to possess

24   certain HP-proprietary material in an email account, that he has not searched all of his personal

25   devices for HP-related material, and that it is conceivable that he has not returned or dispossessed

26

27

28   [12] It appears from ECF No. 156 (Parties' Supplement to Discovery Dispute Joint Report #2) that
     the vendor's desegregation process was not yet complete as of December 27, 2013.

20

1    himself of all HP property"); *id.* ¶ 46 ("Benedict continues to possess HP property himself.").[13]

2    Accordingly, Benedict has failed to meet his burden of showing that HP's request for relief is moot

3    simply because the third-party vendor process is currently underway. *C.f. Allergan, Inc. v. Merz*

4    *Pharm., LLC*, SACV 11-446 AG EX, 2012 WL 781705, at *14 (C.D. Cal. 2012) (holding

5    defendants failed to "meet their burden of demonstrating that Allergan's request for injunctive

6    relief is moot as a result of Defendants' claim that they have returned, and no longer possess, any

7    of Allergan's trade secrets" and that courts must "beware of efforts to defeat injunctive relief by

8    protestations of repentance and reform, especially when abandonment seems timed to anticipate

9    suit.").[14] As HP argues, "Benedict cannot demand that HP's claims for the return of its property be

10    'stricken' and 'dismissed with prejudice' when HP's property still has not been fully accounted for

11    or returned to it." Opp'n. at 28.

12            The Court is also unpersuaded by Benedict's related assertion that the counterclaim in

13    replevin fails because it is an "end run around this Court's process, which was designed to provide

14    due process to both sides," and that it would "make no sense to have undertaken this Court-

15    approved process only to allow HP immediately to gin up a baseless claim seeking alternative

16    process." Reply at 9. This argument fails because nothing in the Court's Orders or parties'

17    stipulations suggests that the third-party vendor process waived HP's right to bring a claim in

18    replevin to enforce its right to retain its property. HP has a due process right to have its claim

19    resolved through formal adjudication in order to ensure that all of its property is, in fact, returned to

20

21    [13] This is especially true in light of how HP implies there is a live dispute between HP and
     Benedict regarding what is defined as "HP property." *See* FACC ¶ 35(g) ("[Benedict's] declaration
22    does not define his understanding of what a 'proprietary interest' is and does not address, simply
     by way of example, whether it includes Confidential Information and Proprietary Developments, as
23    defined in his agreement with HP.")
     [14] Relatedly, contrary to Benedict's implicit suggestion, HP needed not refrain from filing its
24    replevin claim simply because Benedict asserted that he turned over all HP property in his
     possession to the vendor. *See Malibu Media, LLC v. Maness*, No. 12-CV-01873-RBJ-MEH, 2012
25    WL 7848837, at *6 (D. Colo. 2012), *report and recommendation adopted*, 12-CV-01873-RBJ,
     2013 WL 1397275 (D. Colo. 2013) (holding, in copyright infringement case, that plaintiff "may be
26    understandably and even reasonably skeptical of a defendant's assertion of innocence," did not
     have to give credence to defendant's pre-filing proffer of evidence to the contrary, and "ha[d] a
27    constitutional right to file a lawsuit and engage in discovery to determine" whether there was
     infringement).
28

21

1   it, so long as its claim meets the standard set forth under Federal Rule of Civil Procedure 11. In

2   other words, HP can bring a replevin claim so long as HP has reason to believe that its claim is

3   "warranted by existing law" and that HP's factual contention that Benedict still possesses some HP

4   property has "evidentiary support or, if specifically so identified, will likely have evidentiary

5   support after a reasonable opportunity for further investigation or discovery . . ." Fed. R. Civ. P.

6   11(b)(2)-(3). The Court addresses whether HP's replevin claim meets this Rule 11 standard in a

7   separate Order addressing Benedict's motion for Rule 11 sanctions. For purposes of this Order, it

8   suffices to note that HP alleges that its property has not been returned and that some of it is still in

9   Benedict's possession, and also that because this Order addresses a motion to dismiss, the Court

10  must take these allegations in the FACC as true.

11        Because the Court concludes that HP has adequately pled a claim for replevin, Benedict's

12  motion to dismiss this claim is DENIED.[15]

13  **IV.     CONCLUSION**

14        For the foregoing reasons, the Court DENIES Benedict's Motion to Dismiss the FACC.

15

16  **IT IS SO ORDERED.**

17  Dated: January 21, 2014

18                                        LUCY H. KOH
                                          United States District Judge

19

20

---

21  [15] Throughout HP's opposition, HP cites a number of declarations HP filed with this Court in
    support of its opposition to the motion to dismiss, without requesting that the Court take judicial
22  notice of these declarations and without having referenced them in the FACC. *See, e.g.*, Opp'n. at
    20-24 (citing various declarations). The Court does not consider these declarations, as they are
23  improperly before the Court. *See Fraley v. Facebook Inc.*, 830 F.Supp.2d 785, 794 (N.D. Cal.
    2011) ("[T]he Court generally may not look beyond the four corners of the complaint in ruling on a
24  Rule 12(b)(6) motion, with the exception of documents incorporated into the complaint by
    reference, and any relevant matters subject to judicial notice."); *Sears v. Cnty. of Monterey*, No.:
25  5:11-CV-01876-LHK, 2013 WL 256764, at *6 n.5 (N.D. Cal. 2013) (disregarding declarations
    filed in support of opposition to motion to dismiss); Fed. R. Civ. P. 12(d) ("If, on a motion under
26  Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the
    court, the motion must be treated as one for summary judgment under Rule 56.") The Court
27  similarly disregards Benedict's citation to his July 15, 2013 deposition, which is not referenced in
    the FACC and for which he does not seek judicial notice. *See* Mot. at 8 n.3.
28

22