1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| ERIC BENEDICT, RICHARD BOWDERS, and KILRICANOS VIEIRA, on behalf of themselves and classes of those similarly situated,<br><br>           Plaintiffs,<br><br>     v.<br><br>HEWLETT-PACKARD COMPANY,<br><br>           Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | Case No.:  13-CV-00119-LHK<br><br>ORDER DENYING ERIC BENEDICT'S MOTION FOR RULE 11 SANCTIONS AGAINST HEWLETT-PACKARD AND HEWLETT-PACKARD'S COUNSEL |
| ERIC BENEDICT,<br><br>           Counterdefendant,<br><br>     v.<br><br>HEWLETT-PACKARD COMPANY,<br><br>           Counterclaimant. | ) ) ) ) ) ) ) ) ) ) | |

This Order addresses a motion for sanctions pursuant to Federal Rule of Civil Procedure 11

arising in the context of a class action lawsuit brought by Plaintiffs Eric Benedict, Richard

Bowders, and Kilricanos Vieira, on behalf of themselves and classes of those similarly situated,

against Defendant Hewlett-Packard Company ("HP") for violations of the Fair Labor Standards

Act and various state wage and hour laws. *See* First Amended Complaint, ECF No. 64. HP, as Counterclaimant, filed two counterclaims against Eric Benedict, as Counterdefendant, alleging breach of contract and replevin for his wrongful retention and use of HP's proprietary material. *See* ECF 100 (HP's First Amended Countercomplaint, "FACC"). Benedict now moves for Rule 11 sanctions against HP and HP's counsel, Sidley Austin LLP, on the basis that HP's counterclaims are "based on speculation and false contentions." ECF No. 105 at 16. Pursuant to Civil Local Rule 7–1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing on this motion scheduled for January 23, 2014, at 1:30 p.m.[1] Having considered the parties' arguments, the relevant law, and the record in this case, the Court hereby DENIES Benedict's motion for Rule 11 sanctions.

# I.        BACKGROUND

## A.        Procedural History

On January 10, 2013, Plaintiffs filed their complaint in this class action lawsuit against HP for violations of the Fair Labor Standards Act and various state wage and hour laws. ECF No 1. On February 22, 2013, HP filed its answer to the complaint. ECF No. 22. On May 31, 2013, Plaintiffs filed their First Amended Complaint. ECF No. 64. On June 14, 2013, HP filed its First Amended Answer and Counterclaims to Plaintiffs' First Amended Complaint. ECF No. 74. On August 19, 2013, HP filed its First Amended Answer to Plaintiff's First Amended Complaint and First Amended Counterclaims. ECF 100 ("FACC").

On September 9, 2013, Benedict filed a motion for Rule 11 sanctions against HP and HP's counsel, requesting that the Court dismiss the FACC and issue appropriate sanctions. ECF No. 105 ("Mot."). On September 9, 2013, Benedict also moved to dismiss both counterclaims in the FACC. ECF No. 107. On October 3, 2013, HP filed a combined opposition to both Benedict's motion to dismiss and Benedict's motion for Rule 11 sanctions. ECF No. 130 ("Opp'n"). On October 21,

---

[1] The Court need not hold a hearing simply because the issue at hand involves sanctions. *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1027 (9th Cir. 1994) (holding that Rule 11 sanctions require notice and an opportunity to be heard, but not necessarily a hearing, and that the "chance to respond through submission of a brief is usually all that due process requires").

2

United States District Court
For the Northern District of California

2013, Benedict filed a consolidated reply in support of both his motion to dismiss and his motion for Rule 11 sanctions. ECF No. 145.[2]

### B.    Factual Background of this Litigation

Benedict's Rule 11 motion asks this Court to impose sanctions on HP "in connection with HP's filings of its First Amended Counterclaims [] against [Benedict]" for breach of contract and replevin. Mot. at 1. The Court does not repeat here all of the allegations in HP's FACC with respect to HP's two counterclaims, as those are stated in this Court's Order regarding Benedict's motion to dismiss the FACC. Where necessary, those allegations are discussed in later sections of this Order. Here, in order to provide the necessary background for Benedict's Rule 11 motion, the Court provides a summary of how HP's counterclaims arose in the context of this wage and hour class action lawsuit, and describes the relevant aspects of the procedural history and the parties' interactions regarding HP's amended counterclaims.

It is undisputed that while Benedict was an employee at HP, HP gave him a work-issued laptop to use while on the job, and that shortly before resigning from HP, Benedict "imaged," i.e., copied, that entire laptop hard drive, which contained HP property. FACC ¶¶ 7, 12, 24; Mot. at 2.[3] HP alleges that the laptop drive included large amounts of highly confidential and proprietary HP information including proprietary software, licensing keys, program files, and customer information, *see* FACC ¶ 25, and that Benedict's copying and retention of the material was a direct breach of the confidentiality agreement Benedict had entered with HP upon receiving his offer of employment as well as the nondisclosure policies to which he had agreed. *Id.* ¶¶ 14-17, 26, 18 (alleging that one part of confidential agreement Benedict signed stated that "I will not remove any HP property from HP premises without HP's permission. Upon termination of my employment with HP, I will return all HP property to HP unless HP's written permission to keep it is obtained."). HP alleges that "[i]n addition to retaining the [copies of his work-issued laptop], after his resignation, [Benedict] retained HP property on other personal drives and devices." *Id.* ¶ 28; *see*

---

[2] The Court addresses Benedict's motion to dismiss the FACC in a separate Order.
[3] While HP alleges that Benedict made two copies of the hard drive, *see* FACC ¶¶ 22, 24, Benedict claims he made one copy. Mot. at 2.

3

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    *also id.* ¶ 35(a) ("[F]or over a year he secretly retained those images and other personal devices

2    containing HP property."). Benedict claims that the only reason he copied his work-issued laptop

3    drive was to ensure that he retained all the personal materials he had on the laptop before turning

4    the laptop in, and that he has not disclosed any HP property to anyone except his attorneys at Lieff,

5    Cabraser, Heimann & Bernstein since resigning from HP. Mot. at 2; ECF No. 56 (Declaration of

6    Eric Benedict, ¶ 3) ("Benedict Decl."); Declaration of Max C. Fischer Ex. C, Benedict's July 15,

7    2013 Deposition, ECF No. 133-7, at 43:9-11 ("Benedict Depo."). HP disputes Benedict's claims.

8    Opp'n. at 19-21; 22-23.

9        HP alleges the following about how HP first found out about Benedict's copying and

10   retention of the laptop drive. In the course of the wage and hour putative class action Benedict and

11   other named Plaintiffs brought against HP, Benedict disclosed five HP proprietary documents to

12   his attorneys, including one to which Benedict would not have had access in the normal course of

13   his duties as a non-manager. FACC ¶ 27, 33; Declaration of Wendy M. Lazeron, ECF No. 136, ¶ 3,

14   6 ("Lazerson Decl."); Declaration of Ans Gregory, ECF No. 44 ¶¶ 8-9 ("Gregory Decl. #1"). HP

15   found out about this when Benedict's attorneys produced those documents to HP as part of

16   Benedict's initial disclosures on April 17, 2013. *Id.* Benedict does not dispute whether he gave

17   these five documents to his attorneys, but simply states that on May 3, 2013, some three weeks

18   after Benedict served his initial disclosures, Benedict's counsel sent HP's counsel a letter stating

19   that Benedict had made and retained "an image" of his work-issued laptop drive, and promising

20   that Benedict's counsel would return to HP "all documents, electronic or otherwise, that appear to

21   constitute HP property." Mot. at 4 (citing Sagafi Declaration, Ex. A, ECF No. 106-1, "letter"). HP

22   does not dispute that Benedict's lawyers sent HP's counsel this letter. Opp'n. at 7.

23       After discovering that Benedict had copied his work-issued laptop without authorization,

24   HP sought to secure any devices Benedict had which contained HP property, and thus filed a

25   temporary restraining order along with three proposed counterclaims against Benedict for

26   misappropriation, breach of contract, and conversion. Lazerson Decl. ¶ 25; ECF No. 41 (ex parte

27   application for temporary restraining order asking the Court to order Benedict to return all copies

28

4

Case No.: 13-CV-00119-LHK
ORDER DENYING ERIC BENEDICT'S MOTION FOR RULE 11 SANCTIONS AGAINST HEWLETT-
PACKARD AND HEWLETT-PACKARD'S COUNSEL

of his work-issued laptop drive and any HP property in his possession to HP and to prevent him from copying or disclosing any HP property).[4] Benedict filed an opposition, claiming he had a privacy interest in the personal material he had retained on those copies of the laptop drive. ECF No. 47. Without reaching the merits of HP's application for temporary injunctive relief, the Court ordered the parties to meet and confer and to identify a third party vendor that would segregate all of Benedict's personal material on the copies from any HP property on the copies. ECF No. 49. Once the parties selected a vendor and notified the Court that they would meet and confer to discuss how the third party vendor segregation process would work, *see* ECF No. 50, the Court denied HP's application for temporary injunctive relief as moot. ECF No. 51. Shortly thereafter, on May 16, 2013, Benedict's attorneys revealed to HP that Benedict had six other personal devices potentially containing HP property, including two more hard drives and four other smaller devices. Declaration of Max C. Fischer, ECF No. 127, ¶ 24 ("Fischer Decl.") and Ex. Z to Fischer Decl., ECF No. 128-6.

On May 30, 2013, the Court issued a Case Management Order providing further instructions to the parties regarding the "Segregation and Return of Data to Plaintiff and HP," ECF No. 60, holding that the "third party vendor shall make and retain a full reimage of the HP laptop and any HP material on any of Plaintiff's or Plaintiff's family's devices or backup system. The third party vendor shall create a log of all HP material by file name, document title if readily available, and document type. If the vendor is unsure about whether a document contains HP material, both Plaintiff's and Defendant's counsel should review the document." *Id.* at 2. Benedict claims that he gave the third party vendor the copy of his work-issued laptop hard drive and relinquished control of any devices in his possession that he knew to contain HP property. Mot. at 3 (citing Benedict Decl., ¶ 4; Benedict Depo. at 24:14-19). He also claims that he has "consistently

---

[4] Benedict claims that HP filed this application for a temporary restraining order despite Benedict's "repeatedly stated commitment to return" all HP property in Benedict's possession to HP, and that HP "refused to cooperate in a plan for segregating and returning the Disputed Material to HP." Mot. at 5, 7. HP disagrees, claiming that HP did not refuse to meet and confer about a segregation process in which a third party vendor would review the copies of the drive Benedict had made. Opp'n. at 10; Lazerson Decl., ¶ 18.

Case No.: 13-CV-00119-LHK
ORDER DENYING ERIC BENEDICT'S MOTION FOR RULE 11 SANCTIONS AGAINST HEWLETT-PACKARD AND HEWLETT-PACKARD'S COUNSEL

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   agreed that he will return all material in which HP asserts a property interest." Mot. at 2-3, 5. HP

2   agrees that Benedict deposited the two copies of his laptop hard drive he had made with the third

3   party vendor, Opp'n. at 16; Fischer Decl. ¶ 44, but alleges that "Benedict continues to possess HP

4   property himself" and that Benedict has "admitted that he continues to possess certain HP-

5   proprietary material in an email account, that he has not searched all of his personal devices for

6   HP-related material, and that it is conceivable that he has not returned or dispossessed himself of

7   all HP property." FACC ¶¶ 35(h), 46.

8        On June 14, 2013, HP filed its original counterclaims against Benedict for trade secret

9   misappropriation, breach of contract, and conversion. ECF No. 74. On July 5, 2013, Benedict filed

10   a motion to dismiss those counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF

11   No. 88. On July 15, 2013, HP took a special two hour deposition of Benedict regarding how he

12   copied his laptop drive, as allowed by the Court's Case Management Order. ECF No. 60 at 2; *see*

13   *generally* Benedict Depo. Between July 16, 2013 and July 30, 2013, the parties engaged in

14   informal settlement discussions regarding HP's counterclaims. Lazerson Decl. ¶ 29; Fischer Decl.

15   ¶¶ 32-38.

16        On August 2, 2013, the parties filed a joint stipulation in which they outlined the process

17   through which the parties' property would be separated by the third party vendor on the devices

18   Benedict had provided to the vendor. ECF No. 92. On August 19, 2013, HP filed amended

19   counterclaims, dismissing without prejudice its misappropriation and conversion claims, and

20   adding a claim in replevin. ECF No. 100. On September 9, 2013, Benedict filed the instant Rule 11

21   Motion "in connection with HP's filings of its First Amended Counterclaims [] against [Benedict]."

22   ECF No. 105. HP sought injunctive relief prohibiting Benedict form using, copying, disclosing, or

23   deleting any HP confidential information in his possession and ordering the return and disclosure

24   of any HP property in his possession to HP. FACC ¶ 47; *id.* Prayer for Relief, ¶ 2.

25   **II.    LEGAL STANDARD**

26        **A.    Motion for Rule 11 Sanctions**

27        Federal Rule of Civil Procedure Rule 11 states in pertinent part:

28

Case No.: 13-CV-00119-LHK
ORDER DENYING ERIC BENEDICT'S MOTION FOR RULE 11 SANCTIONS AGAINST HEWLETT-
PACKARD AND HEWLETT-PACKARD'S COUNSEL

**(b)** By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

> **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . .

**(c)** Sanctions. (1) *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.

Fed. R. Civ. P. 11(b)-(c).

Rule 11 sanctions are appropriate "when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. Cnty. of L.A.*, 120 F.3d 982, 985 (9th Cir. 1997) (citation omitted). The Ninth Circuit has identified two circumstances where Rule 11 sanctions may be imposed: where a litigant makes a "frivolous filing," that is where he files a pleading or other paper which no competent attorney could believe was well-grounded in fact and warranted by law, and where a litigant files a pleading or paper for an "improper purpose," such as personal or economic harassment. *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir. 1987). Where the Court finds a complaint is non-frivolous, the Court need not reach the "improper purpose" analysis because "a non-frivolous complaint cannot be said to be filed for an improper purpose." *Id.* at 885-86.

A frivolous filing is one that is "*both* baseless *and* made without a reasonable and competent inquiry." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996) (citation omitted) (emphasis in original). Accordingly, when a complaint is challenged under Rule 11, a district court must conduct a two-prong inquiry to determine whether the complaint is frivolous: "(1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if

7

**United States District Court**
For the Northern District of California

1   the attorney has conducted a reasonable and competent inquiry before signing and filing it."

2   *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (citation and internal quotation marks

3   omitted). The "baseless" and "reasonable inquiry" requirements are conjunctive, not disjunctive.

4   Therefore, "[a]n attorney may not be sanctioned for a [filing] that is not well-founded, so long as

5   she conducted a reasonable inquiry." *In re Keegan*, 78 F.3d at 434. By the same token, a signer

6   cannot "be sanctioned for a complaint which is well-founded, solely because she failed to conduct

7   a reasonable inquiry[.]" *Id.*

8        When Rule 11 sanctions are party-initiated, the burden is on the moving party to

9   demonstrate why sanctions are justified. *See Tom Growney Equip., Inc. v. Shelley Irr. Dev., Inc.*,

10  834 F.2d 833, 837 (9th Cir. 1987). The Ninth Circuit has held that Rule 11 sanctions are "an

11  extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Trust*

12  *v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). They are reserved for "rare and exceptional

13  case[s] where the action is clearly frivolous, legally unreasonable or without legal foundation, or

14  brought for an improper purpose." *Id.* at 1344. "Rule 11 must not be construed so as to conflict

15  with the primary duty of an attorney to represent his or her client zealously." *Id.*

**III.   DISCUSSION**

17       Benedict moves for Rule 11 sanctions against HP and HP's counsel on the basis that HP's

18  amended counterclaims "fail[] to satisfy Rule 11's pleading requirements." Mot. at 12. In response,

19  HP argues that the Rule 11 motion should be denied because "HP's claims are not factually or

20  legally frivolous, are reasonably based on investigation permitted by Benedict, and were not

21  brought for an improper purpose." Opp'n. at 29. Below, the Court addresses, in turn, whether or

22  not HP's counterclaims are legally and factually baseless, whether HP's attorneys conducted a

23  reasonable inquiry before filing the amended counterclaims, and whether the counterclaims were

24  brought for an improper purpose. The Court concludes that Rule 11 sanctions are not warranted in

25  this case, and accordingly DENIES Benedict's request for dismissal of the FACC and appropriate

26  sanctions. Mot. at 17.

27

28

Case No.: 13-CV-00119-LHK
ORDER DENYING ERIC BENEDICT'S MOTION FOR RULE 11 SANCTIONS AGAINST HEWLETT-
PACKARD AND HEWLETT-PACKARD'S COUNSEL

## A. HP's Counterclaims Are Not Factually Baseless

Benedict argues that HP's counterclaims are "based on speculation and false contentions," but presents only one specific argument regarding why this is the case: HP "has no factual basis for [its] damages allegations." Mot. at 12-13; Reply at 12 ("Neither HP's pleadings nor its Rule 11 response contains any concrete facts to support its allegations of damage[.]"). Because damages are only an element of HP's breach of contract claim and not HP's replevin claim, the Court only addresses whether or not HP's breach of contract counterclaim specifically lacks sufficient factual basis for its allegation of damage.[5] The Court concludes that the damages allegations are not factually baseless, as explained below.

"Rule 11 sanctions are appropriate if the allegations and other factual contentions entirely lack evidentiary support." *Stiglich v. Contra Costa County Bd. Of Supervisors*, 1997 U.S. App. LEXIS 897 (9th Cir. 1997). "A claim is . . . factually baseless if it lacks factual foundation." *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, No. 04–00689, 2007 WL 6137003, at *3 (C.D. Cal. 2007) (citing *Estate of Blue*, 120 F.3d at 985). A claim is "'well-grounded in fact' if an independent examination reveals 'some credible evidence' in support of a party's statements." *Himaka v. Buddhist Churches of Am.*, 917 F. Supp. 698, 710 (N.D. Cal. 1995). A claim that has "some plausible basis, [even] a weak one," is sufficient to avoid sanctions under Rule 11. *United Nat. Ins. Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1117 (9th Cir. 2001). The standard is not a high one. *See Cal. Architectural Bldg. Prods. v. Franciscan Ceramics*, 818 F.2d 1466, 1472 (9th Cir. 1987) (reversing grant of Rule 11 sanctions where, although evidence was "weak" and could not survive summary judgment, court could not "say that the complaint [was] so lacking in plausibility as to . . . subject [the attorney] to" sanctions). Further, "circumstantial evidence, and the reasonable inferences drawn from that evidence, are treated as evidentiary support" for purposes of Rule 11. *MetLife Bank, N.A. v. Badostain*, 10–CV–118–CWD, 2010 WL 5559693, at *6 (D. Idaho 2010)

---

[5] The Court further notes that in Benedict's Reply, Benedict's arguments are similarly restricted to the issue of whether HP's breach of contract claim is factually baseless. *See* Reply at 11 ("HP supports its *breach of contract* counterclaim with the following vague allegations of damage.") (emphasis added).

Case No.: 13-CV-00119-LHK
ORDER DENYING ERIC BENEDICT'S MOTION FOR RULE 11 SANCTIONS AGAINST HEWLETT-PACKARD AND HEWLETT-PACKARD'S COUNSEL

United States District Court
For the Northern District of California

1    (internal citation and quotation marks omitted); *Rachel v. Banana Rep. Inc*., 831 F.2d 1503, 1508

2    (9th Cir. 1987) (reversing sanctions because of existence of circumstantial evidence plaintiffs

3    relied upon in their complaint); *see also Golden Gate Way, LLC v. Stewart*, C09-04458, 2011 WL

4    3667496, at *4 (N.D. Cal. Aug. 22, 2011) ("an inference, reasonably drawn from the undisputed

5    circumstantial evidence, suffices"). While the Court generally considers what facts were known by

6    the plaintiff at the time of suit, the court must also consider "after-acquired factual evidence" if it

7    supports the claims. *Keegan*, 78 F.3d at 434.

8           Here, the Court concludes that HP's breach of contract counterclaim does not contain

9    factually baseless damages allegations because HP reasonably relied on circumstantial evidence as

10   a basis to infer that Benedict copied and retained HP's property to use it, actually did use it, and

11   that HP lost profits and reasonable royalties as a result. *See* FACC ¶ 35 (alleging HP has been

12   "harmed and damaged by [Benedict's] theft, secret retention, and/or use of HP's commercially

13   valuable property, including its valuable confidential information and proprietary developments;

14   such harm and damages includes but are not necessarily limited to lost profits, unjust enrichment,

15   and/or reasonable royalties."). As HP argues, "Benedict's undisputed breach of the [confidential

16   agreement he had entered with HP] and taking of HP property, combined with other circumstances

17   relating to his theft and subsequent conduct, provide[d] an objectively reasonable basis to infer that

18   Benedict took the property for an illicit use" and "that he did so," thus "entitling HP to the lost

19   profits" HP alleges in the FACC. Opp'n. at 19, 21, 30. The Court summarizes six categories of

20   such circumstantial evidence below.

21          First, it is undisputed that before resigning from HP, Benedict copied his work-issued

22   laptop drive, which contained HP property. That HP property contained not only substantial

23   volumes of highly confidential company and customer information, *see* Declaration of Ravneet

24   Gill, ECF No. 134, ¶ 6 ("Gill Decl."); Declaration of David R. Carpenter, ECF No. 133-3, ¶¶ 3-6

25   ("Carpenter Decl."); Fischer Decl. ¶ 45, but also included highly confidential documents to which

26   Benedict should *not* have had access in the normal course of his duties as a non-manager at HP.

27   *See* Lazerson Decl. ¶ 6; Gregory Decl. #1 ¶¶ 8-9.

28

Case No.: 13-CV-00119-LHK
ORDER DENYING ERIC BENEDICT'S MOTION FOR RULE 11 SANCTIONS AGAINST HEWLETT-
PACKARD AND HEWLETT-PACKARD'S COUNSEL

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Second, Benedict did not tell his direct manager that he was making any such copies nor

2    asked for permission to do so. Gill Decl. ¶ 1, 5; Benedict Depo. at 78:1-6 (admitting he did not ask

3    for permission to copy his laptop drive). Benedict also did not voluntarily self-disclose to HP, for

4    over a year after leaving HP, the fact that he had copied and retained this HP property. Lazerson

5    Decl. ¶ 6. Rather, HP found out only because Benedict's attorneys disclosed certain highly

6    confidential HP documents to HP when making Benedict's Rule 26 initial disclosures in the instant

7    putative class action litigation. *Id.* ¶ 3. Only at that point, when HP asked Benedict's attorneys to

8    return the HP property immediately, Benedict's attorneys responded by stating that Benedict had

9    come into possession of the HP property when he imaged the laptop drive shortly before his

10   resignation. *Id.* ¶¶ 9-10.

11   Third, HP had evidence that it is highly unusual for an employee to copy his entire work

12   laptop drive upon resigning simply to ensure he would retain his personal files. Declaration of Ans

13   Gregory, ECF No. 131, ¶ 6 ("Gregory Decl. #2"); Gill Decl. ¶¶ 6-7. This is because employees

14   typically separate out their personal files themselves, or request other HP personnel to do so. Gill

15   Decl. ¶ 7; Declaration of Michael Menz, ECF No. 137, ¶ 6 ("Menz Decl.") ("In my three decades

16   of cyber-security investigation experience with law enforcement and HP, I have never seen any

17   case in which a departing employee *imaged his entire hard drive or* otherwise had taken large

18   volumes of company information upon leaving, simply to retain personal files.") (emphasis in

19   original); Menz Decl. ¶ 7 ("[M]y office routinely – that is, several times a month – handles requests

20   from departing employees who are turning in their work-issued devices, but who ask the company

21   to extract and return their personal files."). Various HP personnel also found Benedict's

22   explanation that he copied the drive to retain his personal materials highly implausible because

23   first, any HP employee would know that copying the drive without permission is impermissible

24   and violates HP's confidentiality agreement with its employees, and second, because any

25   technologically sophisticated person would know how to segregate out their own personal files.

26   Declaration of Donald G. Billings, ECF No. 133-4, ¶ 3 ("Billings Decl."); Menz Decl. ¶¶ 7-10;

27   Gregory Decl. #2 ¶ 6; Gill Decl. ¶¶ 6-7. HP also had evidence that when employees had taken

28

11

1   company property with them in the past without any improper intent, it generally involved small

2   amounts of files that were inadvertently retained, Menz Decl. ¶ 5, while here, Benedict's complete

3   copy of his work drive contained a large number of files, i.e., 220 gigabytes of data. *Id.* ¶ 3, 6

4   (noting that in hundreds of investigations over three decades of his experience with law

5   enforcement and HP, he has never seen an employee take such large amounts of company

6   information except for an illicit use).

7          Fourth, HP had evidence that Benedict copied the HP property right as he was leaving to

8   work for a company that competes with HP in the enterprise software industry. Fischer Decl. ¶ 26,

9   and Exs. E-J, ECF Nos. 133-9 – 133-14; Benedict Depo. at 89:7-13 (admitting that his new

10  employer creates enterprise software like HP and advertises how its products incorporate enterprise

11  security technology); Fischer Decl. Ex. D, ECF No. 133-8 (Benedict's resume describing his new

12  job as involving the support of "enterprise system, application, and security administrators."). This

13  suggested to HP that Benedict had the opportunity to exploit the HP property in his new job, and

14  thus took it to do so. Lazerson Decl. ¶ 27; Fischer Decl. ¶ 26; Billings Decl. ¶ 8; Menz Decl. ¶ 14

15  ("[T]he fact Mr. Benedict copied and took HP information upon leaving for another enterprise

16  software company, in my experience and professional judgment, further supports an inference that

17  Mr. Benedict copied and took HP information to exploit it in his new job, whether directly or

18  indirectly.").

19         Fifth, HP had evidence that Benedict is not adverse to using or disclosing the HP property,

20  despite not working at HP anymore. Benedict has admitted that he read some of the HP material on

21  the copy of his laptop drive after resigning. Benedict Depo. at 42:3-18. Benedict also disclosed

22  various HP documents to his attorneys to use against HP in his putative class action lawsuit against

23  HP, Lazerson Decl. ¶ 10, thus suggesting he is willing to disclose HP property to unauthorized

24  third parties when it is for his own benefit.

25         Last, HP had other circumstantial evidence that Benedict had consciousness of guilt with

26  respect to his copying of the HP property, which suggests Benedict copied the HP property for an

27  improper purpose. For instance, Benedict admitted that he destroyed some evidence of HP property

28

12

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    on one of his personal devices before providing all relevant devices with HP property to the third

2    party vendor who has been tasked with segregating Benedict's personal information from HP's

3    property. Benedict Depo. at 21:24-23:1; Menz Decl. ¶¶ 15-17 (noting that Benedict's destruction of

4    some HP property suggests that he took HP property to use it without authorization after leaving

5    HP). Benedict also resigned from HP without giving HP notice of his resignation before the day he

6    resigned, which was highly unusual in the enterprise security department, Gill Decl. ¶ 4; Benedict

7    Depo. at 74:4-5, thus supporting a plausible inference that Benedict may have wanted to limit HP's

8    ability to inquire into the circumstances surrounding his departure and whether he was following

9    all company policies upon leaving.

10         While Benedict argues, in response to this evidence cited by HP, that "[n]one of this

11   speculation adds up to establish a factual basis for HP's claim of actual damages," Reply at 12, the

12   Court disagrees. A claim that has "some plausible basis, [even] a weak one," is sufficient to avoid

13   sanctions under Rule 11. *United Nat. Ins. Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1117 (9th Cir.

14   2001). Regardless of how HP's breach of contract claim would fare at the summary judgment

15   stage, the circumstantial evidence cited above is, at least, sufficient to find that HP had some

16   factual basis to allege that Benedict took the HP property for an illicit use, did in fact use the

17   property, and thus that HP suffered lost profits and reasonable royalties as a result. This is because

18   there is evidence that Benedict (1) copied, without asking for authorization and in direct violation

19   of company policy, a large amount of highly confidential company information, some of which he

20   would not even have had access to as a regular non-managing employee; (2) did not voluntarily

21   disclose this fact to HP for over a year after he left; (3) had a suspect explanation for why he did so,

22   given that a technologically sophisticated person would know how to segregate out personal files

23   or would ask HP personnel to do so; (4) took the information right as he was leaving for a

24   competing company where he could readily apply the HP property; (5) was open to reading and

25   disclosing the HP property; and (6) felt the need to destroy certain evidence of HP property on his

26   personal devices without consulting HP. All of these facts at the very least comprise circumstantial

27   evidence that makes it plausible that Benedict had an illicit motive when copying his laptop drive

28

13

and that he acted on that motive by using the property in some way, thus leading to HP's loss of profits. *See Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 95 (3d Cir. 1988) (reversing award of sanctions where facts and circumstantial evidence "supported a *reasonable suspicion*" of wrongdoing by the defendant) (emphasis added); *Lebovitz v. Miller*, 856 F.2d 902, 906 (7th Cir. 1988) (reversing award of sanctions where facts supported a "reasonable inference that some wrongdoing was afoot").[6]

The Court notes that in reaching this conclusion, the Court rejects Benedict's implicit argument that HP has a burden to set out in its complaint, or to provide evidence of, exactly when and how Benedict used HP's property and precisely how HP lost profits or reasonable royalties as a result, because such an argument contradicts the plain language of Rule 11(b)(3), which expressly allows pleading based on a belief that the allegations "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *See also Twombly*, 550 U.S. at 556 (holding that a claim is facially plausible if there is at least a "reasonable expectation that proof will be uncovered in discovery"). Thus, Benedict's implicit suggestion that HP has to plead and prove every aspect of its claim at the time of filing suit is inconsistent with the case law, Rule 11, and other Ninth Circuit case law which Benedict himself acknowledges. *See* Mot. at 14 (citing *Holgate*, 425 F.3d at 676, which holds that "Rule 8(a)(2) does not require plaintiffs to lay out in detail the *facts* upon which their claims are based," but only "require[s] plaintiffs to provide 'a short and plain statement of the claim' to give the defendants fair notice of what the claim is and

---

[6] The Court's conclusion on this point is consistent with Ninth Circuit cases reversing sanctions where the complaint was not so lacking in plausibility as to make the lawyer's decision to certify the complaint subject to sanctions under Rule 11. For instance, in a copyright infringement action brought against Banana Republic, although the Ninth Circuit concluded that The Gap should not have been named as another defendant, the Ninth Circuit reversed Rule 11 sanctions against the plaintiff because the action was not so "baseless" or "lacking in plausibility" as to warrant sanctions. *Rachel*, 831 F.2d at 1508. In that case, plaintiff's counsel argued that it was reasonable for him to include The Gap as a defendant because it appeared to him that The Gap was intimately involved in financing and guiding Banana Republic and that the two corporations shared common officers and counsel, and because he had received a response on "The Gap" letterhead when he initially wrote to Banana Republic to allege copyright infringement. *Id.* Based on this *circumstantial evidence* that The Gap was involved in the illegal infringing acts, the Ninth Circuit reversed the district court's decision to award sanctions. *Id.*

14

United States District Court
For the Northern District of California

1    the grounds upon which it is based.") (citation omitted) (emphasis in original). Again, "an

2    inference, reasonably drawn from the undisputed circumstantial evidence, suffices" to show that a

3    claim is not factually baseless. *Golden Gate Way*, 2011 WL 3667496, at *4.[7][8]

4            Nor does this Court accept Benedict's argument that HP's damages allegations are factually

5    baseless because HP has "received substantial evidence of *no* harm." Mot. at 13 (emphasis in

6    original). Benedict does not specify what this "substantial evidence" consists of, but the Court

7    assumes Benedict refers to his attorneys' statement in the May 3, 2013 letter that Benedict

8    confirmed he has not disclosed HP property to anyone but his attorneys in the instant action, as

9    well as Benedict's deposition in which he states the same. Benedict Depo. at 43:9-11. The Court is

10   not convinced. Without discounting the import and weight of Benedict's testimony, the Court

11   nonetheless finds that Benedict's denials alone do not provide a basis to sanction HP because when

12   presented with some evidence contrary to their claim, HP, like all litigants, had the right to decide

13   whether to dismiss the action or proceed with discovery. Courts have rejected arguments analogous

14   to Benedict's argument in comparable cases. *See Malibu Media, LLC v. Maness*, No. 12-CV-

15   01873-RBJ-MEH, 2012 WL 7848837, at *6 (D. Colo. 2012), *report and recommendation adopted*,

16   12-CV-01873-RBJ, 2013 WL 1397275 (D. Colo. 2013) (declining to order sanctions under 28

17   U.S.C. § 1927 where plaintiff sued for copyright infringement notwithstanding defendant's pre-

18   filing proffer of evidence to the contrary because "[p]laintiff may be understandably and even

19   ────────────────

    [7] Benedict's implicit suggestion that Rule 11 sanctions are warranted absent some heightened
20   evidentiary showing of facts underlying HP's damages allegations is also arguably in tension with
    the Advisory Committee's warning that Rule 11 should not be used to test the legal sufficiency of a
21   party's claims. Fed. R. Civ. P. 11 Notes of Advisory Committee on Rules (1993) ("[Rule 11
    motions] should not be employed as a discovery device or to test the legal sufficiency or efficacy
22   of allegations in the pleadings; other motions are available for those purposes."). In determining
    whether Rule 11 sanctions should be imposed, the Court must not judge the merits of the action,
23   but rather, determines whether an attorney has abused the judicial process. *Cooter & Gell v.
    Hartmarx Corp.*, 496 U.S. 384, 396 (1990).
24   [8] Benedict's argument is also undermined by other authority holding that when the facts are in the
    defendant's control, "[i]t is not unreasonable to file a complaint so as to obtain the right to conduct
25   discovery where that discovery is necessary to establish a claim." *Beverly Gravel Inc. v.
    DiDomenico*, 908 F.2d 223, 226 (7th Cir. 1990) (internal quotation omitted) (upholding district
26   court's denial of Rule 11 sanctions); *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 447
    (5th Cir. 1992) (quotation omitted) ("Rule 11 must not bar the courthouse door to people who have
27   some support for a complaint but need discovery to prove their case.").

28                                                    15

    Case No.: 13-CV-00119-LHK
    ORDER DENYING ERIC BENEDICT'S MOTION FOR RULE 11 SANCTIONS AGAINST HEWLETT-
    PACKARD AND HEWLETT-PACKARD'S COUNSEL

United States District Court
For the Northern District of California

1    reasonably skeptical of a defendant's assertion of innocence," and "has a constitutional right to file

2    a lawsuit and engage in discovery to determine" whether there was infringement). As HP argues,

3    Rule 11 cannot possibly require that an attorney accept as true the uncorroborated denials of an

4    adversary because that would violate the Ninth Circuit's unambiguous holding that "Rule 11 must

5    not be construed so as to conflict with the primary duty of an attorney to represent his or her client

6    zealously." Opp'n. at 31 (citing *Operating Eng'rs Pension Trust*, 859 F.2d at 1345).

7            For the foregoing reasons, the Court concludes that HP's breach of contract counterclaim is

8    not factually baseless.[9]

9            **B.      HP's Counterclaims Are Not Legally Baseless**

10           Benedict argues that HP's counterclaims are "not warranted by existing law" because HP

11   "does not properly allege the elements of any of its two claims – breach of contract and replevin."

12   Mot. at 14; Reply at 12-13. The Court disagrees, and concludes that HP's counterclaims are not

13   legally baseless, as explained below.

14           To be "legally frivolous," a claim must be unwarranted by existing law or any reasonable

15   argument for the extension of existing law. Fed. R. Civ. P 11 (b)(2). The Ninth Circuit has held that

16   when a plaintiff fails to allege necessary elements of his claim, a court may find that the complaint

17   is legally baseless and thus impose Rule 11 sanctions. *Holgate*, 425 F.3d at 676. "The key question

18   in assessing frivolousness is whether a complaint states an arguable claim-not whether the pleader

19   is correct in his perception of the law." *Woodrum v. Woodward County, Okla.*, 866 F.2d 1121,

20   1127 (9th Cir. 1989).

21           Benedict's argument against HP's breach of contract counterclaim is essentially that breach

22   of contract under California law is not actionable without damage, and in this case, HP's breach of

23   contract claim is "devoid of any allegations regarding *how* HP was damaged. Such a claim is

---

24   [9] None of the other authorities Benedict cites, *see* Mot. at 12, convince the Court to reach a

25   different conclusion regarding whether HP's damages allegations are factually baseless, as they are
     clearly distinguishable. *See, e.g.*, *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1527-

26   28 (9th Cir. 1990) (upholding Rule 11 sanctions in case where complaint alleged that city official
     and judges conspired against plaintiff in a prior action because "[e]ach and every [one of twelve]

27   claim[s] lacked an adequate foundation in fact and/or in law" and complaint was simply "a
     collection of bare accusations unsupported by allegations of fact.").

28

Case No.: 13-CV-00119-LHK
ORDER DENYING ERIC BENEDICT'S MOTION FOR RULE 11 SANCTIONS AGAINST HEWLETT-
PACKARD AND HEWLETT-PACKARD'S COUNSEL

United States District Court
For the Northern District of California

1    legally unsustainable." Mot. at 14-15 (emphasis in original); Reply at 10 ("Nothing HP has

2    presented to the Court identifies what actual damage HP has suffered"). This argument is identical

3    to the argument the Court rejects in its Order addressing Benedict's Motion to Dismiss the breach

4    of contract counterclaim. As explained in that Order, contrary to Benedict's claim, HP has

5    adequately alleged the damages element of its counterclaim by alleging that "HP has been harmed

6    and damaged by [Benedict's] theft, secret retention, and/or use of HP's commercially valuable

7    property, including its valuable confidential information and proprietary developments; such harm

8    and damages include but are not necessarily limited to lost profits, unjust enrichment, and/or

9    reasonable royalties." FACC ¶ 35. In other words, the FACC specifically alleges that Benedict's

10   use and retention of HP's property harmed HP by forcing it to lose profits and reasonable royalties,

11   and thus Benedict is incorrect that the claim is devoid of allegations regarding how HP was

12   damaged or fails to identify the kind of damage HP suffered. As noted above, to require greater

13   facts from HP at this stage of the proceedings would contradict Rule 8's simplified pleading

14   standard. *Holgate*, 425 F.3d at 676 ("Rule 8(a)(2) does not require plaintiffs to lay out *in detail* the

15   *facts* upon which their claims are based," but only "require[s] plaintiffs to provide 'a short and

16   plain statement of the claim' to give the defendants fair notice of what the claim is and the grounds

17   upon which it is based.") (citation omitted) (emphasis added)). Thus, the Court concludes that HP's

18   breach of contract claim is not legally baseless.

19        Second, Benedict argues that "HP cannot maintain an action in replevin because [HP

20   property] is [no longer] in Mr. Benedict's possession and Mr. Benedict has no power over it." Mot.

21   at 15. He claims that HP's claim in replevin fails because it "ignores the jointly agreed-upon

22   segregation process the parties are following," *id.*, and contradicts the Court's orders and the

23   parties' stipulations by which a third party vendor is currently segregating HP's property from

24   Benedict's personal property in order to fairly facilitate the return of all HP property in Benedict's

25   possession to HP. *Id.* (citing ECF No. 49, 50, 60, 92, discussed in detail above, *see supra* Section

26   I.B). Benedict concludes that because HP "will obtain its [property] through the parties' agreed-

27   upon segregation process," HP's replevin action "has no basis in law and fails any standard of good

28

17

Case No.: 13-CV-00119-LHK
ORDER DENYING ERIC BENEDICT'S MOTION FOR RULE 11 SANCTIONS AGAINST HEWLETT-
PACKARD AND HEWLETT-PACKARD'S COUNSEL

United States District Court
For the Northern District of California

1  faith." *Id.* Again, here, Benedict's argument is precisely the same one the Court rejects in its Order

2  addressing Benedict's motion to dismiss the replevin claim.

3        As explained in the Court's Order addressing Benedict's motion to dismiss, Benedict's

4  argument is that HP's claim is now moot, given that this Court's orders and the parties' agreements

5  have set up a third party vendor process through which HP should eventually receive its property

6  back, and that the third party vendor process means that Benedict now lacks possession of and

7  control over HP's property. Mot. at 10 ("No threatened injury exists[,] as the orderly return of HP's

8  Disputed Material has begun."). Those Orders and stipulations, *see* ECF Nos. 49, 50, 60, 92, do in

9  fact demonstrate that this Court established a process through which a third party vendor is to

10  segregate HP property from Benedict's personal property on any devices Benedict provided the

11  third party vendor, and through which the vendor would then return any HP property the vendor

12  finds to HP. Further, the FACC does allege that at least the copies of the laptop drive which

13  Benedict made "and certain other devices containing HP property have been provided to a third

14  party vendor [by Benedict]." FACC ¶ 34. However, Benedict's argument nonetheless fails because

15  nothing in those Court Orders or stipulations definitively guarantees or establishes that Benedict no

16  longer has possession of at least some HP property, or that HP will certainly get all of its property

17  back such that this Court must conclude that HP's replevin claim is now moot. *See Chew v. Gates*,

18  27 F.3d 1432, 1437 (9th Cir. 1994) (holding that to dismiss a claim as moot, it must be shown that

19  there is no longer a live dispute between the parties or there is no longer a possibility that the

20  plaintiff can obtain relief). Notably, Benedict provides no conclusive evidence that the third party

21  vendor process is now complete such that HP has received all of its proprietary material back,[10] or

22  more importantly, that the third party vendor process is fool proof such that it ensured that

23  Benedict rendered *all* HP property in his possession to the vendor. Thus, while Benedict asserts

24

_____

25  [10] HP has provided a declaration noting that as of October 3, 2013, the parties were still continuing
to dispute both which files given to the third party vendor were to be designated as "Benedict's"

26  and which were to be designated as "HP's property," and the appropriate method for resolving
these disputes. Fischer Decl. ¶ 44; Opp'n. at 16-17. Further, it appears from ECF No. 156 (Parties'

27  Supplement to Discovery Dispute Joint Report #2) that the vendor's desegregation process was not
yet complete at least as of December 27, 2013.

28

18

**United States District Court**
For the Northern District of California

1   that he no longer has possession or control over HP property, there is still a live dispute as to

2   whether Benedict still has possession or control over any HP property, and it is at least still

3   plausible, as HP alleges, that Benedict kept some HP property without turning it over to the third

4   party vendor. *See* FACC ¶ 34 (alleging that the copies Benedict made and only "*certain* other

5   devices containing HP property have been provided [by Benedict] to the third party vendor")

6   (emphasis added); *id.* ¶ 35(h) (alleging that Benedict admitted in his deposition that "he continues

7   to possess certain HP-proprietary material in an email account, that he has not searched all of his

8   personal devices for HP-related material, and that it is conceivable that he has not returned or

9   dispossessed himself of all HP property"); *id.* ¶ 46 ("Benedict continues to possess HP property

10  himself.").[11] Accordingly, Benedict has failed to meet his burden of showing that HP's request for

11  relief is moot, and thus not warranted by law, simply because the third party process is currently

12  underway. *C.f. Allergan, Inc. v. Merz Pharm., LLC*, SACV 11-446 AG EX, 2012 WL 781705, at

13  *14 (C.D. Cal. 2012) (holding defendants failed to "meet their burden of demonstrating that

14  Allergan's request for injunctive relief is moot as a result of Defendants' claim that they have

15  returned, and no longer possess, any of Allergan's trade secrets" and that courts must "beware of

16  efforts to defeat injunctive relief by protestations of repentance and reform, especially when

17  abandonment seems timed to anticipate suit."). As HP argues, "Benedict cannot demand that HP's

18  claims for the return of its property be 'stricken' and 'dismissed with prejudice' when HP's

19  property still has not been fully accounted for or returned to it." Opp'n. at 28.

20         Further, while Benedict argues that HP's counterclaim in replevin fails because it "ignores

21  the jointly agreed-upon segregation process the parties are following," Mot. at 15, nothing in the

22  Court's Orders or parties' stipulations suggest that the third party vendor process waived HP's right

23  to bring a claim in replevin to enforce its right to retain its property. HP has a due process right to

24  have its claim resolved through formal adjudication in order to ensure that all of its property is, in

---

25  [11] This is especially true in light of the fact that HP's allegations imply that there is a dispute

26  between HP and Benedict regarding what is defined as "HP property." *See* FACC ¶ 35(g)
    ("[Benedict's] declaration does not define his understanding of what a 'proprietary interest' is and

27  does not address, simply by way of example, whether it includes Confidential Information and
    Proprietary Developments, as defined in his agreement with HP.").

28

Case No.: 13-CV-00119-LHK
ORDER DENYING ERIC BENEDICT'S MOTION FOR RULE 11 SANCTIONS AGAINST HEWLETT-
PACKARD AND HEWLETT-PACKARD'S COUNSEL

fact, returned to it, so long as its claim meets the standard set forth under Rule 11. In other words, HP can bring its claim so long as HP has reason to believe that its replevin claim is "warranted by existing law" and that HP's factual contention that Benedict still possesses some HP property has "evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . ." Fed. R. Civ. P. 11(b)(2)-(3). Here, HP had some factual basis to conclude, before filing its amended counterclaims, that Benedict still retains some HP property despite his assertion that he gave all his personal devices with any HP property on them to the vendor. Notably, Benedict admitted in his July 15, 2013 deposition that he still possessed HP documents in an email account, that he has not searched all of his personal devices for HP-related material, and that "there [was] certainly a possibility" that he had other devices containing HP property that he did not turn over to the third party vendor. Benedict Depo. at 24:17-25:18, 60:8-11, 101:15-102:7. Further, HP had evidence that Benedict defined "HP property" differently from how HP's confidentiality agreement with its employees defined "HP Property," thereby suggesting that Benedict might not have turned over all "HP property," as HP defined it, in his possession to the vendor. *See* Fischer Decl. Ex. HH, ECF No. 128-14 at 5-6 (Benedict's lawyers' revisions to proposed settlement agreement which Benedict's lawyers sent to HP's lawyers on July 30, 2013; revisions include a definition of "HP property" that is different from the definition in the HP confidentiality agreement Benedict signed with HP by specifically excluding the concept of "HP's proprietary developments").[12]

   Accordingly, the Court finds that HP's replevin counterclaim is not legally baseless.

---

[12] Benedict requests that all references to the parties' settlement communications be disregarded and stricken from the record pursuant to Fed. R. Evid. 408. *See* Reply at 10 n.7, 12 n.8. The Court OVERRULES this objection. Federal Rule of Evidence 408 provides that statements and conduct made during compromise negotiations are not admissible to prove the validity of a claim or impeach a prior inconsistent statement, but may be admitted for "another purpose." Fed. R. Evid. 408. Here, the Court admits these statements by Benedict's lawyers not as proof of the validity of HP's breach of contract claim nor to impeach Benedict's statements that he did not disclose any HP property to anyone but his lawyers, but to demonstrate that HP had a factual basis to bring its replevin counterclaim.

Case No.: 13-CV-00119-LHK
ORDER DENYING ERIC BENEDICT'S MOTION FOR RULE 11 SANCTIONS AGAINST HEWLETT-PACKARD AND HEWLETT-PACKARD'S COUNSEL

1

### C.  The Court Does Not Reach Whether HP Engaged in a Reasonable Investigation

2

3        An attorney has a duty prior to filing a complaint "to conduct a reasonable factual

4    investigation." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). "The reasonable

5    inquiry test is meant to assist courts in discovering whether an attorney, after conducting an

6    objectively reasonable inquiry into the facts and law, would have found the complaint to be well-

7    founded." *Id.* Such a factual investigation is "an inquiry reasonable under all the circumstances of a

8    case." *Townshend v. Holman Consulting Corp.*, 929 F.2d 1358, 1364 (9th Cir. 1990) (citation

9    omitted).

10       Here, Benedict argues that "HP does not appear to have investigated whether it suffered any

11   damages. Its approach has been to shoot first and ask questions later." Mot. at 14; *see also* Reply at

12   11 ("[N]othing HP has filed shows that . . . it performed a reasonable factual investigation into

13   whether it has suffered actual damage."). The Court need not reach whether HP conducted a

14   reasonable inquiry before filing its amended counterclaims because the Ninth Circuit has held that

15   an attorney "cannot be sanctioned for a complaint which is well-founded, solely because she failed

16   to conduct a reasonable inquiry[.]" *In re Keegan*, 78 F.3d at 434. In this case, the analysis in

17   Sections III.A & III.B establishes that HP's FACC is well-founded because the claims are not

18   legally and factually baseless. Accordingly, this Court cannot sanction HP on the basis that its

19   attorneys failed to conduct a reasonable inquiry before filing the FACC. *See id.; see also In re

20   Synadyne II, Inc.*, 05-56107, 2007 WL 1112657, *2 (9th Cir. 2007) (unpublished) ("We need not

21   reach [defendant's] argument that [plaintiff's] pre-filing investigation was inadequate, because

22   attorneys who file a well-founded complaint may not be sanctioned solely for failing to conduct a

23   reasonable inquiry. *See In re Keegan*, 78 F.3d at 434.").

### D.  HP's Counterclaims Were Not Brought for an Improper Purpose

24       Benedict argues that HP brought its counterclaims for an improper purpose, including

25   "harassment of or retaliation against Mr. Benedict for filing a [FLSA] claim against HP." Mot. at

26   15. He claims that "[b]ecause HP appears to have no credible basis for its claims, and because the

27   Disputed Material is in the process of being returned, it appears that the real purpose of HP's latest

28

Case No.: 13-CV-00119-LHK
ORDER DENYING ERIC BENEDICT'S MOTION FOR RULE 11 SANCTIONS AGAINST HEWLETT-
PACKARD AND HEWLETT-PACKARD'S COUNSEL

round of counterclaims is tactical." *Id.* He claims "there was zero need for HP's counterclaims," Reply at 13, and asserts that retaliation must have been HP's motive in filing them because HP has "persistently refus[ed] to meet and confer, [and] resist[ed] [] providing authority or evidence supporting its positions," and has pursued these counterclaims even in the "face of solid evidence that no damage whatsoever has resulted from Mr. Benedict's conduct, and despite Mr. Benedict's consistent willingness to cooperate in an on-going process to which both parties have agreed," Mot. at 16. In response, HP argues that its counterclaims have a proper factual and legal basis, and that it brought them solely for the proper purpose of "enforcing [HP's] rights, and fulfilling [HP's] contractual obligations to its customers, arising from Benedict's undisputed breach. That Benedict is pursuing FLSA claims against HP is immaterial." Opp'n. at 33.

The Court need not analyze the parties' arguments regarding whether the FACC was brought for an improper purpose. The Court's conclusion in Sections III.A & III.B above that the FACC was not factually and legally baseless means that the FACC is not "frivolous." *See Holgate*, 425 F.3d at 676 (holding that a frivolous complaint is one that is both legally and factually baseless, and made without a reasonable and competent inquiry). As such, Ninth Circuit law requires this Court to find that the FACC could not have been brought for an improper purpose. *See Greenberg*, 822 F.2d at 885-86 (holding that where the Court finds that a complaint is non-frivolous, the Court need not reach the "improper purpose" analysis because "a non-frivolous complaint cannot be said to be filed for an improper purpose."); *Golden Eagle Distribg. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986) (holding that a non-frivolous complaint "cannot be sanctioned as harassment under Rule 11, regardless of the subjective intent of the attorney or litigant") (citation omitted).[13] Accordingly, the Court holds that the FACC was not brought for an improper purpose.[14]

---

[13] Without reaching the merits of the parties' arguments regarding HP's subjective intent, the Court simply notes that the record suggests that HP has not brought the FACC solely for the improper purpose of retaliating against or harassing Benedict and his counsel, delaying the adjudication of Benedict's wage and hour claims, or needlessly increasing litigation expenses. HP has submitted various declarations indicating that an employee's copying of his work computer upon leaving is an extraordinary and extremely serious matter due to the nature of the confidential information at stake, *see, e.g.*, Menz Decl. ¶ 6-8, and that HP would have taken the same legal action against *any*

22

**E.      HP Will Not Be Awarded Its Reasonable Expenses**

When a party prevails on a Rule 11 motion, the court may award "if warranted, the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2). Here, HP seeks its "reasonable expenses, including attorneys' fees, incurred in defending the Rule 11 Motion[.]" Opp'n. at 34. HP argues Benedict has utilized this Rule 11 motion as a tactic to "intimidate HP's counsel into abandoning its client's interests and forfeiting claims *based on Benedict's admitted wrongdoing*, so as to shield Benedict from discovery that, HP believes, will reveal a broader course of wrongdoing." *Id.* (emphasis in original) (citing Rule 11 Adv. Comm. Notes 1993 Amendment which states that Rule 11 motions should not be brought "to intimidate an adversary into withdrawing claims that are fairly debatable").

While the Court has the discretion to grant such an award, the Court declines to grant HP its reasonable expenses in this instance. Although the Court rules in HP's favor on the merits of Benedict's Rule 11 arguments, it is not at all clear to the Court that Benedict's Rule 11 motion was brought simply as a tactic of intimidation and harassment, as HP contends. Nor is it entirely clear that HP itself has acted reasonably throughout all of its dealings with Benedict in this litigation. The Court has repeatedly acknowledged that both parties have failed to make good faith efforts to cooperate and resolve their respective issues throughout this case. *See, e.g.*, ECF No. 34 ("The Court is deeply disappointed by the parties' lack of cooperation and lack of reasonableness as evidenced by the parties' Joint Case Management Statement."); ECF No. 49 ("The Court remains

---

former employee who had copied such large amount of proprietary information and then subsequently refused to immediately relinquish the property upon being caught, *id.* ¶ 17; Lazerson Decl. ¶ 31. Although the parties had agreed to resolve their problems outside of court through the third party vendor process, HP was nonetheless still entitled to engage in a formal judicial adjudication process to ensure that all of its property was returned to it.

[14] Although Benedict expressly seeks sanctions "in connection with HP's filing of its First Amended Counterclaims," Mot. at 1, Benedict claims, in the fact section of his motion, that HP's application for a temporary restraining order was "groundless," Mot. at 8, and states in his Reply that HP's request for a TRO was "unnecessary." Reply at 10. Benedict further asserts that his Rule 11 motion also "concerns HP's conduct since May 2013." *Id.* However, Rule 11 sanctions can only be imposed for a "pleading, written motion, or other paper," and not *conduct*. Fed. R. Civ. P. 11(b). Further, with respect to the TRO, because Benedict has the burden on a Rule 11 motion but does not clearly specify whether he seeks sanctions specifically for HP's filing of the TRO, the Court declines to reach any argument that sanctions should be imposed on the basis of the TRO.

23

Case No.: 13-CV-00119-LHK
ORDER DENYING ERIC BENEDICT'S MOTION FOR RULE 11 SANCTIONS AGAINST HEWLETT-PACKARD AND HEWLETT-PACKARD'S COUNSEL

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

disappointed by the parties' lack of cooperation and reasonableness in this case."). Accordingly, the Court declines to grant HP its reasonable expenses in defending Benedict's Rule 11 motion.

**IV.    CONCLUSION**

For the foregoing reasons, the Court DENIES Benedict's motion for Rule 11 sanctions against HP and HP's counsel, and DENIES HP's request for its reasonable expenses incurred in defending the Rule 11 motion.

**IT IS SO ORDERD.**

Dated: January 21, 2014



LUCY H. KOH
United States District Judge

24

Case No.: 13-CV-00119-LHK
ORDER DENYING ERIC BENEDICT'S MOTION FOR RULE 11 SANCTIONS AGAINST HEWLETT-PACKARD AND HEWLETT-PACKARD'S COUNSEL