UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ERIC BENEDICT, RICHARD BOWDERS, and KILRICANOS VIEIRA, on behalf of themselves and classes of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HEWLETT-PACKARD COMPANY,<br><br>Defendant.<br><br>ERIC BENEDICT,<br><br>Counterdefendant,<br><br>v.<br><br>HEWLETT-PACKARD COMPANY,<br><br>Counterclaimant. | Case No.: 13-CV-00119-LHK<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION CERTIFICATION AND ISSUANCE OF NOTICE |

Eric Benedict, Richard Bowders, and Kilricanos Vieira ("Plaintiffs"), on behalf of themselves and classes of those similarly situated, move the Court to conditionally certify a collective action for Plaintiffs' federal wage and hour claim pursuant to 29 U.S.C. § 216(b). ECF No. 111-1 ("Mot."). Defendant Hewlett-Packard Company ("HP") filed an opposition on

1

United States District Court
For the Northern District of California

December 20, 2013. ECF No. 152-3 ("Opp'n"). Plaintiffs filed a reply on January 16, 2014. ECF No. 160 ("Reply"). Having considered the parties' arguments, the relevant law, and the record in this case, the Court GRANTS Plaintiffs' motion for conditional collective action certification, and AUTHORIZES mailing of Plaintiffs' proposed notice with the amendments outlined by the Court below.

## I.      BACKGROUND

### A.      Procedural History and the Instant Motion

On January 10, 2013, Plaintiff Eric Benedict filed this putative class action against HP, seeking to represent a nationwide collective action class of employees under the Federal Labor Standards Act ("FLSA"), and a California class of employees under California law. ECF No. 1. He alleged (1) violations of FLSA, 29 U.S.C. §§ 201, *et seq*; and (2) violations of various California state laws. *Id.* On February 22, 2013, HP filed its answer to the complaint. ECF No. 22. On May 31, 2013, Plaintiffs filed their First Amended Complaint, adding as named Plaintiffs Kilricanos Vieira and Richard Bowders, who seek to represent Massachusetts and Maryland classes under their respective state laws. ECF No. 64 (hereinafter "FAC"). On June 14, 2013, HP filed its First Amended Answer and Counterclaims to Plaintiffs' FAC. ECF No. 74. On August 19, 2013, HP filed its First Amended Answer and First Amended Counterclaims. ECF 100.

In the instant motion, Plaintiffs seek conditional certification of a FLSA collective action, which would permit court-authorized notices to be sent to potential opt-in Plaintiffs. Plaintiffs assert that HP violated FLSA by misclassifying them as exempt from overtime pay requirements and thus denying them overtime compensation to which they were entitled. FAC ¶ 8; Mot. at 1. The class Plaintiffs propose for their FLSA collective action consists of:

> "All persons who were, are, or will be employed by HP nationwide from January 10, 2010, to end of the opt-in period (a) in the Technical Solutions Consultant I, II, or III; Field Technical Support Consultant I, II, or III; or Technology Consultant I, II, or III Job titles, (b) with the HR designation "Individual Contributor," and (c) classified as Exempt from the overtime pay requirements of the FLSA (collectively, "Technical Support Workers" or "Class Members")."

United States District Court
For the Northern District of California

Mot. at 1. Plaintiffs seek an order (1) conditionally certifying the proposed FLSA class, (2) requiring HP to produce an updated class list to Plaintiffs' counsel, and (3) directing the dissemination of the notice of the pendency of the action by mail and email, pursuant to 29 U.S.C. § 216(b). *Id.* Plaintiffs claim there are 9,800 individuals nationwide who are "similarly situated" to the named Plaintiffs and opt-in Plaintiffs in this case. *Id.*

## B.    Allegations in the FAC and Evidence Submitted by Both Parties

Defendant HP "is a corporation that provides information technology products and services throughout the United States and the world, with its principal place of business located in Palo Alto, California." FAC ¶ 20; Mot. at 1. Named Plaintiffs Eric Benedict and Kilricanos Vieira are former HP Technical Solutions Consultants, and named Plaintiff Richard Bowders is presently a Field Technical Support Consultant at HP. FAC ¶¶ 16-18; Mot. at 2.

The FAC alleges that "[t]he FLSA requires each covered employer, including HP, to compensate all nonexempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek. The Nationwide FLSA Plaintiffs are entitled to be paid overtime compensation for all overtime hours worked. At all relevant times, HP, pursuant to its policies and practices, failed and refused to pay overtime premiums to the Nationwide FLSA Plaintiffs for their hours worked in excess of forty hours per week. By failing to compensate Plaintiffs and the Nationwide FLSA Plaintiffs at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, HP has violated, and continues to violate, the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. § 207(a)(1) and § 215(a)." FAC ¶¶ 53-56. The FAC further alleges that (1) "Plaintiffs were employed as technical support workers. Technical support workers at HP have the primary duties of installing, maintaining, and/or supporting computer software and/or hardware for HP. They were and/or are misclassified by HP as exempt from the overtime provisions of the FLSA;" (2) "Plaintiffs and Nationwide FLSA Plaintiffs are similarly situated in that they have substantially similar job requirements and pay provisions, and are subject to HP's common practice, policy, or plan of unlawfully characterizing Nationwide FLSA Plaintiffs as exempt

3

Case No.: 13-CV-00119-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION
CERTIFICATION AND ISSUANCE OF NOTICE

**United States District Court**
For the Northern District of California

1  employees and refusing to pay them overtime in violation of the FLSA;" (3) "[T]he claims of

2  Plaintiffs are similar to the claims of the Nationwide FLSA Plaintiffs;" and (4) "It is likely that

3  other similarly situated individuals will sign consent forms and join as Plaintiffs on this claim in

4  the future." *Id.* ¶¶ 8, 22, 23, 52.[1]

5          In their motion, Plaintiffs argue that that "they were misclassified as exempt and therefore

6  not paid properly by HP." Mot. at 1. Plaintiffs argue that the putative class members are similarly

7  situated with respect to Plaintiffs' FLSA misclassification claims because they perform "similar job

8  duties and each has been uniformly classified as exempt and denied overtime pay." *Id.* They claim

9  that their "substantial evidence - in the form of detailed allegations, 33 class member declarations,

10  and HP's own standard corporate documents – readily satisfies the lenient 'notice-stage' FLSA

11  certification standard applicable  . . ." *Id.* Plaintiffs cite how HP's "Job Architecture Policy"

12  categorizes HP employees into uniform job titles based on employees' job duties, and how all

13  putative class members were subject to the same policy which categorized them as exempt from

14  FLSA's overtime compensation requirements based on their global job level. Mot. at 2; Reply at 5-

15  6. In support of their motion, Plaintiffs have submitted the following evidence: (1) HP's Global Job

16  Architecture Policy, ECF No. 112-1 ("Job Architecture Policy"); (2) Deposition of Michelle

17  Albert, HP human resources specialist, ECF No. 112-2 & 160-2 ("Albert Depo."); (3) HP's "Job

18  Architecture Overview" Presentation, ECF No. 112-3 ("Job Architecture Overview"); (4)

19  Deposition of Kim Ortolani, ECF No. 112-4 ("Ortolani Depo."); (5) HP's "Services Job Function

20  chart," ECF No. 112-5 ("Services Job Function Chart"); (6) Declarations of 30 potential class

21  members, 25 of whom worked as Technology Consultants, two of whom worked as Field

22  Technical Support Consultants, and three of whom worked as Technical Solutions Consultants at

23  HP, ECF No. 113-1 – 113-30;[2] (7) Declaration of Eric Benedict, ECF No. 114 ("Benedict Decl.");

24
[1] Plaintiffs further allege that "Plaintiffs, on behalf of themselves and the Nationwide FLSA
25  Plaintiffs, seek damages in the amount of unpaid overtime compensation, liquidated damages as
provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the
26  Court deems just and proper." FAC ¶ 60.
[2] The declarations submitted by putative class members, separate from the three named Plaintiffs,
27  are cited throughout this Order as "Decl. #." The term "#" refers to the corresponding tab number
in the Plaintiffs' submission of class member declarations. *See* ECF No. 113-1 – 113-30.
28

Case No.: 13-CV-00119-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION
CERTIFICATION AND ISSUANCE OF NOTICE

**United States District Court**
For the Northern District of California

1    (8) Declaration of Richard Bowders, ECF No. 115 ("Bowders Decl."); and (9) Declaration of

2    Kilricanos Vieira, ECF No. 116 ("Vieira Decl.").

3         In opposition to Plaintiffs' motion, HP submitted, in relevant part, (1) 57 declarations from

4    various HP employees, *see* ECF Nos. 152-5, 152-6, 152-36;[3] (2) Job Descriptions for positions

5    within the three "job families" at issue in this action, *see* ECF No. 153-3, 153-4, 153-5; (3)

6    Deposition of Eric Benedict, ECF Nos. 153-10 ("Benedict Depo."); (4) Deposition of Kilricanos

7    Vieira, ECF No. 153-9 ("Vieira Depo."); and (5) Deposition of Richard Bowders, ECF No. 153-6

8    ("Bowders Depo.").

9              **C.    HP's "Job Architecture" System**

10        Both parties have submitted evidence regarding HP's Job Architecture Policy, which is

11   relevant to the issues presented in Plaintiffs' motion. HP categorizes its employees using a Job

12   Architecture system, which "organize[s] work and classif[ies] employees using a global hierarchy

13   of jobs." Job Architecture Policy at 1263; Job Architecture Overview at 2337 (stating that Job

14   Architecture system "provides key inputs for managing the global workforce by classifying work

15   into consistent levels and families."). HP adopted its Job Architecture Policy in order to apply "a

16   more standardized approach" in organizing HP employees. Albert Depo. at 85; *id.* at 86 (HP

17   Human Resources specialist, testifying that HP adopted the policy to "better manage [HP's]

18   employees and treat them on a consistent basis"); *see also* Job Architecture Policy at 1263.

19        Under HP's Job Architecture system, there are various "job families," each of which is a

20   grouping of employees based on the employees' type of work. Job Architecture Overview at 2344.

21   Multiple similar job families are grouped into a single job function. Albert Depo. at 106; Job

22   Architecture Overview at 2343.[4] In this case, all putative class members belong to three job

23   families – Technology Consultant ("TC"), Technical Solutions Consultant ("TSC"), and Field

24

25   ─────────────────────────

26   [3] The declarations submitted by HP are cited throughout this Order as "HP Decl. #," where "#"
     refers to the corresponding exhibit number in HP's submission of declarations. *See* ECF Nos. 152-
     5, 152-6, 152-7, 152-8, 152-36.

27   [4] HP's Job Architecture system currently includes 18 job functions, which are subdivided into more
     than 200 job families. Job Architecture Overview at 2343.

28

Case No.: 13-CV-00119-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION
CERTIFICATION AND ISSUANCE OF NOTICE

1  Technical Support Consultant ("FTSC") – all of which are categorized within one job function –

2  the "Services" job function. Services Job Function Chart at 8435.

3       Each HP employee is placed not only in a job family but also in a "global job level," of

4  which there are four: (1) "Admin, Clerical, Techs, Skilled and Semi-Skilled

5  Production/Assembly"; (2) "Individual Contributor"; (3) "Management"; and (4) "Executive." Job

6  Architecture Overview at 2340. Global levels reflect "job responsibilities and requirements." *Id.* at

7  2342. Within each global job level, there are various sublevels. All putative class members fall

8  within the "individual contributor" global job level. Mot. at 1. Within the individual contributor

9  global job level, there are eight sublevels, the three lowest of which are at issue in this case because

10  all putative class members are categorized as either entry (i.e. level "I"), intermediate (i.e. level

11  "II"), or specialist (i.e. level "III") employees. Job Architecture Overview at 2340; Mot. at 1.

12       Under the Job Architecture Policy, global job levels uniformly determine whether

13  employees are classified as exempt or nonexempt under FLSA from overtime pay. *See* Job

14  Architecture Overview at 2340; Albert Depo. at 122, 125, 162 (explaining how global job levels

15  determine exemption status for all employees in that level). Pursuant to the policy, all employees in

16  the individual contributor global job level are categorized as "exempt in the U.S." Job Architecture

17  Overview at 2340. In this case, all putative class members fall within the individual contributor

18  global job level, and thus are exempt from FLSA. Mot. at 1; Albert Depo. at 144 (noting that

19  Technical Solutions Consultants, Field Technical Support Consultants, and Technology

20  Consultants are exempt).

21       The combination of an employee's job family and global sublevel determines an

22  employee's job title (e.g. "Technology Consultant I"). Under the Job Architecture Policy,

23  employees performing the same work are assigned the same job title, as the system requires

24  managers to assign job titles based on the nature of the job. Albert Depo. at 99 ("[T]he architecture

25  was designed so that you map the employee based on the content of the work they're

26  performing."); *id.* at 138 (stating that managers assign titles based on "the content of that job, and .

27  . . the responsibilities that that person is going to be assigned to."); *id.* at 140. Each job title also

28

6

Case No.: 13-CV-00119-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION
CERTIFICATION AND ISSUANCE OF NOTICE

1    has a formal job description. Job Architecture Overview at 2339. A job description explains the

2    primary, "key duties that you would expect a particular job to have." Albert Depo. at 134; *id.* at 88

3    ("If I'm a TC I, the job description clearly outlines for me what a TC I is, in terms of roles and

4    responsibilities, the knowledge, scope and impact."); *id.* at 96, 99 (stating that Job Architecture

5    Policy "provides a set of typical roles and responsibilities that an employee, let's say a TC I, may

6    perform" and that "[t]he architecture is set up so that no matter where the work is happening – so if

7    I have a TC I in the U.S. versus a TC I in India, if the work is similar, they should both be TC

8    I's."); Job Architecture Overview at 2348 (stating that "job descriptions summarize the

9    responsibilities and requirements associated" with a given job title). HP expects employees in a

10   particular job title to perform the work set forth in the job description applicable to all employees

11   in that job title. *Id.* at 162 (testifying that HP's "expectation is, if you were assigned to entry level

12   [*i.e.*, level 'I'], that you will be performing exempt-level work."). If an employee's job duties

13   change, she is remapped to a new job title. *Id.* at 161 ("So if a . . . particular individual employee's

14   responsibilities have changed, then the expectation of the company is that the manager would map

15   the employee to a job that represents what he or she is doing."); *id.* at 98.

16        In this case, all putative class members have one of the following nine job titles: Technical

17   Solutions Consultant I, II, or III; Field Technical Support Consultant I, II, or III; or Technology

18   Consultant I, II, or III. Mot. at 1. These job titles are all within the bottom three sublevels of the

19   individual contributor global job level (I, II, III), and are within the three job families (TC, TSC,

20   and FTSC). *See* Services Job Function Chart at 8435.

21   **II.    LEGAL STANDARD**

22        The FLSA requires employers to pay covered employees overtime compensation of one and

23   one-half times the regular rate of pay for all hours worked in excess of forty hours per week, unless

24   an exemption applies. 29 U.S.C. § 207(a)(1). To ensure compliance with this requirement, the

25   FLSA authorizes actions by employees to recover unpaid overtime wages and an equal amount as

26   liquidated damages for violation of the FLSA's overtime provisions. 29 U.S.C. § 216(b).

27

28

7

1    In addition to bringing individual suits, FLSA allows employees to bring a collective action

2    on behalf of other "similarly situated" employees based on alleged violations of FLSA.[5] 29 U.S.C.

3    § 216(b).[6] In contrast to class actions pursuant to Federal Rule of Civil Procedure 23, potential

4    members of a collective action under FLSA must "opt-in" to the suit by filing a written consent

5    with the Court in order to benefit from and be bound by a judgment. *Id.; Leuthold v. Destination*

6    *America, Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. Aug. 16, 2004). Employees who do not opt-in may

7    bring a subsequent private action. *Id.* (citing *EEOC v. Pan Am. World Airways, Inc.*, 897 F.2d

8    1499, 1508 n.11 (9th Cir. 1990)). The determination of whether a collective action under FLSA is

9    appropriate is within the Court's discretion. *See Adams v. Inter–Con Security Sys., Inc.*, 242 F.R.D.

10   530, 535 (N.D. Cal. Apr. 11, 2007). The plaintiff bears the burden to show that he and the proposed

11   class members are "similarly situated." *See id.* (citing 29 U.S.C. § 216(b)).

12   FLSA does not define "similarly situated." Although the Ninth Circuit has not yet

13   articulated the proper test for certification of a FLSA action, district courts in this Circuit generally

14   apply a two-step inquiry. *See, e.g., Leuthold*, 224 F.R.D. at 466–67; *Adams*, 242 F.R.D. at 536.[7]

15   Under the first step, the court makes an initial "notice-stage" determination of whether potential

---

16   [5] The Supreme Court has held that collective actions allow aggrieved employees "the advantage of

17   lower individual costs to vindicate rights by the pooling of resources." *Hoffman–LaRoche v.
     Sperling*, 493 U.S. 165, 170 (1989) (discussing collective action provision, 29 U.S.C. § 216(b), in

18   context of ADEA claims). The judicial system also benefits from the "efficient resolution in one
     proceeding of common issues of law and fact arising from the same" unlawful activity. *Id.* Those

19   benefits may only be realized through "accurate and timely notice concerning the pendency of the
     collective action, so that [employees] can make informed decisions about whether to participate."

20   *Id.; see also McElmurry v. U.S. Bank N.A.*, 495 F.3d 1136, 1139 (9th Cir. 2007). Notice "serve[s]

21   the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to
     expedite disposition of the action." *Hoffmann–La Roche*, 493 U.S. at 172.

22   [6] Section 216(b) states in part: "An action to recover the liability [for unpaid overtime wages and
     liquidated damages] may be maintained against any employer (including a public agency) in any

23   Federal or State court of competent jurisdiction by any one or more employees for and in behalf of
     himself or themselves and other employees similarly situated. No employee shall be a party

24   plaintiff to any such action unless he gives his consent in writing to become such a party and such

25   consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

     [7] Use of this two-tiered approach has been affirmed by five United States Courts of Appeals. *See

26   White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012); *Myers v. Hertz
     Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915

27   n.2 (5th Cir. 2008); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008);
     *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).

28

8

opt-in plaintiffs are similarly situated to the representative plaintiffs, determining whether a

collective action should be certified for the sole purpose of sending notice of the action to potential

class members.[8] *Id.* For conditional certification at this notice-stage, courts require little more than

substantial allegations, supported by declarations or discovery, that "the putative class members

were together the victims of a single decision, policy, or plan." *Villa v. United Site Services of Ca.*,

No. 5:12–CV–00318–LHK, 2012 WL 5503550, at *13 (N.D. Cal. Nov. 13, 2012) (citation

omitted); *see also Morton v. Valley Farm Transport, Inc.*, No. C–06–2933–SI, 2007 WL 1113999,

at *2 (N.D. Cal. Apr. 13, 2007) (describing burden as "not heavy" and requiring plaintiffs to

merely show a "reasonable basis for their claim of class-wide" conduct) (internal quotation marks

and citation omitted); *Stanfield v. First NLC Financial Serv., LLC*, No. C–06–3892–SBA, 2006

WL 3190527, at *2 (N.D. Cal. Nov. 1, 2006) (holding that the plaintiffs simply "must be generally

comparable to those they seek to represent."). All that need be shown is that "some identifiable

factual or legal nexus binds together the various claims of the class members in a way that hearing

the claims together promotes judicial efficiency and comports with the broad remedial policies

underlying the FLSA." *Russell v. Wells Fargo & Co.,* No. 07–CV–3993–CW, 2008 WL 4104212,

at *3 (N.D. Cal. Sept. 3, 2008).[9] The standard for certification at this stage is a lenient one that

typically results in certification. *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 627-628

(E.D. Cal. 2009) (citing *Wynn v. Nat'l Broad. Co., Inc.*, 234 F.Supp.2d 1067, 1082 (C.D. Cal.

2002)). It is met by a showing that plaintiffs were subject to the same FLSA exemption

classification and performed similar job duties. *See, e.g., Kress*, 263 F.R.D. at 629-30. As a

practical matter, "[a]t this stage of the analysis, courts usually rely only on the pleadings and any

affidavits that have been submitted." *Leuthold*, 224 F.R.D. at 468. Plaintiffs need not conclusively

---

[8] The sole consequence of conditional certification is the "sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court, § 216(b)." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013).

[9] The "similarly situated" requirement is "considerably less stringent than the requirement of Fed. R. Civ. Proc. 23(b)(3) that common questions predominate." *Church v. Consol. Freightways, Inc.*, 137 F.R.D. 294, 305 (N.D. Cal. Apr. 12, 1991) (citation omitted); *Villa*, 2012 WL 5503550 at * 14 ("[A] collective action does not require a showing that common claims predominate").

9

1    establish that collective resolution is proper, because a defendant will be free to revisit this issue at

2    the close of discovery. *Kress*, 263 F.R.D. at 630.

3         At the second step of the two-step inquiry, "the party opposing the certification may move

4    to decertify the class once discovery is complete." *Adams*, 242 F.R.D. at 536 (citation omitted);

5    *Escobar v. Whiteside Constr. Corp.*, No. C 08–01120 WHA, 2008 WL 3915715, at *3 (N.D. Cal.

6    Aug 21. 2008) ("Certification is called 'conditional' during the first stage because the opposing

7    party could always (successfully) move for decertification."). "[T]he Court then determines the

8    propriety and scope of the collective action using a stricter standard." *Stanfield*, 2006 WL 3190527,

9    *2. At that point, "the court may decertify the class and dismiss the opt-in plaintiffs without

10   prejudice." *Leuthold*, 224 F.R.D. at 467. It is at the second stage that the Court makes a factual

11   determination about whether the plaintiffs are actually similarly situated by weighing such factors

12   as: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various

13   defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and

14   procedural considerations." *Id.* Even at this second stage, the standard courts apply is different, and

15   easier to satisfy, than the requirements for a class action certified under Federal Rule of Civil

16   Procedure 23(b)(3). *Lewis v. Wells Fargo & Co.*, 669 F.Supp.2d 1124, 1127 (N.D. Cal. 2009).

17        Courts have emphasized that a fairly lenient standard is used at the notice-stage step

18   because a court does not have much evidence at that point in the proceedings – just the pleadings

19   and any declarations submitted. In contrast, at the second step, a stricter standard is applied because

20   there is much more information available, "which makes a factual determination possible."

21   *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1123 (E.D. Cal. 2009); *see also Labrie*

22   *v. UPS Supply Chain Solutions, Inc.*, No. C 08-3182 PJH, 2009 WL 723599, at *4 (N.D. Cal. Mar.

23   18, 2009) (noting that the first step "is characterized by a fairly lenient standard, necessitated by the

24   fact that not all discovery will have been completed at the time of the motion," while, at the second

25   step, "the court engages in a more stringent inquiry into the propriety and scope of the collective

26   action" because "discovery is complete and the case is ready to be tried").

27

28

Case No.: 13-CV-00119-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION
CERTIFICATION AND ISSUANCE OF NOTICE

1     In considering whether the lenient notice-stage standard has been met in a given case,

2 courts bear in mind the following:

3     (1) A plaintiff need not submit a large number of declarations or affidavits to make the

4 requisite factual showing that class members exist who are similarly situated to him. A handful of

5 declarations may suffice. *See, e.g.*, *Gilbert v. Citigroup, Inc.*, No. 08-0385 SC, 2009 WL 424320,

6 at *2 (N.D. Cal. Feb. 18, 2009) (finding standard met based on declarations from plaintiff and four

7 other individuals); *Escobar*, 2008 WL 3915715, at *3-4 (finding standard met based on

8 declarations from three plaintiffs); *Leuthold*, 224 F.R.D. at 468-69 (finding standard met based on

9 affidavits from three proposed lead plaintiffs).

10     (2) The "fact that a defendant submits competing declarations will not as a general rule

11 preclude conditional certification." *See Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 838

12 (N.D. Cal. 2010) (citation omitted). As Judge Alsup of this District has noted, competing

13 declarations simply create a "he-said-she-said situation"; while "[i]t may be true that the

14 [defendant's] evidence will later negate [the plaintiff's] claims, that should not bar conditional

15 certification at the first stage." *Escobar*, 2008 WL 3915715, at *4.

16 **III.    DISCUSSION**

17     **A.    The Notice-Stage Standard Applies Here**

18     As a preliminary matter, the Court faces the threshold question of what standard to apply to

19 Plaintiffs' motion. Plaintiffs argue the Court should apply the more lenient first-step analysis. Mot.

20 at 13. HP, on the other hand, argues for a heightened standard because pre-certification discovery

21 has already taken place. Opp'n at 15 n.9 & 16.[10] In support, HP notes that HP has produced "over

22 50,000 pages of documents and provided three Rule 30(b)(6) witnesses, and Plaintiffs sent a letter

23 to the entire putative class (and beyond) to notify them of the action, solicit opt-ins, and gather

---

[10] It is unclear whether HP argues for a second-stage inquiry or simply a heightened notice-stage inquiry. In its opposition, HP simply claims that in cases like here, where plaintiffs have taken class-related discovery and solicited opt-ins, "courts frequently require a showing commensurate with the plaintiffs' opportunity for discovery," and provides a footnote in which HP cites cases applying a heightened first stage approach and cases applying a second-stage approach where substantial discovery has occurred. In the body of its opposition, HP claims that "[h]owever one characterizes this 'stage' of the inquiry, the result is the same." Opp'n at 16.

evidence for this Motion. HP has since taken the depositions of the named Plaintiffs." Opp'n at 2. HP further claims that "Plaintiffs have had significant discovery on HP's employee classification policies . . ." *Id.* at 16.

The Court holds that although the parties have engaged in some discovery thus far, adopting the first-stage analysis is appropriate at this time because discovery is not yet complete. Courts in this Circuit, including this Court, routinely reject defendants' requests to apply heightened scrutiny before the close of discovery and hold that the first-stage analysis applies until the close of discovery. *See, e.g.*, *Kress*, 263 F.R.D. at 629 ("Courts within this circuit ... refuse to depart from the notice-stage analysis prior to the close of discovery."); *see, e.g.*, *Villa*, 2012 WL 5503550 at * 13 ("In this case, discovery is still ongoing; fact discovery does not close until April 11, 2013. Accordingly, the Court applies the lower, notice-stage standard for conditional certification."); *Guifu Li v. A Perfect Fran., Inc.*, 5:10-CV-01189-LHK, 2011 WL 4635198-LHK, *4 (N.D. Cal. Oct. 5, 2011) (holding that although parties had already engaged in "significant discovery," first-stage analysis was appropriate because discovery was still ongoing and "[i]t is likely that the Plaintiffs have not yet presented a complete factual record for the Court to analyze."); *Lewis*, 669 F.Supp.2d at 1127-28 (declining to apply second-stage review even though "volumes of paper have been produced and several witnesses deposed" because to apply a different standard would "be contrary to the broad remedial policies underlying the FLSA").[11] Nor does the preliminary notice sent by Plaintiffs, which invited potential opt-ins to provide information relevant to the case on a voluntary basis, justify application of a heightened standard. *See Harris*, 716 F. Supp. 2d at 846 (rejecting defendant's argument to raise standard even though "Ms. Harris sent out a precertification notice, and thus arguably could or should have gathered information from the persons who received notice.").

---

[11] *See also Hill v. R+L Carriers, Inc.*, 690 F.Supp.2d 1001, 1009 (N.D. Cal. 2010); *Wynn*, 234 F.Supp.2d at 1082; *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 471 (E.D. Cal. Mar. 5, 2010); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 482 (E.D. Cal. Apr. 19, 2006); *Leuthold*, 224 F.R.D. at 467; *Labrie*, 2009 WL 723599 at *3; *Rees v. Souza's Milk Transp., Co.*, No. CVF0500297, 2006 WL 738987, at *3 (E.D. Cal. Mar. 22, 2006).

12

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    The rationale behind why courts refuse to skip the notice-stage has been set forth

2   persuasively as follows. *See Leuthold*, 224 F.R.D. at 467-68. Skipping to the second stage not only

3   requires the court to evaluate an incomplete factual record — it interferes with the future

4   completion of that record. *Id.* Separate from the risk of an incomplete factual record, "[b]ypassing

5   the notice-stage altogether . . . might deprive some plaintiffs of a meaningful opportunity to

6   participate." *Id.* Measured against these dangers, delaying the second stage analysis risks little

7   harm to defendant, who will be free to move for decertification "once the factual record has been

8   finalized and the time period for opting in has expired." *Id.*

9    This Court is persuaded by *Leuthold*'s rationale, and accordingly, finds that the notice-stage

10   standard applies in this case. After discovery is complete, HP can move for decertification, and the

11   Court will then apply the heightened second-stage review.

12        **B.        Application of the Notice-Stage Standard to this Case**

13    Plaintiffs must show that the proposed lead plaintiffs and the proposed collective action

14   class members are "similarly situated." *Guifu Li*, 2011 WL 4635198, at *3. Under the notice-stage

15   standard, this requires Plaintiffs to provide "'substantial allegations, supported by declarations or

16   discovery, that 'the putative class members were together the victims of a single decision, policy,

17   or plan.'" *Kress*, 263 F.R.D. at 629. Where, as here, a case involves a claim of misclassification of

18   FLSA-exempt status, courts also require plaintiffs to "provide some further allegations or evidence

19   indicating that prospective class members share similar job duties." *Id.* at 629–30.[12] *See, e.g.*,

20   *Lewis*, 669 F.Supp.2d at 1128; *Trinh v. JP Morgan Chase & Co.*, No. 07–CV–1666, 2008 WL

21   1860161, at *4 (S.D. Cal. Apr. 22, 2008). Here, the Court concludes that the evidence submitted by

22   Plaintiffs is sufficient to establish that the named Plaintiffs and the putative class members are

---

[12] This is because "[a]s a matter of both sound public policy and basic common sense, the mere classification of a group of employees-even a large or nationwide group-as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes." *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 927-28 (D. Ariz. 2010). "If it were, in every instance where an employer is accused of misclassifying a large group of employees, the district court would somehow be required to order collective action notification, irrespective of the quality or quantity of evidence that had been produced in the form of declarations and supporting exhibits." *Id.*

13

1    "similarly situated." Below, the Court first addresses whether Plaintiffs have shown that the

2    putative class members were victims of a single common policy, and second, whether they shared

3    similar job duties.

4        First, the Court holds that Plaintiffs have shown that the putative class members were the

5    victims of a single decision, policy, or plan. This requirement is met upon a showing that Plaintiffs

6    were subject to the same uniform classification of exempt status under FLSA. *See, e.g., Kress*, 263

7    F.R.D. at 629; *Lewis*, 669 F.Supp.2d at 1128. Here, HP's Job Architecture policy uniformly

8    categorizes all putative class members as exempt from the overtime pay requirements of FLSA.

9    This is because under the policy, employees' "global job level" uniformly determines whether

10   employees are classified as exempt or nonexempt under FLSA from overtime pay. *See* Job

11   Architecture Overview at 2340; Albert Depo. at 122, 125, 162 (explaining how global job levels

12   determine exemption status for all employees in that level); Ortolani Depo. at 42-43 (same). Under

13   the policy, all employees in the "individual contributor" global job level are categorized as

14   "exempt in the U.S." Job Architecture Overview at 2340. In this case, pursuant to the class

15   definition, all putative class members are "individual contributors," and thus are exempt, as HP

16   acknowledges. Opp'n at 4; Mot. at 1; Albert Depo. at 144 (noting that Technical Solutions

17   Consultants, Field Technical Support Consultants, and Technology Consultants are exempt).[13]

18   Accordingly, all putative class members are uniformly subjected to the same policy that classifies

19   them as exempt under FLSA.[14]

20

21   _____

     [13] The proposed class members fall within the three lowest sublevels in the "Individual

22   Contributor" global job level: entry, intermediate, and specialist. Job Architecture Overview at
     2340-41.

23   [14] HP's argument that "the Job Architecture system itself does not show any companywide policy
     or plan to misclassify" the putative class members, *see* Opp'n at 18; *see also id.* at 23 ("Plaintiffs

24   nowhere identify any class wide policy"), is belied by HP's concession elsewhere in its opposition
     that "the FTSC, TSC, and TC job [families] are treated as FLSA 'exempt' positions because they

25   are expected to involve duties that qualify for exemption." *Id.* at 4. Further, all 33 named Plaintiffs
     and opt-ins who have submitted declarations verify that they were classified as exempt under

26   FLSA. *See* Benedict Decl. ¶ 3; Bowders Decl. ¶ 4; Vieira Decl. ¶ 3; Decl. #1 ¶ 4; Decl. #2 ¶ 4;
     Decl. #3 ¶ 4; Decl. #4 ¶ 3; Decl. #5 ¶ 4; Decl. #6 ¶ 4; Decl. #7 ¶ 5; Decl. #8 ¶ 3; Decl. #9 ¶ 4; Decl.

27   #10 ¶ 3; Decl. #11 ¶ 5; Decl. #12 ¶ 3; Decl. #13 ¶ 4; Decl. #14 ¶ 4; Decl. #15 ¶ 4; Decl. #16 ¶ 3;
     Decl. #17 ¶ 5; Decl. #18 ¶ 4; Decl. #19 ¶ 3; Decl. #20 ¶ 4; Decl. #21 ¶ 4; Decl. #22 ¶ 3; Decl. #23 ¶

28                                                    14

Second, the Court now considers "whether plaintiffs' evidence indicates that the propriety of the classification may be determined on a collective basis," *Kress*, 263 F.R.D. at 630, i.e., whether Plaintiffs have demonstrated that putative class members have similar job duties. Courts set forth this second requirement in cases alleging misclassification of exempt FLSA status because whether any given employee is entitled to overtime compensation depends on an individual, fact-specific analysis of that employee's job responsibilities under the relevant statutory exemption criteria. *Holt v. Rite Aid Corp.*, 333 F.Supp.2d 1265, 1271 (M.D. Ala. 2004).[15] Therefore, for the purpose of certifying a collective action, the critical question is whether there is sufficient similarity of job duties to allow collective determination of exemption status. Here, the Court finds that Plaintiffs have met the lenient standard of showing that putative class members perform similar job duties, as explained below.

Plaintiffs have set forth substantial allegations in their complaint[16] and have submitted evidence in the form of 33 declarations and HP documents which suggest that putative class members are similarly situated with respect to their job duties. First, with respect to the similarity between employees within each of the nine job titles at issue (e.g., "TSC I" or "FTSC III"), Plaintiffs have submitted evidence that under HP's Job Architecture Policy, employees are categorized into job titles based on their primary job duties and employees with the same job title perform the same general job tasks as identified in a standardized job description. *See, e.g., supra*

4; Decl. #24 ¶ 4; Decl. #25 ¶ 3; Decl. #26 ¶ 5; Decl. #27 ¶ 4; Decl. #28 ¶ 4; Decl. #29 ¶ 4; Decl. # 30 ¶ 5.

[15] The dispositive facts are those that define an employee's primary duties. *See* 29 C.F.R. § 541.700 ("To qualify for exemption under this part, an employee's 'primary duty' must be the performance of exempt work."). "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700(a).

[16] As discussed earlier, Plaintiffs allege that all putative class members "have the primary duties of installing, maintaining, and/or supporting computer software and/or hardware for HP," are "similarly situated in that they have substantially similar job requirements," and that "[i]t is likely that other similarly situated individuals will sign consent forms and join as Plaintiffs on this claim in the future." FAC ¶¶ 8, 22, 52.

15

United States District Court
For the Northern District of California

1    Section I.C (discussing HP Job Architecture Policy). Further, Plaintiffs have submitted declarations

2    in which putative class members testify that other employees with their job title share substantially

3    similar job duties. *See, e.g.*, Decl. #9 ¶ 18 ("The approximately 50 other Technology Consultant

4    IIIs on my team did the same kind of work I have described . . ."); Decl. #20 ¶ 16 ("The

5    approximately 12 other TC IIIs on my team did the same kind of work I have described . . .");

6    Decl. #26 ¶ 16 ("The approximately 25-30 fellow/other HP Technical Solutions Consultant IIIs on

7    my team did the same kind of work I have described . . ."); Decl. #28 ¶ 14 ("The 9 other HP

8    Technical [Consultant] IIs on my team do the same kind of work I have described . . ."); *compare*

9    Decl. #11 ¶¶ 6, 9 (TSC I work duties involve troubleshooting technical problems), *with* Decl. #19 ¶

10   5 (same); *compare* Decl. #8 ¶ 7 (FTSC II work duties involve phone and field customer support

11   and maintenance of HP printers), *with* Decl. #17 ¶ 7 (same); *compare* Decl. # 10 ¶ 5 (TC 1

12   testifying that work duties involve troubleshooting problems), *with* HP Decl. #7 ¶ 3 (same);

13   *compare* Bowders Decl. ¶ 6 & Bowders Depo. at 184 (FTSC III testifying that his main duty was to

14   provide service support and maintenance and troubleshooting for HP's printing press software),

15   *with* HP Decl. # 21 ¶ 3 (same).[17] This evidence suffices to show substantial similarity of job duties

16   between employees within each of the nine job titles at issue.

17         Second, with respect to putative class members with different job titles *within each job*

18   *family* – such as, for example, a TSC I, TSC II, and TSC III – the Court also concludes that they

19   share similar job duties. The Job Architecture Policy suggests that employees within the same job

20   family share common work duties. Job Architecture Overview at 2339 (stating that "Each job is

21   mapped to a . . . job family based on type of work); *id.* at 2344 (stating that "job functions are

22   subdivided into job families based on the type of work"). Plaintiffs' declarations provide additional

23

---

24   [17] Further, Plaintiffs' declarations note that HP routinely performs audits to ensure that employees'
     work is properly "standardized," which suggests that employees with the same job title perform

25   similar work. Decl. #5 ¶ 12 (describing audits designed "to ensure that I and my team members
     followed standardized processes when performing on-site work and documenting such work");

26   Decl. #13 ¶ 11 ("HP audits my team periodically."); Decl. #23 ¶ 11 ("HP audited my team
     annually, with the intent of standardizing the established processes my fellow Technology

27   Consultants and I followed."); Decl. #25 ¶ 10 ("HP routinely audited my team's work to ensure
     that work was performed according to strict procedures.").

28
                                                    16

United States District Court
For the Northern District of California

1    support for this conclusion. *Compare, e.g.*, Decl. #3 ¶ 4(c) (stating he worked as both a TC II and a

2    TC III, and that "[i]n those two job titles, my duties were generally the same, which included

3    "performing installations, and addressing troubleshooting issues . . . [in order to] keep the products

4    I supported up and running" and speaking with customers), *with* Decl. # 10 ¶ 5 (TC I testifying that

5    his major job duties involved "troubleshooting problems . . . [in order] to keep the products I

6    supported up and running" and speaking with customers); *compare* Decl. # 19 ¶ 5 (TSC I work

7    duties involve troubleshooting technical problems), *with* Decl. #26 ¶ 6 (TSC III work duties

8    involve responding to data-related malfunctions to keep datacenters running properly); *compare*

9    Decl. #8 ¶ 7 (FTSC II work duties involve phone and field customer support and maintenance of

10   HP printers), *with* Bowders Decl. ¶ 6 (FTSC III work duties involve providing service support and

11   maintenance for HP's printing press software). The job descriptions also confirm that putative class

12   members with different job titles within each job family have similar job duties. *See* ECF No. 153-

13   3 at 3 (job description for each of the three job titles in the FTSC job family cites the same duty of

14   "integrat[ing] technical knowledge and business understanding to create solutions for customers"

15   and resolving "technical incidents"); ECF No. 153-4 at 2-3 (job description for each of the three

16   job titles in the TSC job family cites the same duty of "successfully resolv[ing] technical issues

17   (hardware and software)" and "respond[ing] to service,  product, technical, and customer-relations

18   questions"); ECF No. 153-5 at 3 (job descriptions for each of three job titles in the TC job family

19   cite comparable duties: "technical systems management" for TC I's, "installing new systems

20   applications, updating applications, firmware, and drivers" for TC II's, and "technical support" for

21   TC III's).

22        Finally, the Court concludes that putative class members *across* the three job families are

23   also similarly situated with respect to their primary job duties, for five reasons. First, Plaintiffs

24   have submitted evidence that putative class members in all three families are all essentially

25   technical support workers who share the primary duty of installing, maintaining, and/or supporting

26   computer hardware or software for HP. Declarations from employees across all three families state

27

28

Case No.: 13-CV-00119-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION
CERTIFICATION AND ISSUANCE OF NOTICE

United States District Court
For the Northern District of California

as much, which alone suffices.[18] Second, other parts of Plaintiffs' declarations suggest that employees across three families have similar duties. For example, three declarations from employees in three different families claim their main job duty is some kind of troubleshooting or routine maintenance of HP's computer hardware or software. *See* Bowders Decl. ¶ 6 (FTSC spends the majority of his time doing installation, repairs, and upgrades for printing software); Decl. # 30 ¶ 10 (TC spends the majority of his time maintaining software, installing upgrades, and assessing malfunctions); Vieira Decl. ¶ 5 (TSC spends his time doing maintenance, troubleshooting, and support of HP's PBX System).[19] Third, the "job level definitions"[20] for each respective level (I, II, or III) within each job family are nearly identical. *See* ECF No. 153-3 at 1 (FTSC job level definitions); ECF No. 153-4 at 2(TSC job level definitions); ECF No. 153-5 at 2(TC job level definitions).[21] Fourth, employees in all three families are categorized within HP's "Services" job function, and all fall within the Technical Career Path at HP. Job Architecture Overview at 2354. Fifth, Plaintiffs' declarations demonstrate that putative class members across all three families share these common traits: (1) their duties are purely technical; (2) they do not make business decisions, like pricing, selling, or marketing HP products; (3) they do not hire, fire, evaluate, or discipline others; (4) they share the similar goal of ensuring that computer systems perform their intended functions; (5) they keep computer systems running according to detailed procedures, guidelines, and restrictions set forth in HP manuals and policies; (6) they are assigned trouble ticket

---

[18] *See, e.g.*, Benedict Decl. ¶ 16; Bowders Decl. ¶¶ 13-14; Vieira Decl. ¶¶ 14-15; Decl. #1 ¶ 17; Decl. #2 ¶¶ 15-16; Decl. #3 ¶¶ 14-15; Decl. #4 ¶ 16; Decl. #5 ¶ 19; Decl. #6 ¶¶ 14-15; Decl. #7 ¶ 14; Decl. #8 ¶¶ 16-17; Decl. #9 ¶¶ 18-19; Decl. #10 ¶¶ 17-18; Decl. #11 ¶ 13; Decl. #12 ¶ 14; Decl. #13 ¶¶ 16-17; Decl. #14 ¶¶ 19-20; Decl. #15 ¶ 16; Decl. #16 ¶ 15; Decl. #17 ¶ 14; Decl. #18 ¶¶ 18-20; Decl. #19 ¶ 12; Decl. #20 ¶ 16; Decl. #21 ¶¶ 16-17; Decl. #22 ¶ 12; Decl. #23 ¶ 17; Decl. #24 ¶¶ 12-13; Decl. #25 ¶ 17; Decl. #26 ¶¶ 16-17; Decl. #27 ¶ 13; Decl. #28 ¶ 14; Decl. #29 ¶¶ 13-14; Decl. #30 ¶ 25.

[19] HP concedes that "each named plaintiff characterizes his primary job duty as a form of troubleshooting," Opp'n at 25, and named plaintiffs span across two job families (FTSC and TSC).

[20] These "job level definitions" are part of the job description for any given job title.

[21] For example, the job level definitions for an FTSC I, TSC I, and TC I all state that the employee "[a]pplies basic foundation of a function's principles, theories and concepts to assignments of limited scope. Utilizes professional concepts and theoretical knowledge acquired through specialized training, education, or previous experience." *See* ECF No. 153-3 at 1 (FTSC job level definition); ECF No. 153-4 at 2(TSC job level definition); ECF No. 153-5 at 2(TC job level definition).

18

1    and service requests through centralized systems through which they respond to those tickets and

2    resolve those problems within strict deadlines; and (7) they lack significant discretion because HP

3    policies constrain their decision-making. [22]

4           The Court acknowledges that there are indeed differences between putative class members,

5    as HP points out, Opp'n at 21. As one example, different putative class members deal with

6    differing products. *See, e.g.*, Decl. # 11 ¶ 6 (primarily works with video conferencing equipment);

7    Bowders Decl. ¶ (primarily works with printing equipment). However, this does not change the

8    Court's conclusion, as Plaintiffs need only show that class members' positions are similar, not

9    "identical," to the positions held by other members. *See Misra v. Decision One Mortg. Co.*, SA CV

10   07–994 DOC (RCx), 2008 WL 7242774, at *7 (C.D. Cal. June 23, 2008); *Khadera v. ABM

11   Industries Inc.*, C08-0417 RSM, 2011 WL 7064235, at *3 (W.D. Wash. Dec. 1, 2011) ("If one

12   zooms in close enough on anything, differences will abound . . . Plaintiffs' claims need to be

13   considered at a higher level of abstraction.") (citation omitted). [23] Indeed, courts in this Circuit have

14   conditionally certified collective actions analogous to this one in which Plaintiffs alleged

15   misclassification of technical support workers' exempt status, even despite the fact that putative

16   class members held positions across multiple job titles. *See, e.g.*, *Lewis*, 669 F.Supp.2d at 1128

17

18   _____

19   [22] *See* Benedict Decl. ¶¶ 5-10, 13; Bowders Decl. ¶¶ 6-10; Vieira Decl. ¶¶ 5-10, 13; Decl. #1 ¶¶ 6-
     10, 13; Decl. #2 ¶¶ 6-10, 13; Decl. #3 ¶¶ 6-9, 12; Decl. #4 ¶¶ 5-10, 13; Decl. #5 ¶¶ 7-13, 16; Decl.

20   #6 ¶¶ 6-11; Decl. #7 ¶¶ 7-9, 12; Decl. #8 ¶¶ 7-11, 14; Decl. #9 ¶¶ 6-11, 14; Decl. #10 ¶¶ 5-10, 13;
     Decl. #11 ¶¶ 6-8, 11; Decl. #12 ¶¶ 5-9, 12; Decl. #13 ¶¶ 6-12, 15; Decl. #14 ¶¶ 6-10, 13; Decl. #15

21   ¶¶ 6-10, 13; Decl. #16 ¶¶ 5-9, 12; Decl. #17 ¶¶ 7-11; Decl. #18 ¶¶ 6-12, 15; Decl. #19 ¶¶ 5-7, 10;
     Decl. #20 ¶¶ 7-9, 12; Decl. #21 ¶¶ 6-9, 12; Decl. #22 ¶¶ 5-8, 11; Decl. #23 ¶¶ 6-11, 14; Decl. #24

22   ¶¶ 6-7, 10; Decl. #25 ¶¶ 5-11, 14; Decl. #26 ¶¶ 6-10, 13; Decl. #27 ¶¶ 6-10; Decl. #28 ¶¶ 6-10, 13;
     Decl. #29 ¶¶ 6-10; Decl. #30 ¶¶ 10-15.

23   [23] For example, in *Zaborowski v. MHN Govt. Services, Inc.*, C 12-05109 SI, 2013 WL 1787154, at
     *3-*4 (N.D. Cal. Apr. 25, 2013), the Court granted conditional certification to a class of

24   consultants alleging misclassification of FLSA exempt status, where the defendant pointed to
     different types of clients and assignments among the consultants, because they all had "similar

25   duties, regardless of the type or location of assignment they are given." *See also Delgado v. Ortho-
     McNeil, Inc.*, SACV07-263CJCMLGX, 2007 WL 2847238, at *3 (C.D. Cal. Aug. 7, 2007)

26   (granting conditional certification where class alleged misclassification of exempt status even
     though defendant pointed to "differences in products sold, and differences in specific clients"

27   among sales representatives).

28

                                                      19

**United States District Court**
For the Northern District of California

(certifying class of technical support workers in seven job titles);[24] *Gerlach v. Wells Fargo*, C 05–0585 CW, 2006 WL 824652, at *3, *1n.3 (N.D. Cal. Mar. 28, 2006) (certifying class of technical support workers in various job titles in various levels); *Santiago v. Amdocs, Inc.*, C 10-4317 SI, 2011 WL 6372348, at *7 (N.D. Cal. 2011) (certifying class of technical support workers with the primary job duties of "providing computer support, trouble shooting, testing related to repairs and problem-solving, and technical services" despite various job titles).[25] [26] Thus, the Court concludes that notwithstanding some differences between putative class members' job duties, Plaintiffs' evidence and substantial allegations of similarity suffice to establish that putative class members are similarly situated. *Morton*, 2007 WL 1113999, at *2 (holding courts require little more than substantial allegations, supported by declarations or discovery at the notice-stage).

HP's arguments against certification are unavailing. These arguments fall into three categories, and the Court addresses each in turn below.

---

[24] *Lewis* is particularly instructive here. There, the court conditionally certified a class spanning across seven job titles because all putative class members held "similar job positions" with the primary duty of installing, maintaining, and supporting the defendant's technical infrastructure, and none were involved in running HP's business. *Lewis*, 669 F. Supp. 2d at 1125. The court held that certification was proper because "all technical support workers share [common] job description[s], were uniformly classified as exempt from overtime pay by defendants, and perform similar job duties." *Id.* at 1128.

[25] *See also Rosenburg v. IBM*, No. CV 06-00430 PJH, 2007 WL 128232, at *2 (N.D. Cal. Jan. 11, 2007) (conditionally certifying FLSA settlement class of technical support workers in two job families covering different job titles in 10 "Covered Position Codes"); *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 263 (D. Conn. Oct. 3, 2002) (recognizing certification of FLSA class comprised of computer "Systems Engineers" in two different job codes, where record showed that all plaintiffs performed similar job duties and were categorized in one "job category," even though specific duties and assignments were not identical).

[26] The Court notes that even outside the specific context of technical support workers, courts routinely grant conditional certification of multiple-job-title classes in misclassification cases. *See, e.g.*, *Wong v. HSBC Mortg. Corp. USA*, 2008 WL 753889, at *1 (N.D. Cal. Mar. 19, 2008); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 06-0715SC, 2007 WL 707475, at *7 (N.D. Cal. Mar. 6, 2007) (certifying class consisting of General Managers, Operations Managers, and Fitness Managers); *Herring v. Hewitt Associates, Inc.*, No. 06-267, 2007 WL 2121693, at *1, *6 (D. N.J. July 24, 2007) (certifying class with three job titles); *Camp v. Progressive Corp.*, No. Civ. A. 01-2680, 2002 WL 31496661, at *4-*5 (E.D. La. Nov. 8, 2002) (certifying class with six job titles even though defendant produced evidence that class members had "different pay grades and allegedly very different job duties").

20

Case No.: 13-CV-00119-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION
CERTIFICATION AND ISSUANCE OF NOTICE

United States District Court
For the Northern District of California

1    First, HP argues that "Plaintiffs' allegation that all putative class members are involved in

2  'installing, maintaining, and/or supporting' computer systems or programs fails to identify any

3  categorical misclassification, as such duties *can be exempt* in the context here. . . . Because

4  Plaintiffs' allegation is facially insufficient to establish non-exempt status, their Motion is properly

5  denied as well." Opp'n at 1-2 (emphasis in original); *id.* at 19 ("[T]he alleged 'primary duty'

6  purportedly binding the class is legally meaningless and unworkable, as it covers innumerable

7  activities in the technology field, including duties that are expressly exempt under the FLSA.").

8  HP's argument fails for two reasons. First, other than citing these potential exemptions,[27] HP

9  provides no explanation or argument about them sufficient to demonstrate that they mandate a

10  finding of no substantial similarity. *See* Opp'n at 20. More importantly, HP's argument is

11  misplaced. Because the notice-stage is not the appropriate time for a court to evaluate the merits of

12  plaintiffs' FLSA claims, *see Morton*, 2007 WL 1113999, at *3, courts routinely hold that "the

13  potential applicability of an FLSA exemption does not preclude conditional certification." *Barrera*

14  *v. U.S. Airways Group, Inc*., CV-2012-02278-PHX, 2013 WL 4654567, at *5 (D. Ariz. Aug. 30,

15  2013) (collecting cases); *Stanfield*, 2006 WL 3190527, at *4 (rejecting defendant's argument that

16  "the presence of several exemptions that may apply to the putative class members [] precludes

17  class certification" because such a question went to the merits, and noting that "[e]ven if it turns

18  out that [p]laintiffs cannot prevail on their FLSA claim because they are subject to exemptions, a

19  collective action should still be certified if they are similarly situated."); *Sliger v. Prospect Mortg.,*

20  *LLC*, CIV. S-11-465 LKK, 2011 WL 3747947, at *3 (E.D. Cal. Aug. 24, 2011) (holding that

21  defendant's evidence that plaintiffs are exempt employees was "beside the point at this [notice]-

22  stage of the proceeding. Defendant will have an opportunity to demonstrate the merits of its

23  affirmative defenses at the second tier stage of this proceeding.").

24    Second, HP relatedly argues that the inquiry whether each putative class member is

25  misclassified as exempt will be dominated by individualized factual inquiries. Opp'n at 21-24

26  ("Individual factual analyses will be required to adjudicate the exempt status of any given person. .

---

[27] HP specifically cites the administrative exemption and the computer employee exemption. Opp'n at 19-20.

Case No.: 13-CV-00119-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION
CERTIFICATION AND ISSUANCE OF NOTICE

. . In each case, further inquiries are necessary to determine the nature of the individual's work and 'primary duties' to adjudicate the exemption . . . [T]he Court would have to conduct 33 separate examinations into each person's specific duties, the nature and detail of the product documentation, the nature of the manager's or customer's restrictions, other factors affecting the level of supervision (such as whether they work remotely, in office, or on site), and any contradictory testimony or evidence coming from the Plaintiffs' or Opt-in's own testimony, personnel files, managers, or teammates."). The Court rejects HP's argument, which courts in this Circuit have consistently rejected in misclassification cases. *See, e.g.*, *Luque v. AT&T Corp.*, C 09-05885 CRB, 2010 WL 4807088, at *5 (N.D. Cal. Nov. 19, 2010) (rejecting defendant's argument that conditional certification should be denied because a fact-intensive inquiry will be required to determine each class member's exemption status, reasoning that courts should not consider the need for individualized inquiries until the second stage of certification); *Labrie*, 2009 WL 723599, at *6 (finding that defendant's "arguments [that individualized inquiries will be needed to determine exempt status] raise issues primarily going to the merits and are more appropriately addressed on a motion to decertify"); *Harris*, 716 F.Supp.2d at 841-842 (collecting cases holding that courts should address the need for individualized inquiries at the second stage of certification); *Phillip Flores v. Velocity Express, Inc.*, No. 12–cv–05790–JST, 2013 WL 2468362, at *7 (N.D. Cal. June 7, 2013) (holding that defendant's argument that misclassification of workers would involve a fact-intensive inquiry would not preclude conditional certification). At this stage, the only issue before the Court is whether to *conditionally* certify the class such that notices may be distributed to potential members of that class. This Court will undoubtedly revisit HP's argument and the issue of whether Plaintiffs are actually similarly situated at the second stage, when discovery is complete and HP "move[s] to decertify the class." *Leuthold*, 224 F.R.D. at 467.[28]

---

[28] In any event, the Court notes that given that HP acknowledges that "the FTSC, TSC, and TC job [titles] are treated as FLSA 'exempt' positions because they are expected to involve duties that qualify for exemption," Opp'n at 4, HP cannot credibly argue that the need for individual inquiries into exempt status precludes certification. *See Delgado*, 2007 WL 2847238, at *2 ("It is somewhat disingenuous, then, for Defendants to argue that they should be permitted to treat all sales representatives as one group for purposes of classifying them as exempt, but that this Court can only determine the validity of that classification by looking to the specific job duties of each

22

United States District Court
For the Northern District of California

1     Third, HP argues that the putative class members are too diversified to be certified, i.e.,

2  they have differing duties and are not similarly situated, citing declarations HP submitted from

3  various HP employees who describe their job duties. Opp'n at 5 ("[T]he evidence shows

4  substantial variation in their work and job roles, depending on the needs of their customers, their

5  team, and the technology and solutions they provide."). The Court is not convinced, for three

6  reasons. First, HP's declarations simply create "a he-said-she-said situation" that does not justify

7  denying certification. *Escobar*, 2008 WL 3915715, at *4. While "[i]t may be true that the

8  [defendant's] evidence will later negate [the plaintiff's] claims, that should not bar conditional

9  certification at the first stage." *Id.* For example, while HP cites to some declarations which suggest

10  that some putative class members manage other employees, Opp'n at 24,[29] each putative class

11  member is an "individual contributor," which pursuant to the Job Architecture Policy, means the

12  employee does *not* manage other employees. Job Architecture Policy at 1264 (defining "individual

13  contributor" as one with "no direct people management responsibilities"); Ortolani Depo. at 42-43

14  (HP human resources specialist testifying that individual contributors are "nonleader[s]" who are

15  not "responsible for managing or leading employees"); Albert Depo. at 95-96 (testifying that

16  individual contributors are "not managing other employees directly" and do not have "hire/fire

17  authority"). As another example, HP claims that the job titles do not reflect every employee's

18  "actual, specific duties" because managers may create custom job descriptions. Opp'n at 17 (citing

19  Albert Depo. at 137-38). However, while Albert did testify that managers "may create an

20  individual description for an employee," she simultaneously testified that she had "never seen

21  individualized job descriptions." Albert Depo. at 137.[30] Second, HP's declarations themselves

22

23  individual sales representative."); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 613 (C.D.
    Cal. Jan. 20, 2005), *reversed in part on other grounds by Wang v. Chinese Daily News, Inc.*, 709
24  F.3d 829 (9th Cir. 2013) ("Defendant cannot, on the one hand, argue that all reporters and account
    executives are exempt from overtime wages and, on the other hand, argue that the Court must
25  inquire into the job duties of each reporter and account executive in order to determine whether that
    individual is 'exempt.'").
26  [29] *See, e.g.*, HP Decl. #34 ¶¶ 2, 6 (TC III stating he manages team of 26 employees, including
    hiring and firing).
27  [30] HP also argues that Benedict and Bowders "disavowed the notion that their job descriptions
28  reflected their actual duties." Opp'n at 5, 9, 17 (citing Bowders Depo. at 184-187 and Benedict

23

1    support Plaintiffs' argument that putative class members share the primary duties of installing,

2    maintaining, and/or supporting computer software and/or hardware for HP, Mot. at 13. *See, e.g.*,

3    HP Decl. #7 ¶ 3 & HP Decl. # 15 ¶ 4 (TC I and TC II testifying that their primary duties involve

4    troubleshooting); HP Decl. # 10 ¶ 6 (TSC III testifying that his main job duties involve resolving

5    technical "incidents" for customers); HP Decl. #21 ¶ 8 (FTSC III testifying he conducts

6    troubleshooting for customers).[31] Third, to the extent HP's declarations suggest there are indeed

7    vast differences in job duties between putative class members, the Court notes that "the question at

8    this stage is not whose evidence regarding commonality is more believable, but simply whether

9    plaintiffs have made an adequate threshold showing" that there are substantially similar putative

10   class members. *Flores*, 2013 WL 2468362, at *7. Plaintiffs have made an adequate showing here,

11   and the Court will closely consider "the disparate factual and employment settings of the individual

12   plaintiffs" if and when HP makes a motion to decertify, as that fact-specific analysis is appropriate

13   for the second-stage. *Id; see also Camp.*, 2002 WL 31496661, at *4 (holding that "the existence of

14   some variations between potential claimants is *not* determinative of lack of similarity at the notice-

15   stage.") (emphasis in original).[32] [33]

16   Depo. at 193-94). This argument fails. Bowders' testimony did not concern HP's Job Architecture
     policy, but the online posting in HP's job acquisition system, and in any event, Bowders also states

17   that his "actual job description [sets forth] what expectations are set for me." Bowders Depo. at

18   240. Similarly, Benedict's testimony that some of "the descriptions . . . don't sound immediately
     like the type of stuff that I did on a day-to-day basis," Benedict Depo. at 193-94, is non-dispositive

19   given that Michelle Albert testified that the job descriptions include the "key duties you would
     expect a particular job to have." Albert Depo. at 134.

20   [31] Nor is the Court persuaded by HP's reliance on *Price v. Daugherty Sys., Inc.*, 4:11-CV-1943

21   CEJ, 2013 WL 3324364 (E.D. Mo. 2013), to show that Plaintiffs are not substantially similar.
     Opp'n at 17-19. The *Price* court applied a heightened standard to conditional certification, and in

22   any event, involved plaintiffs who wanted to certify employees in sixteen job titles who were not
     categorized within a single "job function" nor governed by a Job Architecture Policy with uniform

23   job descriptions. Further, *Santiago v. Amdocs, Inc.*, C 10-4317 SI, 2013 WL 5444324 (N.D. Cal.

24   Sept. 30, 2013), which HP relies on, involved *stage two* of the certification process, when the court
     employs a heightened standard; thus, it is not helpful to the Court's first-stage determination.

25   [32] This rule applies in non-misclassification cases as well. *See, e.g., Villa*, 2012 WL 5503550, *14
     (rejecting defendant's argument that "the employment settings and factual background of each

26   plaintiff are different" because "those considerations are properly reserved for after completion of
     discovery when Defendant can bring a formal motion to decertify."); *Smith v. Bimbo Bakeries*

27   *USA, Inc.*, CV 12-1689-CAS JWX, 2013 WL 4479294, at *4 (C.D. Cal. Aug. 19, 2013) (holding
     that "the Court need not resolve these factual disputes [regarding differences in plaintiffs' job

28

24

1    For the foregoing reasons, the Court concludes Plaintiffs have met the lenient notice-stage

2    standard for conditional certification. If, after the close of discovery, it becomes apparent that

3    Plaintiffs' overtime claims should be pursued on an individual basis, HP may move to decertify the

4    class. If applicable, the Court may also then consider the division of the class into subclasses.

5    *Schemkes v. Presidential Limousine*, No. 2:09–cv–1100–GMN–PAL, 2011 WL 868182, at *3 (D.

6    Nev. March 10, 2011) (holding that courts have, in FLSA cases, "discretion to create subclasses to

7    prevent confusion of the issues and facts to the jury."). Accordingly, the Court GRANTS Plaintiffs'

8    motion for facilitation of a collective action under FLSA.

9    **C.    Amendments to the Plaintiffs' Proposed Class Notice**

10    The Supreme Court has held that employees need to receive "accurate and timely notice

11    concerning the pendency of the collective action, so that they can make informed decisions about

12    whether to participate" in the collective action. *Hoffman–La Roche*, 493 U.S. at 170. Here,

13    Plaintiffs have provided a copy of their proposed Notice and opt-in form. ECF No. 111-1 (notice);

14    ECF No. 117-2 (opt-in form). HP presents no arguments in opposition to the opt-in form, but

15    argues that the Court "should order the parties to meet and confer on any notice, because Plaintiffs'

16    proposed notice is facially improper in several respects." Opp'n at 25. While Plaintiffs have

17    expressed "willing[ness] to meet and confer," Reply at 15, the Court has reviewed the Plaintiffs'

18    proposed Notice and finds such a meet and confer process unnecessary. The Court rules on each of

19    HP's proposed amendments below.

20

21    _____

22    duties] at this time" because "[a] detailed analysis of such issues as differing job functions is more
properly made" at the second step of the certification process.") (citation omitted).

23    [33] The Court further notes that it need not even consider HP's evidence at the notice-stage, as
various courts in this Circuit have held. *Luque*, 2010 WL 4807088, at *5 (disregarding thirty
declarations submitted by defendants in opposition to motion for conditional certification); *Kress*,

24    263 F.R.D. at 628 ("In determining whether plaintiffs have met this standard, courts need not
consider evidence provided by defendants."); *Lewis*, 669 F.Supp.2d at 1128 ("[T]he Court need not

25    consider [Defendant's fifty-four] declarations at this time [because Plaintiffs meet their burden at
the notice-stage] . . .[even if] the evidence will later negate plaintiffs' claims."); *Williams v. U.S.*

26    *Bank Nat. Ass'n*, 290 F.R.D. 600, 613 (E.D. Cal. June 20, 2013) (holding courts should not

27    consider "contradictory evidence" to plaintiff's evidence at notice-stage); *Gerlach*, 2006 WL
824652, at *3n.4 (refusing to consider defendant's evidence).

28
25

1    First, HP argues that the Court should dismiss all people (i.e., Level IV and Level V

2    employees within HP's Job Architecture System) who had filed consent to join forms, but whom

3    Plaintiffs' counsel have excluded from the case. Opp'n at 25. The Court agrees, and thus orders the

4    dismissal of all people who do not have the job titles stated in Plaintiffs' class definition.

5    Second, HP claims that the language in the proposed Notice that the Court has expressed no

6    opinion about the merits of the claims should be placed beneath the title of the case and that

7    "Plaintiffs have intentionally buried the point, such that the notice overall implies court approval of

8    their claims." Opp'n at 25. Plaintiffs disagree that the language "advising Class Members that the

9    Court has not made a ruling on the merits[] should be moved." Reply at 15. The Court agrees with

10   HP. This language is placed on page 2 of the Notice. ECF No. 117-1 at 2 ("While the Court has not

11   decided on the merits of the case, . . ."; "the Court has not ruled whether Plaintiffs or HP is

12   correct."). While this language should remain on page 2 of the Notice, the statement should also

13   appear in bold at the top of the front page below the court caption so that the Court's neutrality is

14   made explicitly clear to potential plaintiffs. *See Adams*, 242 F.R.D. at 540 (ordering a precisely

15   similar change to a notice); *Hoffman–La Roche*, 493 U.S. at 174 ("[T]rial courts must take care to

16   avoid even the appearance of judicial endorsement of the merits of the action when overseeing the

17   notice-giving process").

18   Third, HP argues that Plaintiffs' proposed 120 day opt-in period should be 60 days. Opp'n

19   at 25. While Plaintiffs disagree, Plaintiffs do not articulate any basis for providing putative class

20   members four months to opt-in to the action. Reply at 15. Though opt-in periods vary, timeframes

21   of sixty to ninety days appear to have become the presumptive standard in this District. *See, e.g.*,

22   *Gee v. Suntrust Mort., Inc.*, No. C-10-1509 RS, 2011 WL 722111, at *4 (N.D. Cal. Feb 18, 2011)

23   (ninety day opt-in period for mortgage underwriters); *Luque*, 2010 WL 4807088, at *7 (sixty day

24   opt-in period telephone company field managers); *Lewis*, 669 F.Supp.2d at 1126 (seventy-five day

25   opt-in period for bank's information technology employees); *Stanfield*, 2006 WL 3190527, at *6

26   (sixty day opt-in period for loan officers). The Court holds that a notice period of ninety days is

27

28

Case No.: 13-CV-00119-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION
CERTIFICATION AND ISSUANCE OF NOTICE

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  sufficient time for a class member to receive the Notice, ask any questions of Plaintiffs or their

2  counsel, and make an informed choice as to whether or not they wish to participate.

3        Fourth, HP argues that the Notice "should include language stating that potential plaintiffs

4  may be required to pay certain fees and/or costs [pursuant to the prosecution of the collective

5  action]." Opp'n at 25 (internal citations omitted). Plaintiffs respond that the "Notice should [not]

6  threaten Class Members with the assessment of costs." Reply at 15. The Court agrees with HP. The

7  Notice should advise potential plaintiffs of costs and not just attorney's fees, *see* Notice ¶ 5. *See*

8  *Adams*, 242 F.R.D. at 540 (internal quotations and citations omitted) ("Information that informs

9  potential plaintiffs that they share in liability should be included to present to potential plaintiffs a

10  fair statement of their rights.").

11        Fifth, HP argues that the Notice should include language stating that potential plaintiffs

12  may be required to provide deposition testimony or courtroom testimony. Opp'n at 25. The Court

13  agrees. It is appropriate to "include language informing potential plaintiffs of possible obligations

14  in the event they elect to opt-in." *Daniels v. Aeropostale W., Inc.*, No. C 12–05755 WHA, 2013

15  WL 1758891, at *4 (N.D. Cal. Apr. 24, 2013) (holding that notice should include language that

16  potential plaintiffs may be required to provide deposition testimony or courtroom testimony).

17        Last, HP claims that Plaintiffs' "request for personal phone numbers and email addresses is

18  also unwarranted, especially where Plaintiffs already sent a notice, and anyone who wanted to join

19  or be contacted could have done so or could do so in response to a mailed notice." Opp'n at 25.

20  Plaintiffs respond that email address and phone information is necessary to ensure that the Court-

21  ordered Notice will reach the prospective opt-ins. Mot. at 15-16. The Court agrees with Plaintiffs.

22  Courts routinely approve the production of email addresses and telephone numbers with other

23  contact information to ensure that notice is effectuated, and the Court finds that warranted here as

24  well. *See, e.g.*, *Lewis*, 669 F.Supp.2d at 1128-29 ("The Court finds that providing notice by first

25  class mail and email will sufficiently assure that potential collective action members receive actual

26  notice of this case. Defendant's objection to the production of email addresses is baseless. The

27  potential class members, technical support workers, are likely to be particularly comfortable

28

1   communicating by email and thus this form of communication is just as, if not more, likely to

2   effectuate notice than first class mail."); *id.* at 1130 (requiring defendant to provide telephone

3   numbers of all potential class members).

4           The Court finds that in all other respects, Plaintiffs' proposed Notice clearly and neutrally

5   communicates to potential class members the rights at stake in this litigation and their statutory

6   opt-in right. The Plaintiffs will revise the proposed Notice in the ways outlined by the Court above.

7   Plaintiffs also propose sending a reminder notice to potential opt-ins towards the end of the opt-in

8   period. Mot. at 16. HP raises no objection to this in its opposition. Because courts commonly

9   approve such reminders, the Court authorizes Plaintiffs to send the reminder notices. *See, e.g.*,

10  *Helton v. Factor 5, Inc.*, C 10-04927 SBA, 2012 WL 2428219 (N.D. Cal. June 25, 2012)

11  (authorizing postcard reminder to be sent to opt-ins thirty days before end of opt-in period).

12  **IV.    CONCLUSION**

13          For the foregoing reasons, the Court GRANTS Plaintiffs' motion for conditional FLSA

14  collective action certification. The Court conditionally CERTIFIES the following class:

15          "All persons who were, are, or will be employed by HP nationwide from January 10,
        2010, to end of the opt-in period (a) in the Technical Solutions Consultant I, II, or III;
16      Field Technical Support Consultant I, II, or III; or Technology Consultant I, II, or III
        Job titles, (b) with the HR designation "Individual Contributor," and (c) classified as
17      Exempt from the overtime pay requirements of the FLSA.

18          The Court orders HP to release, within fourteen days of the date of this Order, in Microsoft

19  excel or comparable form, an updated class list to Plaintiffs' counsel, including the names, all

20  known mailing addresses, all known telephone numbers, dates of employment, location(s) of

21  employment, social security numbers, and all known email addresses to Plaintiffs. Plaintiffs shall

22  incorporate the aforementioned changes into their proposed Notice and will send the Notice and

23  opt-in form to all individuals on the class list via first-class mail and email within ten days of

24  receipt by Plaintiffs of the contact information from HP. Plaintiffs shall also send reminder notices

25  to the potential opt-ins towards the end of the opt-in period. Potential opt-ins shall be permitted to

26  file consent to join forms until 90 days after the mailing of the first Notice. A consent to join form

27  may be completed online, so long as the online form provides a means by which the potential

28

United States District Court
For the Northern District of California

Case No.: 13-CV-00119-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION
CERTIFICATION AND ISSUANCE OF NOTICE

plaintiff signifies his or her asset to the statements listed on the form comparable to a signature, such as by checking a box on a web page.

Plaintiff shall bear the full cost of the Notice, opt-in forms, and reminder notices.

**IT IS SO ORDERED.**

Dated: February 13, 2014

_Lucy H. Koh_

LUCY H. KOH
United States District Judge