Wendy M. Lazerson, SBN 97285
wlazerson@sidley.com
Caryn F. Horner, SBN 273500
chorner@sidley.com
SIDLEY AUSTIN LLP
1001 Page Mill Road
Building 1
Palo Alto, California 94304
Telephone: (650) 565-7000
Facsimile: (650) 565-7100

Max C. Fischer, SBN 226003
mfischer@sidley.com
David R. Carpenter, SBN 230299
drcarpenter@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Defendant and Counterclaimant Hewlett-Packard Company*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ERIC BENEDICT, RICHARD BOWDERS, KILRICANOS VIEIRA, and DAVID MUSTAIN, on behalf of themselves and classes of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HEWLETT-PACKARD COMPANY,<br><br>Defendant. | Case No. 5:13-cv-00119-LHK<br><br>**DEFENDANT HEWLETT-PACKARD COMPANY'S NOTICE OF MOTION AND MOTION TO ENFORCE COLLECTIVE ACTION WAIVERS**<br><br>[Filed per Stipulation and Order, Dkt. #251]<br><br>Date: July 16, 2015<br>Time: 9:00 a.m.<br>Ctrm: San Jose Courthouse, Ctrm. 3<br>Judge: Hon. Beth Labson Freeman |
| HEWLETT-PACKARD COMPANY,<br><br>Counterclaimant,<br><br>v.<br><br>ERIC BENEDICT,<br><br>Counterdefendant. | |

**NOTICE OF MOTION AND MOTION TO ENFORCE COLLECTIVE ACTION WAIVERS**

NOTICE TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on July 16, 2015 at 9:00 a.m. in Courtroom 3 of the United States District Court for the Northern District of California, San Jose Division, located at 280 South First Street, San Jose, California 95113, before the Honorable Judge Beth Labson Freeman, Defendant Hewlett-Packard Company ("HP") will and hereby does make this Motion to Enforce Collective Action Waiver pursuant to the Stipulation and Order entered June 9, 2014 (Dkt. #251).

HP brings this Motion to resolve the parties' dispute over the enforceability of collective action waivers found in workforce-reduction severance agreements applicable to certain members of the conditionally certified FLSA collective who have filed consent-to-join forms or otherwise initiated their Action as a representative ("opt-ins" or "opt-in class members").  By way of this Motion, HP hereby seeks an order (1) declaring the enforceability of the Collective Action Waivers; and (2) dismissing (without prejudice as to their individual claims) opt-in class members who accepted severance payments in exchange for returning such waivers.  This Motion is made on the grounds that, as a matter of law, parties may waive the ability to bring or participate in a collective action, and that no case-specific grounds exists for invalidating the waivers here.

This Motion is based on this Notice, HP's Memorandum of Points and Authorities, the concurrently filed Declarations of Robert B. Martin III, Diana Alexander, and Teresa Rowe and exhibits thereto, and all pleadings, documents on file, and on such other and further oral and documentary evidence as may be presented at or before the hearing on this matter.

Dated:    June 9, 2015               SIDLEY AUSTIN LLP

By:    /s/ Wendy M. Lazerson
       Wendy M. Lazerson

       Attorneys for Defendant & Counterclaimant
       Hewlett-Packard Company

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................... 1

II. BACKGROUND ..................................................................................................... 1

    A. HP's ERISA-Qualified Severance Plan Was In Place Before This Litigation ....... 1

    B. Employees Have Substantial Notice and Freedom Whether To Accept A Severance Payment in Exchange for Certain Waivers and Releases .................. 3

    C. Procedural History ................................................................................................ 4

III. ARGUMENT .......................................................................................................... 5

    A. HP's Class/Collective Action Waivers Are Enforceable Under The FLSA ........... 5

        1. The ability to participate in a collective action is waivable. ........................ 5

        2. Plaintiff's authority provides no basis for a different conclusion. ............... 7

    B. Plaintiffs' Other Arguments Are Without Merit ....................................................... 9

IV. CONCLUSION ..................................................................................................... 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adkins v. Labor Ready, Inc.*,
    303 F.3d 496 (4th Cir. 2002) ........................................................................................6, 8

*Am. Exp. Co. v. Italian Colors Rest.*,
    133 S. Ct. 2304 (2013) ................................................................................................6, 7, 8

*AT&T Mobility LLC v. Concepcion*,
    131 S. Ct. 1740 (2011) ........................................................................................................8

*Balasanyan v. Nordstrom, Inc.*,
    No. 11–cv–2609, 2012 WL 760566 (S.D. Cal. Mar. 8, 2012).........................................10

*Birdsong v. AT&T*
    No. C12-6175, 2013 WL 1120783 (N.D. Cal. Mar. 18, 2013)......................................5, 7

*Boaz v. FedEx Customer Info. Svcs., Inc.*,
    725 F.3d 603 (6th Cir. 2013) .............................................................................................8

*Carter v. Countrywide Credit Indus., Inc.*,
    362 F.3d 294 (5th Cir. 2004) ....................................................................................6, 7, 8

*Christopher v. SmithKline Beecham Corp.*,
    132 S. Ct. 2156 (2012).......................................................................................................5

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991).........................................................................................................6, 7

*Horenstein v. Mortgage Mkt., Inc.*,
    9 F. App'x 618 (9th Cir. 2001) ..........................................................................................6

*Kelly v. City & County of S.F.*,
    No. C 05-1287, 2008 WL 2662017 (N.D. Cal. June 30, 2008) ....................................5, 7

*Killion v. KeHE Distributors, LLC*,
    761 F.3d 574 (6th Cir. 2014) ....................................................................................7, 8, 9

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996)...........................................................................................................9

*Lu v. AT&T*,
    No. C 10–05954, 2011 WL 2470268 (N.D. Cal. June 21, 2011) .................................5, 7

*Madry v. Gibraltor Nat. Corp.*,
    No. 10-13886, 2011 WL 1565807 (E.D. Mich. Apr. 25, 2011) ........................................8

*O'Connor v. Uber Techs., Inc.*,
   No. C-13-3826, 2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) ..................................................10

*Owen v. Bristol Care, Inc.*,
   702 F.3d 1050 (8th Cir. 2013) ............................................................................................6, 8

*Sutherland v. Ernst & Young LLP*,
   726 F.3d 290 (2d Cir. 2013) ................................................................................................5, 7

*Torres v. United Healthcare Servs., Inc.*,
   920 F. Supp. 2d 368 (E.D.N.Y. 2013) .......................................................................................6

*US Airways, Inc. v. McCutchen*,
   133 S. Ct. 1537 (2013) ..............................................................................................................9

*Vilches v. The Travelers Cos.*,
   413 F. App'x 487 (3d Cir. 2011) ...............................................................................................6

*Walthour v. Chipio Windshield Repair, LLC*,
   745 F.3d 1326 (11th Cir. 2014) ........................................................................................5, 6, 7, 8

*Williams v. Securitas Sec. Servs. USA, Inc.*,
   No. 10–7181, 2011 WL 2713741 (E.D. Pa. July 13, 2011) ...........................................................10

*Young v. AmeriGas Propane, Inc.*,
   No. 14-cv-00583, 2014 WL 5092878 (S.D. Cal. Oct. 9, 2014) ....................................................9

**Statutes**

29 U.S.C. § 202(a) ...............................................................................................................................5

29 U.S.C. § 216(b) ...............................................................................................................................5

29 U.S.C. § 2101 .................................................................................................................................2

**Other Authorities**

Rule 2-100 of the California Rules of Professional Conduct ............................................................10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

On May 23, 2012, Hewlett-Packard Company ("HP") adopted a multi-year restructuring plan designed to simplify business processes, accelerate innovation, and deliver better results for its customers, employees, and stockholders. Since then, HP has been undergoing a significant realignment pursuant to which it has eliminated thousands of positions across the company. Prior to and in connection with the restructuring, HP has administered certain ERISA-qualified benefit plans, under which employees subject to workforce reductions receive the opportunity for a severance payment in exchange for certain waivers and releases, including waiver of the ability to participate in a class or collective action. Most affected employees have nothing to do with this case, but some are opt-ins to the conditionally certified FLSA collective or putative Rule 23 class members who returned such waivers in exchange for substantial compensation.

HP now moves to enforce the collective action waivers pursuant to the Stipulation and Order for resolving disputes over their enforceability. *See* Dkt. 251. Under the great weight of authority, employees are free to waive their ability to participate in a class or collective action, either under the FLSA or under Rule 23's class provisions, and there is no other basis for invalidating the releases. Accordingly, HP respectfully requests that the Court enter an order providing for the dismissal (without prejudice to their individual claims) of all Opt-in Class members who received severance payments in exchange for returning a release.[1]

## II.   BACKGROUND

### A.   HP's ERISA-Qualified Severance Plan Was In Place Before This Litigation

Since 2009—well before the inception of this lawsuit, which was initiated January 10, 2013—HP has administered certain workforce reductions plans ("WFR Plans"), which are employee

---

[1] The Stipulation and Order provides that HP first would seek enforcement of its Collective Action Waiver, and, after such a ruling, meet and confer with Plaintiffs on the list of opt-ins who would be subject to dismissal as a result. Based on HP's records, 110 members of the conditionally certified FLSA collective returned such waivers and received the related severance payment. Decl. of Teresa Rowe ("Rowe Decl.") ¶ 4. The parties also agree to brief the Collective Action Waiver before HP sought enforcement of its Class Action Waiver. This Motion is not a waiver of HP's right to move to enforce the Class Action Waiver, and HP hereby preserves that right.

welfare benefit plans as defined in Section 3(1) of the Employee Retirement Income Security Act of 1974 ("ERISA").  Decl. of Diana L. Alexander ("Alexander Decl.") ¶¶ 3, 18, 23.

HP's current WFR Plan has been in place since May 23, 2012.  It was adopted as part of a five-year, multiple-pronged turnaround HP adopted to streamline its business and focus the company's efforts on providing excellent products and support to customers as well as positive returns for shareholders.  The WFR Plan adopted as part of the turnaround includes position realignment, and in some cases, elimination, and is designed to help terminated employees transition out of HP to other jobs.  The Plan is described in the HP Plan Summary Plan Description ("HP Plan SPD") and covers all U.S. employees.  *Id.* ¶ 3.  Prior to May 23, 2012, HP administered two prior versions of employee welfare benefits plans:  (1) the "EDS Plan SPD," effective July 25, 1999 and which covered employees who joined HP through the merger with Electronic Data Systems, Inc. ("EDS"); and (2) the "Prior HP Plan SPD," in effect as of November 1, 2009, which covered all other U.S. employees. *Id.* ¶¶ 18, 23.

These WFR Plans include provisions for severance and other payments and benefits as part of the multi-step WFR process administered by the employee's manager and HP's human resources personnel.  *Id.* ¶¶ 4-7, 9-14, 16-17, 19-23, 25-26, 28.  Under the current WFR Plan, for example, employees receive 60 days' pay and a 60 days' benefit equivalent payment, in lieu of notice as if the federal WARN Act or its state-law counterparts applied (although in many cases, employees would be entitled to no form of compensation beyond wages owed under federal or state law).[2]  The WFR Plan also offers employees the opportunity to obtain a separate cash severance payment – beyond those benefits to which the employees may be otherwise entitled as a matter of state or federal law – in exchange for the waiver of certain claims and the forbearance from certain procedural devices, including class and collective actions.  *Id.* ¶¶ 17, 22, 29 & Exs. 12-14, 18-19, 23.  The waiver states in relevant part:

---

[2] The Worker Adjustment and Retraining Notification Act ("WARN Act") requires employers to provide 60-days notice of workforce reductions in certain specified circumstances.  29 U.S.C. §§ 2101 *et seq*.  The SPD summary makes clear that the 60 days' pay and benefit equivalent payment provided under the plan are "intended to satisfy any and all statutory obligations that may arise out of your employment loss, including without limitation, any obligations that HP may have under…the WARN Act."  Alexander Decl. Ex. 8 at 5 (8/2014 SPD revision).

5. In return for the Cash Severance Payment and other benefits associated with the Plan, Employee…for…his or her…heirs, executors, representatives and assigns, forever releases, discharges, and agrees to hold harmless HP and its subsidiaries and affiliated companies and their respective shareholders, directors, officers, managers, agents, employees, attorneys, representatives, and assigns from any and all claims, actions and causes of action arising at any time through the date Employee signs this Agreement. Such potential claims include but are not limited to:

*   *   *   *

5.2  Any claims relating to pay (including but not limited to any claims for overtime pay under state or local law), benefits or leaves of absence…;

*   *   *   *

5.7  Employee further agrees he or she will not bring or participate in any class action or collective action against HP which asserts, in whole or in part, any claim(s) which arose through the date the Employee signs this agreement, whether or not such claims are specifically covered by this Agreement.

*Id.* Ex. 14, 2-3 (2012 version); Ex. 15 at 2-3 (2013 version).  The 2014 Waiver and General Release Agreement includes the identical waiver language, but also incorporates an arbitration clause pursuant to which the parties agree to arbitrate any and all disputes or claims arising out of the employee's employment or separation.  *Id.* Ex. 16 at 4-5.  Waivers used with the EDS Plan and Prior HP Plan have different language but are to the same effect.  *Id.* Exs. 21 at 1-2; 25 at 3-4.

**B.     Employees Have Substantial Notice and Freedom Whether To Accept A Severance Payment in Exchange for Certain Waivers and Releases**

An employee is not required to decide "on the spot" whether to accept their severance payment in exchange for providing a release.  Employees receive notice and information about the severance program and release in the weeks prior to their termination, and releases are sent to the employees two weeks after their termination.  *See id.* ¶¶ 8-15; *see also* ¶¶ 20, 28 (describing prior plans).  Employees also have substantial time – around 45 days from receiving the release – to consider whether to return the release.  *See id.* ¶ 15; *see also* Exs. 18, 19, 23.  In the FAQ employees receive prior to termination, they are expressly encouraged:  "If you have question about the Release Agreement, please seek the advice of your personal legal counsel."  Ex. 10.  Employees are encouraged again in the Release Agreement itself to seek the advice of counsel before entering into the release.  Exs. 14-16.

   The severance payment provided in exchange for the releases is completely separate from other wages and payments that employees receive in connection with their termination. Final wages are paid on the employee's last day, and as noted above, employees receive an additional 60 days' pay and a payment equivalent to 60 days' benefits in lieu of receiving WARN Notice, whether or not such notice is required. The <u>only</u> consideration HP receives for the final severance benefit is the employee's agreement to the waiver and release. Employees are free to accept the cash in exchange for waiver and release of claims and their right to participate in class or collective actions, or to decline or take no action on the agreement with no consequences.

### C.     Procedural History

   This action was commenced on January 10, 2013. The Court granted Plaintiffs' Motion for Conditional Certification of the FLSA collective action on February 13, 2014. Notice of conditional certification was mailed on or about March 9, 2014. The deadline for putative members of the FLSA collective action to file Consents to Join was June 9, 2014.

   To address any potential dispute over the enforceability of the waivers, the parties entered into a Stipulation for a streamlined process to resolve the issue following the exhaustion of meet and confer efforts. *See* Dkt. #251 (Stipulation and Order). In addition, after Plaintiffs' counsel expressed concern about releases going out to opt-ins or potential class members who were subject to workforce reduction, HP agreed (a) to provide a supplemental information insert to opt-ins and potential class members, expressly informing them of the effect of the release on their ability to participate in the *Benedict* lawsuit; and (b) to notify Plaintiffs' counsel about which opt-ins were subject to workforce reduction prior to those employees receiving the offer of waiver and release. *See* Dkt. # 261. That protocol has been in effect and followed for workforce reductions occurring since around August 1, 2014. Decl. of Robert B. Martin III ("Martin Decl.") ¶¶ 2-3.

   While meet and confer efforts on the issue go back to March 2014, they have been exhausted over the past month, after HP provided Plaintiffs with the relevant releases and authority for their validity, and Plaintiffs have responded with the bases for their objections. *Id.* ¶¶ 5-6 & Exs. A-C. The parties have now reached impasse on the issue of the enforceability of HP's class/collective action waivers, and HP accordingly filed this Motion to Enforce.

### III. ARGUMENT

Plaintiffs' principal argument in opposition to enforcement of HP's class/collective action waivers is that the ability to bring or join such an action is a substantive right guaranteed under the FLSA and cannot be waived. As explained below, there is no valid support for this argument in the FLSA or the case law interpreting that statute because collective action is a procedural mechanism, not a non-waivable substantive right. The enforceability of HP's waivers extends to the Plaintiffs' motion for class certification under Rule 23 for the same reason. Plaintiffs have not proffered any other valid basis for denying enforcement of the waivers.

#### A. HP's Class/Collective Action Waivers Are Enforceable Under The FLSA

The substantive rights guaranteed by the FLSA include protection from "substandard wages and oppressive working hours." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162 (2012); 29 U.S.C. § 202(a). To recover relief under the statute, the FLSA provides that an employee may bring "[a]n action … in any Federal or State court of competent jurisdiction" by an employee on behalf of himself and "other employees similarly situated," provided that other employees can only join as party plaintiff if they file an affirmative consent. 29 U.S.C. § 216(b). While the FLSA prohibits substantive wage-and-hour rights from being waived, the weight of authority is that the procedural right to bring or "opt in" to a collective action may be waived, just as the right to bring an action "in any Federal or State court" may be waived. Plaintiffs' contrary argument is based an outlier case and flawed reasoning.

#### 1. The ability to participate in a collective action is waivable.

Courts have widely upheld the enforceability of waivers of the ability to bring or join a collective action under the FLSA, because a collective action is merely a procedural device and its waiver does not impair any substantive right. Every Northern District of California court to address this issue has so held. *See Birdsong v. AT&T* No. C12-6175, 2013 WL 1120783, at *6 (N.D. Cal. Mar. 18, 2013); *Lu v. AT&T*, No. C 10–05954, 2011 WL 2470268 (N.D. Cal. June 21, 2011); *Kelly v. City & County of S.F.*, No. C 05-1287, 2008 WL 2662017 (N.D. Cal. June 30, 2008). Numerous Circuit Courts of Appeal are in accord. *See Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1335 (11th Cir. 2014), *cert. denied*, 134 S. Ct. 2886 (2014); *Sutherland v. Ernst & Young LLP*,

726 F.3d 290, 296-97 & n.6 (2d Cir. 2013); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052-53 (8th Cir. 2013); *Vilches v. The Travelers Cos.*, 413 F. App'x 487, 494 n.4 (3d Cir. 2011); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002).[3]

As this overwhelming authority explains, there is nothing "in the text, legislative history, or purpose of the FLSA that Congress intended to confer a nonwaivable right to a class action under that statute." *Adkins*, 303 F.3d at 503 ("[S]imply because judicial remedies are part of a law does not mean that Congress meant to preclude parties from bargaining around their availability." (internal quotation omitted)); *see also Walthour*, 745 F.3d at 1334-35 (discussing legislative history); *Torres v. United Healthcare Servs., Inc.*, 920 F. Supp. 2d 368, 375-76 (E.D.N.Y. 2013) (same). Indeed, "[r]ather than expand a plaintiff's substantive rights, Congress's decision to enact the collective action provision actually limited a plaintiff's existing procedural rights set forth in Rule 23. Were it not for § 16(b), a plaintiff could bring a representative FLSA action even without the prior consent of similarly situated employees." *Walthour*, 745 F.3d at 1336. Simply put, the collective action procedure itself undermines any "substantive right" to proceed as a group. As one court observed, "[e]ven assuming Congress intended to create some 'right' to class actions, if an employee must affirmatively opt in to any such class action, surely the employee has the power to waive participation in a class action as well." *Owen*, 702 F.3d at 1052-53.

The Supreme Court has already held, in the identical ADEA context, that the availability of the opt-in device in the statute does not transmute this procedural device into a substantive, non-waivable right. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991); *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2311 (2013) (enforcing class action waiver and acknowledging *Gilmer*'s holding that collective actions are waivable). As courts have explained, because the ADEA incorporates the FLSA's opt-in procedure, "Supreme Court precedents inexorably lead to the

---

[3] There is no Ninth Circuit precedent on the issue, although, in an unpublished disposition issued before 2007, *see* 9th Cir. L.R. 36-3(c), the Ninth Circuit also upheld arbitration agreements that precluded a FLSA collective action because "[a]lthough plaintiffs … lack the procedural right to proceed as a class, they nonetheless retain all substantive rights under the statute." *Horenstein v. Mortgage Mkt., Inc.,* 9 F. App'x 618, 619 (9th Cir. 2001).

conclusion that the waiver of collective action claims is permissible in the FLSA context." *Sutherland*, 726 F.3d at 297; *see also Walthour*, 745 F.3d at 1335 (explaining the force of *Gilmer* and *American Express* to FLSA); *Carter*, 362 F.3d at 298 (rejecting plaintiffs' argument that the "inability to proceed collectively deprives them of substantive rights available under the FLSA").

### 2. Plaintiff's authority provides no basis for a different conclusion.

In meet and confer discussions, Plaintiffs' position that the waivers are unenforceable, rests on a single, flawed case from the Sixth Circuit: *Killion v. KeHE Distributors, LLC*, 761 F.3d 574 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 1745 (2015). In *Killion*, the court acknowledged that "all of the circuits to address this issue have concluded that § 16(b) does not provide for a non-waivable, substantive right to bring a collective action." *Id.* at 591 (quoting *Walthour*, 745 F.3d at 1336). Nonetheless, *Killion* held that these cases were distinguishable because they arose in the arbitration context, and that outside the arbitration context, collective action waivers should be deemed unenforceable. *Id. Killion* thus holds, in effect, that a class action waiver is permitted where the employee has agreed to arbitration, but not where such an agreement does not exist, and an employee would otherwise bring a claim in court. As indicated above, California district courts, including in this District, have reached the opposite conclusion, holding that the logic for enforcing collective action waivers in the arbitration context – that there is no non-waivable substantive right to collective action – applies equally outside the arbitration context. *See Birdsong*, 2013 WL 1120783 at *5-6; *Lu*, 2011 WL 2470268 (same); *Kelly*, 2008 WL 2662017 (same). The Court should find that *Birdsong* and others are correct, that *Killion* is unpersuasive, and that there is no logical basis to distinguish between the arbitration and non-arbitration context.

<u>First</u>, *Killion* relies on a false premise that requiring an employee to litigate individually inherently impairs the ability to vindicate substantive rights. The Supreme Court has squarely rejected that premise, holding in the Rule 23 context that a "class action waiver merely limits [litigation] to the two contracting parties," and does not "eliminate[] those parties' right to pursue their statutory remedy" or vindicate their federal rights. *American Express*, 133 S. Ct. at 2311 (rejecting argument that having little financial incentive to proceed individually impairs statutory rights). In this respect, *Killion* falsely analogized to precedent refusing to enforce a contract

shortening the statute of limitations.  *See Killion*, 761 F.3d at 590-91 (discussing *Boaz v. FedEx Customer Info. Svcs., Inc.*, 725 F.3d 603 (6th Cir. 2013)).  Courts consider the contractual waiver of the full limitations period to be impermissible precisely because it interferes with and operates as a waiver of the employees' claim itself.  *Boaz*, 725 F.3d at 605-06; *Madry v. Gibraltor Nat. Corp.*, No. 10-13886, 2011 WL 1565807, at *3 (E.D. Mich. Apr. 25, 2011).

<u>Second</u>, there is no reason why collective action waivers should be enforceable as to one forum (arbitration) but not another (court).  *Killion* reasoned that waivers are permissible when "the alternative forum allows for the effective vindication of the employee's claim," and that "arbitration … is such a forum."  *Killion*, 761 F.3d at 591 (alterations omitted).  But the same is true for proceeding on an individual basis in court:  a judicial forum – in which an employee has, among other things, the right to jury, more substantial discovery, and broader appellate rights than in arbitration – also "allow[s] for the effective vindication" of an employee's substantive rights to overtime and wage protections under the FLSA.  If requiring employees to proceed individually did impair federally protected rights, then class and collective waivers would be unenforceable in either arbitration or court.  The reasoning of *Walthour*, *Owen*, *Adkins*, *Carter*, and others is not that an arbitration agreement can trump rights guaranteed by the FLSA.  Rather, these cases reject the very premise that the "inability to proceed collectively deprives them of substantive rights available under the FLSA."  *Carter*, 362 F.3d at 298.  And they hold that nothing in the FLSA's text, scheme, or history indicates an intent to preclude parties from bargaining as to the use of the collective device.  *See, e.g.*, *Walthour*, 745 F.3d at 1334-35; *Owen*, 702 F.3d at 1052-53; *Adkins*, 303 F.3d at 503.

<u>Third</u>, *Killion* also misunderstands the policies underlying the Federal Arbitration Act ("FAA") in describing the FAA as a "countervailing federal policy that outweighs the policy articulated in the FLSA."  *Killion*, 761 F.3d at 592.  The FAA's policy is not to promote arbitration *over* other congressional policies.  Rather, the FAA's "fundamental principle [is] that arbitration is a matter of contract" and that courts "must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms."  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (internal quotation and citation omitted); *see also American Express*, 133 S. Ct. at 2311.  Thus, under the policy of the FAA, if a collective action waiver in an arbitration agreement is

enforceable (as courts widely agree, and *Killion* concedes), such a provision must stand "on an equal footing" when it appears in other contracts. And to the extent a "countervailing federal policy" were necessary (and it is not), one exists here: ERISA, similar to the FAA, is "built around reliance on the face of written plan documents" and the enforcement of "contractually defined benefits" as set forth in the Plan's written instruments. *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1548 (2013) (holding that equitable doctrines cannot trump Plan's terms under ERISA). And under ERISA, an employer may condition the payment of severance benefits on the release of employment-related claims as a valid "*quid pro quo* between the plan sponsor and the participant," in which "the employee performs [an act] for the employer in return for benefits." *Lockheed Corp. v. Spink*, 517 U.S. 882, 894-95 (1996).[4]

### B. Plaintiffs' Other Arguments Are Without Merit

Any other attacks Plaintiffs may raise or have raised are without merit.

First, HP's class/collective action waivers are enforceable on an ordinary contractual basis. Courts generally uphold such agreements when the employee has an opportunity to consider the agreement and receives separate consideration for his assent. *See*, *e.g.*, *Young v. AmeriGas Propane, Inc.*, No. 14-cv-00583, 2014 WL 5092878 at *4-5 (S.D. Cal. Oct. 9, 2014). There can be no dispute that those conditions exists here, as recounted above. Employees are given ample time to consider whether to the return the release, they are repeatedly encouraged to seek the advice of personal counsel, and they receive substantial severance pay (separate from wages, benefits, or other payments made in connection with their termination) as consideration. *See* Alexander Decl. ¶¶ 6-15 & Exs. 10, 18, 19, 23.

Second, HP's counsel has not improperly communicated with represented parties or violated the California Rules of Professional Conduct, as Plaintiffs assert. Since before this lawsuit began, the severance agreements have been offered to all employees subject to a WFR pursuant to HP's ERISA plans, as part of a process administered by employees' managers and HP's human resources personnel. Alexander Decl. ¶¶ 2-3, 4-7, 9-14, 16-17, 19-23, 25-26, 28. At no point during the

---

[4] In addition, since May 2014, HP's agreements have included an arbitration provision, and thus the collective action waivers in those agreements are enforceable, even under *Killion*.

WFR/severance agreement process is HP's counsel involved in the process (except in rare instances when individuals themselves initiate contact with HP's in-house legal team to dispute a termination or ask questions about their benefits).  Accordingly, contrary to Plaintiff's suggestion, neither HP nor its counsel are violating Rule 2-100 of the California Rules of Professional Conduct, because that rule applies only to the conduct of attorneys.

<u>Third</u>, there is no serious argument that HP has created these waivers or used the WFR process to target class members or interfere with this case.[5]  HP's WFR Plan and waivers were in place *before this lawsuit began* and apply to employees companywide, without discrimination.  Opt-ins have made up only approximately 1.5% of the U.S. employees who have been WFR'd since this lawsuit began.  Decl. of Teresa Rowe ("Rowe Decl.") ¶¶ 3-4.  Since August 1, 2014 – when HP has been giving opt-ins a "supplemental information" insert about this lawsuit and notifying Plaintiffs' counsel of opt-ins being WFR'd – **73% of opt-ins** still returned the release in exchange for severance pay.  *Id.* ¶¶ 3, 8.  There is no argument that these opt-ins or anyone else were coerced or misled into entering into their waivers, including the waiver of their ability to join a class or collective action.

## IV.  CONCLUSION

Defendant HP respectfully requests that this Court grant its Motion to Enforce Collective Action Waivers.

Dated:   June 9, 2015                                  SIDLEY AUSTIN LLP

By:    /s/ Wendy M. Lazerson
       Wendy M. Lazerson

       Attorneys for Defendant & Counterclaimant
       Hewlett-Packard Company

---

[5] In correspondence, Plaintiffs have cited certain cases in which a defendant sought to alter pre-existing contractual relations without consideration or coerce or mislead employees into waivers in response to the filing of a lawsuit.  *See*, *e.g.*, *O'Connor v. Uber Techs., Inc.*, No. C-13-3826, 2013 WL 6407583 (N.D. Cal. Dec. 6, 2013);  *Balasanyan v. Nordstrom, Inc.*, No. 11–cv–2609, 2012 WL 760566, at *2-4 (S.D. Cal. Mar. 8, 2012); *Williams v. Securitas Sec. Servs. USA, Inc.*, No. 10–7181, 2011 WL 2713741 (E.D. Pa. July 13, 2011).  No such facts exist here.