Jahan C. Sagafi (Cal. Bar No. 224887)
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone:  (415) 638-8800
Facsimile:  (415) 638-8810
E-Mail: jsagafi@outtengolden.com

Adam T. Klein (admitted *pro hac vice*)
Juno Turner (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile:   (212) 977-4005
E-Mail: atk@outtengolden.com
E-Mail: jturner@outtengolden.com

Kelly M. Dermody (Cal. Bar No. 171716)
Daniel M. Hutchinson (Cal. Bar No. 239458)
Anne B. Shaver (Cal. Bar No. 255928)
Marc A. Pilotin (Cal. Bar No. 266369)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008
E-Mail: kdermody@lchb.com
E-Mail: dhutchinson@lchb.com
E-Mail: ashaver@lchb.com
E-Mail: mpilotin@lchb.com

Attorneys for Plaintiffs and Proposed Class Members

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ERIC BENEDICT, RICHARD BOWDERS, KILRICANOS VIEIRA, and DAVID MUSTAIN on behalf of themselves and classes of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HEWLETT-PACKARD COMPANY,<br><br>Defendant. | Case No.    C 13-0119 BLF<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO ENFORCE WAIVERS**<br><br>Date:       August 20, 2015<br>Time:       9:00 a.m.<br>Judge:      Hon. Beth Labson Freeman<br>Crtrm:      3, 5th Floor |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ...................................................................... 1

ARGUMENT .................................................................................................................................. 3

    I.    HP's Conduct Violated the California Rules of Professional Conduct and
Undermines the Court's Authority to Manage the Litigation. ................................. 3

        A.    HP's Conduct Violates California Rule of Professional Conduct 2-
100(A). ........................................................................................................ 3

        B.    By Obtaining Class Member Opt-Outs Without Court Approval,
HP Has Engaged in Improper Class Member Communications. ................ 4

    II.    Collective Action Waivers Are Not Enforceable Without an
Accompanying Arbitration Clause. ......................................................................... 7

CONCLUSION ............................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page**

## Cases

*Adkins v. Labor Ready, Inc.*,
    303 F.3d 496 (4th Cir. 2002)......................................................................8

*American Express Co. v. Italian Colors Restaurant,* 133 S. Ct. 2304 (2013) ................................8

*Balasanyan v. Nordstrom, Inc.*,
    Nos. 11 Civ. 2609, 11 Civ. 2671, 2012 WL 760566 (S.D. Cal. Mar. 8, 2012) ........................5

*Barrentine v. Ark.-Best Freight Sys., Inc.*,
    450 U.S. 728 (1981)......................................................................7

*Birdsong v. AT&T Corp.*,
    No. C12-6175 TEH, 2013 WL 1120783 (N.D. Cal. Mar. 18, 2013) ........................................9

*Boaz v. FedEx Customer Info. Servs., Inc.*,
    725 F.3d 603 (6th Cir. 2013)......................................................................7

*CompuCredit Corp. v. Greenwood*,
    132 S. Ct. 665 (2012)......................................................................9

*Domingo v. New Eng. Fish Co.*,
    727 F.2d 1429 (9th Cir. 1984)......................................................................4

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991)......................................................................8

*Hoffmann-La Roche Inc. v. Sperling*,
    493 U.S. 165 (1989)......................................................................7

*In re Currency Conversion Fee Antitrust Litig.*,
    224 F.R.D. 555 (S.D.N.Y. 2004) ......................................................................5

*Killion v. KeHE Distribs., LLC*,
    761 F.3d 574 (6th Cir. 2014), *cert denied*, 135 S.Ct. 1745 (2015)..................................7, 8, 9

*Li v. A Perfect Day Franchise, Inc.*,
    270 F.R.D. 509 (N.D. Cal. Sept. 29, 2010)......................................................................5

*Lu v. AT&T Servs.*,
    No. C 10-05954 SBA, 2011 WL 2470268 (N.D. Cal. June 21, 2011) ......................................9

*Mitton v. State Bar of Cal.*,
    71 Cal.2d 52 (Cal. 1969)......................................................................4

*O'Connor v. Uber Techs., Inc.*,
    No. C-13-3826 EMC, 2013 WL 6407583 (N.D. Cal. Dec. 6, 2013), *reconsideration denied*,
    2014 WL 1760314 (N.D. Cal. May 2, 2014) ......................................................................5, 6

*Owen v. Bristol Care, Inc.*,
    702 F.3d 1050 (8th Cir. 2013)......................................................................8

*Partida v. Union Pac. R.R. Co.*,
    221 F.R.D. 623 (C.D. Cal. 2004) ......................................................................4

*United States v. Lopez*,
    4 F.3d 1455 (9th Cir. 1993)......................................................................4

*Walthour v. Chipio Windshield Repair, LLC*,
    745 F.3d at 1326 (11th Cir. 2014)......................................................................8

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Wang v. Chinese Daily News, Inc.*,
  623 F.3d 743 (9th Cir. 2010), *vacated on other grounds,* 132 S. Ct. 74 (2011) .......................... 4

*Williams v. Securitas Sec. Servs. USA, Inc.*,
  No. 10 Civ. 7181, 2011 WL 2713741 (E.D. Pa. July 13, 2011) .................................. 5

*Wright v. Adventures Rolling Cross Country, Inc.*,
  No. C-12-0982 EMC, 2012 WL 2239797 (N.D. Cal. June 15, 2012) .................................... 5, 6

**Statutes**

29 U.S.C. § 216(b) ........................................................................................................ 7

**Rules**

Cal. R. Prof. Conduct 2-100(A) ................................................................................... 3

Fed. R. Civ. P. 23(d) .................................................................................................... 3

**Treatises**

Conte & Newberg, Newberg on Class Actions,
  §15.19 (4th ed. 2002) ............................................................................................... 5

### **INTRODUCTION**

While this case was pending, and unbeknownst to Plaintiffs' counsel, Defendant Hewlett-Packard Company ("HP") negotiated *ex parte* with Fair Labor Standards Act ("FLSA") collective opt-in plaintiffs (the "Opt-In Plaintiffs") and potential Rule 23 class members regarding their rights at issue in this litigation. Specifically, in the course of terminations of employment, HP sought and obtained agreements containing waivers of certain rights from those Opt-in Plaintiffs and potential Rule 23 class members, without informing them of this litigation or the significance of the waivers. These waiver agreements purport to prevent signatories from continuing to participate in this litigation. Such *ex parte* communications with actual Opt-In Plaintiffs and potential class members represented by Plaintiffs' counsel violated the California Rules of Professional Conduct and undermine the Court's authority to manage the litigation. HP should not be permitted to "pick off" Opt-In Plaintiffs and potential Rule 23 class members while this case is pending in this manner. In addition to being improperly obtained, the purported waivers are substantively flawed. Specifically, the right to participate in a FLSA collective action cannot be waived outside the context of arbitration.

Accordingly, for the reasons set forth below, Plaintiffs respectfully request that the Court (1) strike all waivers that were obtained during the course of this litigation; and (2) strike all waivers that do not contain an arbitration clause, regardless of when they were obtained. In the alternative, Plaintiffs respectfully request that the Court (1) strike all waivers obtained from Opt-In Plaintiffs, (2) require issuance of a corrective notice to all potential Rule 23 class members who signed waivers before the Disclosure Agreement was implemented, and (3) allow those Rule 23 class members a reasonable time to reconsider whether they wish to withdraw any assent to the waivers and the agreement in which they are contained.

### **FACTUAL AND PROCEDURAL BACKGROUND**

On January 10, 2013, Plaintiffs filed their initial complaint. ECF No. 1. On February 13, 2014, the Court granted Plaintiffs' motion for conditional certification and notice pursuant to section 216(b) of the Fair Labor Standards Act ("FLSA"). ECF No. 175. Notice issued to the

1   FLSA Collective in March 2014, and 1,327 individuals filed Consents to Join the case.  Decl. of

2   Jahan C. Sagafi in Opp'n to Mot. to Enforce Collective Action Waivers ("Sagafi Decl.") ¶ 4.

3          In addition to pleading claims under the FLSA, Plaintiffs seek certification of three state

4   law classes under the wage and hour laws of California, Massachusetts, and Colorado.  ECF Nos.

5   306-316.  Plaintiffs' motion for class certification has been filed; HP's opposition is due June 23,

6   2015, and Plaintiffs' reply brief is due on July 10, 2015.  ECF Nos. 306-316; 323.

7          Sometime after FLSA notice issued, Plaintiffs' Counsel began receiving inquiries from

8   Opt-In Plaintiffs who had received Workforce Reduction Notices ("WFR Notices") from HP

9   accompanied by severance agreements.  Sagafi Decl. ¶ 5.  Among other things, the severance

10  agreements that HP offered to Opt-In Plaintiffs contained Releases that, in relevant part, state that

11  the "[e]mployee [] agrees he or she will not bring or participate in any class, collective, or

12  representative action against HP which asserts, in whole or in part, any claim(s) which arose

13  through the date Employee signs this agreement, whether or not such claims are specifically

14  covered by this Agreement (the "CCA Waiver")."  *See* ECF No. 317-4 (Alexander Decl.) Ex. 14

15  ¶ 5.7; Ex. 15 ¶ 5.7; Ex. 16 ¶ 5.7.  The agreements also contain a so called "tender-back"

16  provision, permitting HP to seek return of the severance payments in the event any portion of the

17  agreements are breached, including, presumably, the CCA Waiver (the "Tender-Back

18  Provision").  *See* ECF No. 317-4 (Alexander Decl.) Ex. 14 ¶ 6; Ex. 15 ¶ 6; Ex. 16 ¶ 6.

19         In order to protect the rights of Opt-In Plaintiffs and proposed Rule 23 class members,

20  Plaintiffs' counsel promptly contacted HP's counsel about the CCA Waivers and their effect on

21  this litigation.  Sagafi Decl. ¶ 6.  After lengthy negotiations, the parties entered into a Stipulation

22  which (1) sets forth a meet-and-confer process to be followed while the parties discussed the

23  enforceability of the CCA Waivers, and (2) confirmed that HP would not enforce the Tender-

24  Back Provision against the Opt-In Plaintiffs in the event the CCA Waiver was found enforceable.

25  ECF No. 248.  The Court so ordered the Stipulation on June 9, 2014.  ECF No. 251.

26         To further safeguard Opt-In Plaintiffs' and proposed Rule 23 class members' rights,

27  Plaintiffs' counsel then negotiated the Disclosure Agreement – a protocol whereby HP would

28  (1) provide Opt-In Plaintiffs and proposed Rule 23 class members with information about the

1    potential effect of signing the CCA Waiver on their ability to participate in this case and

2    (2) inform Plaintiffs' Counsel, on an ongoing basis, of all Opt-In Plaintiffs who were presented

3    with release agreements.  *See* ECF No. 269.  The parties entered into a Stipulation memorializing

4    this process, which the Court so ordered on July 29, 2014.  *Id.*

5         Although HP was aware that the Opt-In Plaintiffs were represented by counsel, at no time

6    did HP inform Plaintiffs' Counsel that it was providing Opt-In Plaintiffs with waivers that

7    eliminated their ability to participate in this (or any other) class and collective action lawsuit.  It

8    was only through being contacted by anxious clients that Plaintiffs' counsel became aware of this

9    practice.  Until then, HP was able to pick off Opt-In Plaintiffs and proposed Rule 23 class

10   members through the CCA Waivers without providing them with a full and fair opportunity to

11   understand how their rights might be affected by signing the CCA Waivers.

12                                     **ARGUMENT**

13   **I.    HP's Conduct Violated the California Rules of Professional Conduct and
          Undermines the Court's Authority to Manage the Litigation.**
14

15        HP does not dispute that it has presented Opt-In Plaintiffs and proposed Rule 23 class

16   members (some of whom are also Opt-In Plaintiffs) with agreements that purport to waive their

17   right to participate in this case.  Def. Br. at 1.  Such *ex parte* correspondence violated the

18   California Rules of Professional Conduct and improperly undermines the Court's management of

19   class member communications under Fed. R. Civ. P. 23(d) ("Rule 23(d)").  In addition, HP's

20   conduct encourages Opt-In Plaintiffs and potential Rule 23 class members to opt out without

21   providing them a full and fair opportunity to learn the facts of the case and the effect of their non-

22   participation, rendering corrective notice appropriate.

23        **A.    HP's Conduct Violates California Rule of Professional Conduct 2-100(A).**

24        By contacting Opt-In Plaintiffs about their rights in this litigation, HP violated California

25   Rule of Professional Conduct ("CRPC") 2-100(A).  That rule provides that, "[w]hile representing

26   a client, a member shall not communicate directly or indirectly about the subject of the

27   representation with a party the member knows to be represented by another lawyer in the matter,

28   unless the member has the consent of the other lawyer.  Cal. R. Prof. Conduct 2-100(A).  Rule 2-

1   100(A) is designed to "shield[] a party's substantive interests against encroachment by opposing

2   counsel." *United States v. Lopez*, 4 F.3d 1455, 1458-1459 (9th Cir. 1993); *see also Mitton v.*

3   *State Bar of Cal.*, 71 Cal. 2d 52, 534 (Cal. 1969) ("[The no-contact rule] shields the opposing

4   party not only from an attorney's approaches which are intentionally improper, but, in addition,

5   from approaches which are well intended but misguided.").

6        At the time HP offered the CCA Waivers, the Opt-In Plaintiffs were, by definition,

7   represented by Plaintiffs' counsel in this litigation.  HP knew that.  The CCA Waivers sought to

8   eliminate the Opt-In Plaintiffs' rights in the litigation.  That HP obtained these waivers through its

9   Human Resources Operations Organization ("HR"), and not directly through counsel, is

10  irrelevant.  HP's HR organization secured the Waivers; HP's legal counsel seek to enforce them.

11  As in *Partida v. Union Pac. R.R. Co.*, 221 F.R.D. 623 (C.D. Cal. 2004), where "the operating

12  department is permitted to share the results of the [unauthorized communications] with its legal

13  department, and thereby use it against [plaintiffs] in litigation," court intervention is appropriate

14  and the Court should strike waivers obtained through unauthorized communications with

15  represented parties.  *Id.* at 629.  In short, HP should not have communicated *ex parte* with Opt-In

16  Plaintiffs regarding their rights in this litigation.  Before the date that the Disclosure Agreement

17  went into effect, such communications violated the California Rules of Professional Conduct.

18  CCA Waivers signed by Opt-in Plaintiffs before that date should be stricken.

19        **B.      By Obtaining Class Member Opt-Outs Without Court Approval, HP Has**
         **Engaged in Improper Class Member Communications.**
20

21        Similar relief is warranted with respect to members of the proposed classes.  "Rule 23(d)

22  gives district courts the power to regulate the notice and opt-out processes and to impose

23  limitations when a party engages in behavior that threatens the fairness of the litigation."  *Wang v.*

24  *Chinese Daily News, Inc.*, 623 F.3d 743, 756 (9th Cir. 2010), *vacated on other grounds,* 132 S.

25  Ct. 74 (2011).  Courts routinely exercise their authority under Rule 23(d) to limit or remedy the

26  effects of improper or misleading communications by defendants to members of a putative class.

27  *See, e.g.*, *Domingo v. New Eng. Fish Co.*, 727 F.2d 1429, 1441 (9th Cir. 1984) (among the

28  "principal concerns" that could justify restrictions upon communications were "solicitation by

1   defendants of requests to opt out"); *Wright v. Adventures Rolling Cross Country, Inc.*, No. C-12-

2   0982 EMC, 2012 WL 2239797, at *5 (N.D. Cal. June 15, 2012) (in wage and hour class and

3   collective action, where defendant's "communications have plausibly had a chilling effect on

4   participation" in the case, restrictions on further communications to potential class members and

5   corrective notice were appropriate) (Chen, J.); *Li v. A Perfect Day Franchise*, *Inc.*, 270 F.R.D.

6   509, 518 (N.D. Cal. Sept. 29, 2010) (ordering corrective notice where defendant obtained opt-out

7   forms from proposed Rule 23 class members) (Koh, J.).[1]

8           Many courts have exercised their discretion under Rule 23(d) to invalidate class waivers

9   obtained under similar circumstances to those at issue here.  *See, e.g.*, *Balasanyan v. Nordstrom,*

10  *Inc.*, Nos. 11 Civ. 2609, 11 Civ. 2671, 2012 WL 760566, at *2-4 (S.D. Cal. Mar. 8, 2012)

11  (finding that the imposition of an agreement containing a class waiver while litigation was

12  ongoing constituted an improper class communication); *Williams v. Securitas Sec. Servs. USA,*

13  *Inc.*, No. 10 Civ. 7181, 2011 WL 2713741, at *2 (E.D. Pa. July 13, 2011) (concluding that

14  agreement containing class waiver "is designed to thwart employees of [defendant] from

15  participating in this lawsuit."); *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555,

16  569-70 (S.D.N.Y. 2004) (holding that defendants that obtained arbitration agreements from class

17  members without the court's knowledge had acted improperly).

18          In *O'Connor v. Uber Techs., Inc.*, during the course of litigation the defendant presented

19  potential class members (drivers who used its application to obtain fares as part of an "on-

20  demand" car service) with an updated user contract that contained an arbitration agreement and

21  class waiver.  No. C-13-3826 EMC, 2013 WL 6407583, at *1 (N.D. Cal. Dec. 6, 2013),

22  *reconsideration denied*, 2014 WL 1760314 (N.D. Cal. May 2, 2014) (Chen, J.).  The plaintiffs

23  moved for a protective order and sought to strike the arbitration clause and class waiver from the

24  contracts.  *Id.*  The court found that – regardless of the substantive validity of the arbitration

25  agreement – Uber's communications with potential class members ran "a substantial risk of

26

27  [1] *See also* Conte & Newberg, Newberg on Class Actions, §15.19, p. 66 (4th ed. 2002) ("The
    solicitation of exclusions from a pending class action by a defendant before the court has
28  determined that the case may proceed as a class action constitutes a serious challenge to the
    authority of the court to have some control over communications with class members.").

1    interfering with the rights of [class members] under Rule 23." *Id.* at *7 (emphasis added).  The

2    court noted that the members of the plaintiff class were likely unaware that the language

3    contained in the contracts would have prevented them from participating in the case, particularly

4    where the class action waiver did not alert them to the pendency of the class action. *Id.* at *5-6.

5    The same is true here:  HP did not tell class members that the waivers would prevent them from

6    participating in this case until counsel for Plaintiffs demanded that it do so.  *See* Sagafi Decl. ¶ 7.

7           HP takes pains to point out that the waivers presented to class members occurred in the

8    context of wide-ranging layoffs unrelated to this litigation, but that misses the point.  The Waivers

9    had a different potential impact on individuals covered by this litigation than on other employees.

10   "[T]he touchstone under Rule 23(d) is not whether the communication is of an ordinary business

11   nature; rather, the inquiry is whether the communication is abusive, misleading, coercive, or

12   otherwise affects the administration of justice in the context of a putative class action lawsuit."

13   *O'Connor*, 2013 WL 6407583, at *4.  Here, as in *O'Connor*, the communications at issue "run[] a

14   substantial risk of interfering with the rights of [class members]" and are therefore improper *ex

15   parte* communications subject to court regulation.  *See id.*

16          To remedy these improper communications, the Court should order that those class

17   members be sent a corrective notice with complete information about the effect that the CCA

18   Waivers will have on their ability to participate in this case and potentially recover damages.

19   Proposed Rule 23 class members would then have the opportunity to make a fully informed

20   decision as to whether they want to agree to the terms of the severance agreements.  Many courts

21   have ordered a similar process in comparable circumstances.  *See, e.g., O'Connor*, 2013 WL

22   6407583, at *7 (requiring clear notice to class members of effect of arbitration provision

23   containing class and collective action waiver, and providing class members who previously

24   agreed to the waiver an opportunity to reconsider it); *Wright*, 2012 WL 2239797, at *6 (granting

25   corrective notice and prohibiting defendants from making contact with proposed class members).

26          HP already agreed to a similar process on a going-forward basis for all Opt-In Plaintiffs

27   who are subject to layoffs, so it should not object to this proposal.  *See* ECF No. 269.  Moreover,

28   the information provided is meaningful – although HP notes that 73% of Opt-In Plaintiffs

1   presented with CCA Waivers accepted them, this means that 27% of Opt-In Plaintiffs did not.

2   *See* Decl. of Teresa Rowe, ECF No. 317-3, at ¶¶ 3, 8.  All proposed Rule 23 class members

3   should be able to make an informed choice about whether to continue to participate in this case.

4   **II.    Collective Action Waivers Are Not Enforceable Without an Accompanying**

5   **Arbitration Clause.**

6         The FLSA provides individuals with the right to participate in a collective action.

7   29 U.S.C. § 216(b) (affording employees "the right . . . to become a party plaintiff to any such

8   [FLSA] action").  HP insists that this right is waiveable based on severance agreements similar to

9   those at issue here.  *See* Def. Br. at 5.  However, the cases HP cites predate the Sixth Circuit's

10  recent decision in *Killion v. KeHE Distribs., LLC*, which confirms that the right to participate in a

11  FLSA collective action cannot be waived outside the context of arbitration.  761 F.3d 574, 590-91

12  (6th Cir. 2014), *cert denied*, 135 S.Ct. 1745 (2015).  The Ninth Circuit has yet to rule on this

13  question, but given that *Killion* rested on the broad remedial purpose animating the FLSA, it will

14  likely follow *Killion*'s persuasive reasoning.

15        In *Killion*, the Sixth Circuit reversed the district court's decision to exclude from an FLSA

16  collective action several employees who had signed a collective action waiver as part of an

17  employers' severance agreement.  761 F.3d at 593.  In doing so, the court held that the waivers

18  were unenforceable because they would allow an employer to circumvent the requirements of the

19  FLSA by preventing aggrieved employees from proceeding collectively.  *Id.* at 590-91.  First, the

20  court cited the long-established principle that an "'employment agreement cannot be utilized to

21  deprive employees of their statutory [FLSA] rights.'"  *Id.* (quoting *Boaz v. FedEx Customer Info.*

22  *Servs., Inc.,* 725 F.3d 603 (6th Cir. 2013)); *see also Barrentine v. Ark.-Best Freight Sys., Inc.*, 450

23  U.S. 728, 740 (1981) ("FLSA rights cannot be abridged by contract or otherwise waived[.]").

24  Second, the court cited the Supreme Court's observation that Congress declared a policy that

25  FLSA plaintiffs "'should have the opportunity to proceed collectively.'"  *Killion*, 761 F.3d at 590

26  (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).  In light of these

27  principles, *Killion* held that the right to participate in a collective action is unwaiveable because

28

1    "[r]equiring an employee to litigate on an individual basis grants the employer [a] competitive

2    advantage" inconsistent with the FLSA.  *See id.* at 592.

3         The court in *Killion* squarely rejected the defendant's citations there to cases involving

4    collective action waivers coupled with arbitration clauses, just as HP provides here.  The court

5    explained that none of those cases "speak to the validity of a collective-action waiver outside of

6    the arbitration context," which poses different circumstances.  *Id.* at 591.  Because the employer's

7    severance agreements did not contain an arbitration clause, the Federal Arbitration Act ("FAA")

8    was not at issue, and there was thus "no countervailing federal policy that outweigh[ed] the policy

9    articulated in the FLSA."  *Id.* at 592.

10        Understanding the barrier *Killion* poses for its argument,[2] HP selectively cites portions of

11   the purported "overwhelming authority" supporting the position that *Killion* rejected.  Def. Br. at

12   6.  HP cites the Supreme Court's decisions in *Gilmer v. Interstate/Johnson Lane Corp.* and

13   *American Express Co. v. Italian Colors Restaurant*, but ignores the fact that both *Gilmer* and

14   *Italian Colors* were decided under the FAA's rubric, which is inapplicable to agreements – like

15   many of those at issue here – that do not contain an arbitration clause.  *See, e.g.*, *Gilmer*, 500 U.S.

16   20, 35 (1991) (holding that plaintiff "has not met his burden of showing that Congress, in

17   enacting the ADEA, intended to preclude arbitration of claims under that Act"); *Italian Colors*,

18   133 S. Ct. 2304, 2312 (2013) (holding that previous decision on FAA "all but resolves this case").

19   HP misleadingly cites to circuit court cases and suggests they had nothing to do with the FAA,

20   but a complete reading of those cases reveals the contrary.  *See, e.g.*, *Walthour v. Chipio*

21   *Windshield Repair, LLC*, 745 F.3d at 1326, 1334 (11th Cir. 2014) ("[W]e discern no 'contrary

22   congressional command' that precludes the enforcement of plaintiffs' Arbitration Agreements

23   and their collective action waivers."); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1053 (8th Cir.

24   2013) (noting that right to participate in collective action "falls short of the 'contrary

25   congressional command' required to override the FAA"); *Adkins v. Labor Ready, Inc.*, 303 F.3d

26   496, 503 (4th Cir. 2002) (noting that "inability to bring a class action, therefore, cannot by itself

27   _____

28   [2] HP apparently understood this problem when, beginning in 2014, it included an arbitration
clause in its severance agreements.  Plaintiffs note that, even if such agreements are enforceable
under the FAA, they are unenforceable for the reasons set forth in Section I.

1    suffice to defeat the strong congressional preference for an arbitral forum").  Finally, HP also

2    points to several cases from this District allowing enforcement of class and collective action

3    waivers.  But those cases, too, predated *Killion* and largely relied on authority interpreting

4    waivers in the context of an arbitration clause.  *E.g.*, *Birdsong v. AT&T Corp*., No. C12-6175

5    TEH, 2013 WL 1120783, at *5 (N.D. Cal. Mar. 18, 2013) (citing, *inter alia*, *Owen*, *Carter*, and

6    *Adkins*) (Henderson, J.); *Lu v. AT&T Servs.*, No. C 10-05954 SBA, 2011 WL 2470268, at *3

7    (N.D. Cal. June 21, 2011) (Armstrong, J.).

8           HP's remaining arguments are unavailing.  First, *Killion* did not, as HP argues, *see* Def.

9    Br. at 7, rest on the effective vindication doctrine *Italian Colors* rejected in the context of

10   arbitration, but rather on the remedial purpose underlying the FLSA.  *See Killion*, 761 F.3d at

11   592.  Second, HP's argument that collective action waivers should be enforced regardless of

12   whether the plaintiff is in either an arbitral or judicial forum, *see* Def. Br. at 8, ignores the import

13   of recent Supreme Court precedent making clear that courts must "enforce agreements to arbitrate

14   according to their terms."  *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012)

15   (citation omitted).  Thus, the FAA makes a clear distinction between arbitral and judicial forums.

16   Finally, HP maintains that the FAA was not intended to "promote arbitration *over* other

17   congressional policies."  Def. Br. at 8.  But the Supreme Court held otherwise, explaining that

18   arbitration must prevail in cases involving "federal statutory claims," unless the FAA's mandate

19   has been 'overridden by a contrary congressional command.'"  *Greenwood*, 132 S. Ct. at 669

20   (citation omitted).

21                              **CONCLUSION**

22          For the reasons set forth above, Plaintiffs respectfully request that the Court (1) strike all

23   waivers that were obtained during the course of this litigation; and (2) strike all waivers that do

24   not contain an arbitration clause, regardless of when they were obtained.  In the alternative,

25   Plaintiffs respectfully request that the Court (1) strike all waivers obtained from Opt-In Plaintiffs,

26   (2) require issuance of a corrective notice to all potential Rule 23 class members who signed

27   waivers before the Disclosure Agreement was implemented, and (3) allow those Rule 23 class

28

PLAINTIFFS' OPPOSITION TO MOTION TO
ENFORCE WAIVERS
CASE NO. C 13-0119 BLF

members a reasonable time to reconsider whether they wish to withdraw any assent to the CCA
Waivers and the agreement in which they are contained.

Respectfully Submitted,

Dated:  June 23, 2015                    OUTTEN & GOLDEN LLP

By:  _____ /s/ *Jahan C. Sagafi* _____
                              Jahan C. Sagafi

Jahan C. Sagafi (Cal. Bar No. 224887)
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone:  (415) 638-8800
Facsimile:  (415) 638-8810
E-Mail: jsagafi@ outtengolden.com

Adam T. Klein (admitted pro hac vice)
Juno Turner (admitted pro hac vice)
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile:   (212) 977-4005
E-Mail: atk@outtengolden.com
E-Mail: jturner@outtengolden.com

Kelly M. Dermody (Cal. Bar No. 171716)
Daniel M. Hutchinson (Cal. Bar No. 239458)
Anne B. Shaver (Cal. Bar No. 255928)
Marc A. Pilotin (Cal Bar No. 266369)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008
E-Mail: kdermody@lchb.com
E-Mail: dhutchinson@lchb.com
E-Mail: ashaver@lchb.com
E-Mail: mpilotin@lchb.com

*Attorneys for Plaintiffs and proposed Class Members*