# EXHIBIT YY

## REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

17. This Agreement may be executed in counterparts or by facsimile, and each counterpart, facsimile or photocopy shall have the same force and effect as an original and shall constitute an effective, binding agreement on the part of each of the undersigned.

18. Employee may accept this Agreement by fully executing it and returning it no earlier than Employee's termination date and no later than 60 days following Employee's termination date. After executing this Agreement, Employee shall have seven days to revoke this Agreement by indicating his/her desire to do so in writing, addressed to HP, Attention: Workforce Management Programs, 5400 Legacy, Mail Stop: H1-6F-61, Plano, Texas 75024. The effective date of this Agreement shall be the eighth day following Employee's signing of the Agreement. If Employee does not accept this Agreement within the time period described above, or if Employee revokes this Agreement during the seven-day revocation period, this Agreement shall be null and void and HP shall have no obligation to make any payments or provide any benefits under the Plan.

**IN SIGNING THIS AGREEMENT, EMPLOYEE FURTHER STATES THAT HE OR SHE HAS BEEN ADVISED IN WRITING TO HAVE AN ATTORNEY REVIEW THIS AGREEMENT AND HAS HAD THE OPPORTUNITY TO CONSULT WITH AN ATTORNEY OF HIS OR HER CHOICE, THAT HE OR SHE HAS CAREFULLY READ THIS AGREEMENT, THAT HE OR SHE HAS HAD AMPLE TIME TO CONSIDER ITS CONSEQUENCES, THAT HE OR SHE FULLY UNDERSTANDS ITS FINAL AND BINDING EFFECT, THAT THE ONLY PROMISES MADE TO INDUCE HIM OR HER TO SIGN THIS AGREEMENT ARE THOSE STATED ABOVE, AND THAT HE OR SHE IS SIGNING THIS AGREEMENT VOLUNTARILY.**

Employee Signature: _____

Printed Name: Kilricanos A Vieira

Employee Number: ████████

Mailing Address: ████████

Employee Email: ████████
(We will email you in case there is an issue with this Release Form)

Employee Telephone: ████████

Date: July 22, 2012   (Please note: This date can be no earlier than your termination date).

Hewlett-Packard Company

Date Received

REC'D JUL 25 2012



EXHIBIT
10-4-13
6
Vieira

CONFIDENTIAL                                                                 HP00001138

**WAIVER AND GENERAL RELEASE AGREEMENT**
**(For Use with HP Workforce Reduction Plan)**



**Employee Name:** Vieira, Kilricanos A.
**Employee Number** 

This Waiver and General Release Agreement ("Agreement") is entered into between Hewlett-Packard Company (including its subsidiaries, affiliated companies, successors and assigns) ("HP" or the "Company") and Vieira, Kilricanos A. ("Employee"). This Agreement is being entered into in the context of Employee's termination of employment with the Company and the receipt of certain severance benefits subject to the terms and conditions set forth herein.

The terms of the Agreement are:

1. It is acknowledged that Employee's employment by HP or any of its subsidiaries terminated on Employee's designated termination date: June 15, 2012.

2. Both Employee and HP are entering into this Agreement as a way of concluding the employment relationship between them and settling voluntarily any dispute or potential dispute that Employee has or might have with HP, whether known or unknown at this time. This Agreement is not, and should not be construed, as an allegation or admission on the part of either Employee or HP that either has acted unlawfully or violated any state or federal law or regulation.

3. In return for Employee's agreeing to the release set forth in this Agreement, HP agrees to provide Employee the Cash Severance Payment and other benefits associated with the Hewlett-Packard Company Workforce Reduction Plan (the "Plan") by direct deposit or check issued approximately 60 days after Employee's termination date on HP's regular pay cycle. All payments and other benefits under this Agreement are subject to applicable employment and income taxes and other required withholdings. The parties recognize that this payment exceeds any amounts to which Employee would otherwise be entitled under existing HP policies or practices or otherwise.

4. The exercise of any stock options shall continue to be subject to the terms and conditions of the stock option plan(s) and agreements pursuant to which such options were issued, including any modification to the treatment of such stock options in the event of termination under a workforce reduction plan provided by the HP Board of Directors (or its delegate), from time to time. Regardless of whether those plans, agreements or actions of the HP Board (or its delegate) provide Employee with the opportunity to exercise options following termination of employment, Employee shall be solely responsible for tracking applicable option expiration dates.

5. In return for the Cash Severance Payment and other benefits associated with the Plan, Employee, for himself or herself, and his or her spouse, heirs, executors, representatives and assigns, forever releases, discharges, and agrees to hold harmless HP and its subsidiaries and affiliated companies and their respective shareholders, directors, officers, managers, agents, employees, attorneys, representatives, and assigns from any and all claims, actions and causes of action arising at any time through the date Employee signs this Agreement. Such potential claims **include but are not limited to:**

5.1. Any claims relating to employment discrimination or harassment based on race, color, sex, age, national origin, religion, disability, pregnancy, sexual orientation, or otherwise, whether or not arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, the Age Discrimination in Employment Act (ADEA), the Rehabilitation Act of 1973, the Americans With Disabilities Act, the Older Workers Benefit Protection Act, the California Fair Employment and Housing Act, any amendments to the foregoing, or any other federal, state, local or foreign law, statute, regulation or order relating to employment discrimination or terms and conditions of employment;

5.2. Any claims relating to pay (including but not limited to any claims for overtime pay under state or local law), benefits or leaves of absence, whether or not arising under the Family and Medical Leave Act, the Employee Retirement Income Security Act, the Worker Adjustment and Retraining Notification Act or any similar laws enacted in any jurisdiction;

5.3. Any "wrongful termination" claims, and any other claims relating to employment or termination of employment by HP, whether or not based upon any oral, written, express or implied employment contract or agreement; any implied covenant of good faith and fair dealing; any alleged violation of public policy; compliance (or lack of compliance) with any HP policy, procedure, practice, or guideline; or any federal, state, local or foreign law, statute, regulation or order, whether or not relating to labor or employment;

5.4. Any claims alleging wrongful acts resulting in physical injury, emotional distress, and damage to reputation or any other damage;

5.5. Any claim for attorneys' fees, interest, or costs; and

5.6. Any claims relating to any other matter or event occurring prior to the execution of this Agreement whether or not brought before any judicial, administrative or other tribunal.

5.7. Employee further agrees he or she will not bring or participate in any class action or collective action against HP which asserts, in whole or in part, any claim(s) which arose through the date Employee signs this agreement, whether or not such claims are specifically covered by this Agreement.

6. The claims released pursuant to this Agreement include all claims against individual employees or agents of HP or its subsidiaries whether acting within the scope of their duties, individually or in any other capacity. This Agreement does not, and shall not be construed as an attempt to, waive or release any claim or right that cannot lawfully be waived or released by private agreement between Employee and HP. Employee promises never to file a lawsuit, demand, action or otherwise assert any claims that are released by this Agreement (other than a claim filed solely for the purpose of challenging the validity of the waiver of claims under the Age Discrimination in Employment Act). If Employee breaks the promises he or she makes in this Agreement, Employee agrees he or she will repay to HP the Cash Severance Payment and other benefits associated with the Plan.

7. In entering into this Agreement, the parties intend it to be a full and final settlement of all matters, whether or not disputed at present that could have arisen between them. Employee understands and expressly agrees that this Agreement extends to all claims of every nature and kind whatsoever, known or unknown, suspected or unsuspected; and accordingly Employee waives all rights under Section 1542 of the California Civil Code and/or any similar statute or law of any other jurisdiction.

Such section reads as follows:

> **Section 1542: A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

8. Employee and HP fully understand that if the facts with respect to this Agreement are later found to be different from the facts now believed to be true, Employee and HP expressly accept and assume the risk of such possible differences of fact, and agree that this Agreement shall be and remain effective notwithstanding such differences. Employee agrees that the consideration set forth above fully compensates him or her for this risk, and that Employee will have no legal recourse against HP in the event of such differences.

9. Employee represents that he/she does not have in his/her possession any specifications, drawings, sketches, notes, reports, proposals, computer disks, sales reports, customer lists, marketing or business plans, or copies of them, or other documents or materials, tools, equipment or other property belonging to HP. Employee acknowledges that during the course of employment with HP, he/she has had access to and acquired knowledge of trade secrets and confidential and proprietary business information relating to HP and/or third parties such as suppliers and customers. Employee agrees to maintain all such information in strict confidence and to abide by the terms of any confidentiality and/or proprietary information agreement that he/she has entered into with HP. Nothing in this Agreement is intended to limit any remedy of HP under applicable law in connection with protection of its intellectual property.

10. Employee agrees that he/she will not make or publish, either orally or in writing, any disparaging statement regarding HP or in any way impede or interfere with HP's customer relationships including, without limitation, any

statements made by Employee in any online forum, blog or social media site.

11. Employee agrees to fully cooperate with and assist HP at its expense in the prosecution or defense of any patent applications and in resolving any and all claims, disputes, investigations, lawsuits, or other legal proceedings related to issues that arose or occurred during the course of Employee's employment with HP.

12. For employees age 40 and over, the Older Workers Benefit Protection Act requires that HP provide Employee with the job titles and ages of all employees covered by this severance program within Employee's decisional or organizational unit, and the ages and job titles of all individuals in the same decisional or organizational unit who were not selected for the program. This information is set forth in the ADEA notice delivered with this Agreement. Employee acknowledges receipt of this information.

12.1. Employee acknowledges that he or she has had at least 45 calendar days to consider this Agreement before the date he/she is obligated to sign it.

12.2. Employee agrees that he/she is aware of the contents and significance of all the provisions of this Agreement and that he/she has decided to enter into it voluntarily.

12.3. Employee may revoke this Agreement within seven calendar days after this Agreement is signed. Employee and HP agree that this Agreement shall not become effective or enforceable until this seven-day revocation period has ended.

12.4. Employee acknowledges that he/she has been advised in writing to have this Agreement reviewed by counsel prior to signing it, and that he/she has had an opportunity to consult with counsel, if he/she chooses to do so;

12.5. Employee understands that rights or claims under the Age Discrimination in Employment Act of 1967 (29 USC § 621 et seq.) that may arise after the date this Agreement is signed are not waived; and

12.6. Employee understands that nothing in this Agreement shall be construed to prohibit Employee from filing a charge or complaint, including a challenge to the validity of this Agreement, with the EEOC or participating in any investigation or proceeding conducted by the EEOC.

13. Employee understands and agrees that he or she has no right to be employed or retained by HP as an employee or contingent worker at any time in the future, and Employee shall not at any time institute or join in any claim or action against HP for failure to employ or retain him or her. HP may in its sole discretion consider engaging Employee as an employee or contingent worker in accordance with its policies regarding such matters, as in effect at the time such engagement is considered. Any engagement of Employee as an employee or contingent worker in violation of such policies shall be voidable at any time, at HP's option.

14. This Agreement shall be binding upon Employee and HP and upon their heirs, administrators, representatives, executors and assigns. Employee expressly warrants that he/she has not transferred to any person or entity any rights, causes of action or claims released in this Agreement.

15. This Agreement shall be interpreted in accordance with the plain meaning of its terms and not strictly for or against either HP or Employee. Should any provision of this Agreement be determined by any court to be wholly or partially invalid or unenforceable, the validity and enforceability of the remaining provisions shall not be affected, and the unenforceable or invalid provision shall be deemed not to be a part of this Agreement.

16. Both employee and HP understand and agree that, except for matters relating to intellectual property, trade secrets, confidential or proprietary information, this Agreement represents the entire agreement and understanding between them concerning Employee's separation from HP, and supersedes and replaces all prior and contemporaneous agreements and understandings concerning Employee's relationship with HP and compensation by HP. Employee shall continue to be bound by any agreements previously made with HP or any entity HP is successor to relating to intellectual property, trade secrets and confidential or proprietary information. This Agreement may only be amended in a writing signed by Employee and a Senior Vice President of HP.