**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ERIC BENEDICT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>HEWLETT-PACKARD COMPANY,<br><br>　　　　Defendant. | Case No. 13-cv-00119-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO ENFORCE COLLECTIVE ACTION WAIVERS**<br><br>[Re: ECF 317] |

Defendant Hewlett-Packard ("HP") seeks to enforce collective action waivers signed by 110 opt-in class/collective action members. HP argues that as part of a pre-existing workforce reduction plan, it offers additional severance payments to laid-off workers who waive their ability to participate in collective or class actions. Of laid-off workers who have accepted the severance payment, 110 were members of the conditionally-certified FLSA collective action in this case. Defendant moves to enforce those waivers and to dismiss those opt-in class members from the FLSA collective action and any class certified under Rule 23, but without prejudice to their individual claims. Notice of Mot. at 1, ECF 317. Plaintiffs oppose.[1] Opp., ECF 326. For the reasons set forth below, the Court GRANTS Defendant's motion.

**I.　BACKGROUND**

　　**A. HP's Waivers**

Four years before this case began, HP began administering workforce reduction plans ("WFR Plans") which are employee welfare benefit plans as defined in § 3(1) of the Employee

---

[1] The Court disregards any arguments that Plaintiffs presented at the hearing that were not identified in their Opposition.

Retirement Income Security Act of 1974 ("ERISA"). Alexander Decl. ¶¶ 3, 18, 23, ECF 317-4. HP adopted its current WFR plan on May 23, 2012 as part of a multi-year restructuring plan that has involved the elimination of thousands of positions ("2012 Plan"). The 2012 Plan covers all U.S. employees. *Id.* ¶ 3. Prior to the 2012 Plan, HP had two plans that collectively covered all U.S. employees. *Id.* ¶¶ 18, 23.

The 2012 Plan offers a laid-off worker the opportunity to obtain a cash severance payment—separate from the benefits to which the employee may otherwise be entitled as a matter of state or federal law—in exchange for the employee waiving certain claims and procedural devices, including class and collective actions. In relevant part, the waiver states,

> "In return for the Cash Severance Payment and other benefits associated with the plan, Employee . . . further agrees he or she will not bring or participate in any class action or collective action against HP which asserts, in whole or in part, any claim(s) which arose through the date the Employee signs this agreement, whether or not such claims are specifically covered by this Agreement."

Exh. 14 § 5.7, ECF 317-5 (2012 version); Exh. 15 § 5.7, ECF 317-5 (2013 version).

The 2014 version includes the same language, but also incorporates an arbitration clause for any and all disputes arising out of the employee's employment or separation. Exh. 16 §§ 5.7, 13, ECF 317-5 (2014 version). The agreements also contain a provision that permits HP to seek return of the severance payments in the event that any portion of the agreements is breached ("Tender Back Provision"). Exh. 14 § 6; Exh. 15 § 6; Exh. 16 § 6.

**B. This Case**

Plaintiff Eric Benedict initiated this action on January 10, 2013. ECF 1. On February 13, 2014, the Court conditionally certified Plaintiffs as an FLSA collective action. ECF 175. Notice of conditional certification was mailed on or about March 9, 2014 and 1,327 individuals filed Consents to Join. Sagafi Decl. ¶ 4, ECF 327.

Plaintiffs' counsel first learned of the waivers through inquiries from Opt-In Plaintiffs who had received WFR notices from HP accompanied by severance agreements. Sagafi Decl. ¶5. Plaintiffs' counsel then contacted Defendant's counsel with concerns about the waivers and their effect on this litigation. *Id.* ¶ 6. The parties entered into a stipulation pursuant to which they agreed

2

to meet and confer regarding the enforceability of the waivers and would present the issue to the Court for resolution if they were unable to agree. *See* Order Granting Stipulation ¶ 1, ECF 251. The Stipulation outlines the effects that the Court's finding of enforceability or unenforceability would have. *Id.* ¶¶ 3, 4. By agreement of the parties, if the Court finds the waivers unenforceable, any opt-in class member's prosecution of FLSA claims in this action will not trigger the Tender Back Provision. *Id.* ¶ 4a.

HP also agreed (a) to provide a supplemental information insert to opt-ins and potential class members, expressly informing them of the effect of the release on their ability to participate in this lawsuit; and (b) to notify Plaintiffs' counsel about which opt-ins were subject to workforce reduction prior to those employees receiving the offer of waiver and release. *See* ECF 269. Based on HP's records, 110 members of the conditionally-certified FLSA collective action returned such waivers and received the related severance payment. Mot. at 1, n.1. *See also* ECF 317-3, Rowe Decl. ¶ 4.

On March 29, 2016, the Court denied Plaintiffs' Motion for Class Certification. ECF 388. Defendant now moves the Court to enforce the waivers. ECF 317.[2]

## II. DISCUSSION

Defendant asks the Court to declare its waivers enforceable and to dismiss opt-in collective action members who accepted the severance payments, without prejudice to their individual claims. Defendant argues that this is the correct result because a collective action under the FLSA is a procedural device, not a substantive right, and that the ability to join one is therefore waivable.

---

[2] Defendant additionally seeks enforcement of the waivers against any Rule 23 class members. Because the Court denied Plaintiffs' motion for certification pursuant to Rule 23, however, this portion of the motion is moot.

In addition, in opposing Defendant's Motion, Plaintiffs appear to seek affirmative relief. They ask the Court to strike all waivers obtained during the course of this litigation and to strike all waivers that do not contain an arbitration clause, regardless of when they were obtained. Opp. at 1. In the alternative, Plaintiffs request that the Court (1) strike all waivers obtained from Opt-In Plaintiffs, (2) require issuance of a corrective notice to all potential Rule 23 class members who signed waivers before the Disclosure Agreement was implemented, and (3) allow those Rule 23 class members a reasonable time to reconsider whether they wish to withdraw any assent to the waivers and the agreement in which they are contained. *Id.* Because an opposition is not an appropriate vehicle for seeking relief, the Court does not address Plaintiffs' requests for affirmative relief.

3

Mot. at 5. Defendant additionally contends that its waiver must be enforced under contract law and, finally, that it did not violate any Rules of Professional Conduct in acquiring the waivers. Mot. at 9-10. The Court addresses each of these arguments in turn below.

### A. FLSA

In seeking to enforce its waivers, Defendant concedes that the FLSA prohibits the waiver of substantive wage-and-hour rights. Mot. at 5. *See Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 740 (1981) ("This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the [FLSA]."). HP asserts, however, that participation in a collective action is a procedural mechanism, not a non-waivable substantive right. Mot. at 5. The parties sharply disagree as to whether participation in a collective action can be waived. The Ninth Circuit has not addressed this issue, although a number of other circuits have, as well as this district.

Congress enacted the FLSA "to protect certain groups of the population from substandard wages and excessive hours." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). To that end, "standards of minimum wages and maximum hours were provided." *Id.* at 707. The FLSA explicitly provides that "any one or more employees" may bring an action against an employer "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C.§ 216(b). Section 16(b) also provides, "The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor . . ." *Id*. This is the language under contention here.

Defendant argues that neither this language nor the statute's legislative history suggests that Congress meant to establish a nonwaivable right to a class action through the FLSA. Mot. at 6. Defendant relies on opinions from the Fourth and Eleventh Circuits to reach this conclusion.

First, Defendant cites to *Adkins v. Labor Ready, Inc.,* 303 F.3d 496, (4th Cir. 2002). In *Adkins*, the plaintiff argued that the arbitrability provision of his employment contract was unenforceable because it barred him from bringing a collective action under the FLSA. *Id.* at 503. The Fourth Circuit disagreed, explaining that "'simply because judicial remedies are part of a law

4

does not mean that Congress meant to preclude parties from bargaining around their availability.'" *Id.* at 503 (4th Cir. 2002) (quoting *Johnson v. West Suburban Bank,* 225 F.3d 366, 377 (3d Cir.2000)).

In addition, Defendant relies on *Walthour v. Chipio Windshield Repair, LLC,* 745 F.3d 1326 (11th Cir.) *cert. denied*, 134 S. Ct. 2886 (2014). In *Walthour,* the Eleventh Circuit similarly considered whether an arbitration agreement that waives an employee's ability to bring a collective action under the FLSA is enforceable. *Id.* at 1327. Before holding that such an agreement was enforceable, the Eleventh Circuit reviewed the FLSA's text and legislative history. *Id.* at 1334. The court noted that "the FLSA contains no explicit provision precluding arbitration or a waiver of the right to a collective action under § 16(b)." *Id.* at 1334. The court also concluded that "the FLSA's legislative history supports only a general congressional intent to aid employees who lacked sufficient bargaining power to secure for themselves a 'minimum subsistence wage'"—not the specific intent to do so through a collective action. *Id.* at 1335.

Plaintiff nevertheless responds that the text of the FLSA expressly provides individuals with the right to participate in a collective action. Opp. at 7. As noted above, § 16(b) of the FLSA provides, "The *right* provided by this subsection to bring an action by or on behalf of any employee, and the *right* of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor . . ." 29 U.S.C. § 216(b) (emphasis added).

Defendant argues that the Supreme Court has rejected reading identical language in the Age Discrimination in Employment Act ("ADEA") to imply the existence of a substantive right to collective actions. Mot. at 6. The ADEA expressly adopts the language set forth in FLSA § 16(b). *See* 29 U.S.C. § 626(b). The Supreme Court considered the ADEA's language in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) to determine whether or not an age discrimination claim under the ADEA could be subjected to compulsory arbitration. *Id.* at 23. The Court held that an ADEA claim could be subjected to arbitration "even if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator." *Id.* at 32 (internal citation omitted). "[T]he fact that the ADEA provides for the possibility of bringing a

5

collective action does not mean that individual attempts at conciliation were intended to be barred.'" *Id.* (quoting *Nicholson v. CPC Int'l Inc.,* 877 F.2d 221, 241 (3d Cir. 1989) (Becker, J., dissenting)).

This conclusion, determined on the basis of identical statutory language and a similar procedural scheme, strongly suggests that a collective action is a procedural device rather than a substantive right. *See also Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) ("Nor does congressional approval of Rule 23 establish an entitlement to class proceedings for the vindication of statutory rights."). As the Second Circuit explained, "Supreme Court precedents inexorably lead to the conclusion that the waiver of collective action claims is permissible in the FLSA context." *Sutherland v. Ernst & Young LLP,* 726 F.3d 290, 297 (2d Cir. 2013). *See also Walthour*, 745 F.3d at 1334 ("plaintiffs argue that the 'right' to a collective action is a non-waivable, substantive right. However, the Supreme Court has already rejected a similar argument in *Gilmer*.").

If the Court were to agree with this reading of the FLSA, it would join every other court in this district that has considered the enforceability of collective action waivers. *See Birdsong v. AT & T Corp.*, No. C12-6175 TEH, 2013 WL 1120783, at *5 (N.D. Cal. Mar. 18, 2013) (enforcing waiver of FLSA collective action because plaintiff signed the waiver after her employment had ended, after she attested that no sums were owed outright to her, and in exchange for severance benefits); *Lu v. AT & T Servs., Inc.*, No. C 10-05954 SBA, 2011 WL 2470268, at *3 (N.D. Cal. June 21, 2011) (enforcing waiver because "[t]he right to bring a collective action under the FLSA is a procedural—not a substantive one."); *Kelly v. City & Cty. of San Francisco*, No. C 05-1287 SI, 2008 WL 2662017, at *4 (N.D. Cal. June 30, 2008) (enforcing collective action waiver because "while individual FLSA rights cannot be waived, a party may waive the right to bring a collective FLSA action").

As referenced above, the Ninth Circuit has not spoken on this issue. However, enforcement of collective action waivers has been approved by the Second, Third, Fourth, Fifth, Eighth, and Eleventh Circuits. The Court has summarized a number of those cases above, and others rely on the same rationale—that a collective action is a procedural device, not a substantive right. *See*

6

*Sutherland,* 726 F.3d at 296-97; *Walthour,* 745 F.3d at 1335; *Adkins, Inc.,* 303 F.3d at 503; *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004) ("we reject the [appellants'] claim that their inability to proceed collectively deprives them of substantive rights available under the FLSA."); *Vilches v. The Travelers Companies, Inc.*, 413 F. App'x 487, 494 (3d Cir. 2011) (citing *Adkins*, 303 F. 3d at 503).

The Eighth Circuit offers the additional—and persuasive—argument that "[e]ven assuming Congress intended to create some 'right' to class actions, if an employee must affirmatively opt in to any such class action, surely the employee has the power to waive participation in a class action as well." *Owen v. Bristol Care, Inc.,* 702 F.3d 1050, 1052-53 (8th Cir. 2013).

Plaintiffs argue that the Court must not be swayed by the weight of this precedent, as each of these cases was decided in the context of arbitration, where the FLSA's policy must be weighed against the FAA's strong policy in favor of arbitration. Opp. at 7. Plaintiffs argue that, instead of following the other courts in this district and six appellate courts, the Court should follow the Sixth Circuit's decision in *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 590-91 (6th Cir. 2014), *cert denied*, 135 S.Ct. 1745 (2015)—the only opinion to consider the FLSA without the countervailing weight of the FAA.

In *Killion*, the district court had upheld the validity of waivers that precluded former employees from participating in a collective action and certified a collective action consisting only of those employees who did not sign the waiver. *Id.* at 577. The Sixth Circuit reversed, finding the waivers to be unenforceable because, without an arbitration clause, the waiver offered no countervailing federal policy to outweigh the FLSA's policy that "[a]n action to recover [for unpaid overtime pay] . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *Id.* at 580-81, 592 (quoting 29 U.S.C. § 216(b)). Applying that logic here, Plaintiffs argue that because no arbitration agreement was in place before 2014, any waivers signed before then are unenforceable under the FLSA.

Having carefully reviewed the parties' arguments, the case law, and the text of the FLSA, the Court agrees with Defendant. The Sixth Circuit's reasoning in *Killion* is unpersuasive to this

Court because, contrary to Plaintiffs' argument and the rationale *Killion* itself provides, other circuits have found waivers enforceable not because of the strong policy in favor of the FAA, but rather, as discussed above, because the FLSA's text, scheme, and legislative history reveal that the FLSA "does not set forth a non-waivable substantive right to a collective action." *Walthour*, 745 F.3d at 1335. That conclusion holds regardless of whether or not the waiver is made in the context of arbitration.

Accordingly, the Court finds that the ability to participate in a collective action constitutes a procedural tool rather than a substantive right. As discussed above, the FLSA contains no provision explicitly precluding the waiver of a collective action; in fact, as the Eighth Circuit noted, an individual must affirmatively opt in to a collective action. In addition, the Court finds the Supreme Court's analysis of identical language in *Gilmer* particularly persuasive. Because Defendant is not seeking to enforce a blanket waiver of Plaintiffs' FLSA rights and instead asks for dismissal of the opt-in plaintiffs without prejudice to their individual claims, the Court finds that no substantive—or non-waivable—right is in danger of being lost.

### B. Contract Law

In addition, Defendant argues that the collective action waivers are enforceable on an ordinary contractual basis because laid-off workers had an opportunity to consider the agreement and received separate consideration for their assent. 2014 WL 5092878. Mot. at 9. Plaintiff does not oppose this argument.

### C. California Rules of Professional Conduct

Finally, anticipating one of Plaintiffs' arguments, Defendant argues that HP's counsel has not improperly communicated with represented parties or violated the California Rules of Professional Conduct ("CRPC") and urges the Court not to find the waivers unenforceable on those bases. Mot. at 9. Defendant explains that the severance agreements have been offered to all employees subject to the WFR without discrimination and pursuant to HP's ERISA plans. Mot. at 10. The plans have been administered by managers and HP's human resources ("HR") personnel and without the involvement of Defendant's counsel. Mot. at 9. *See* Alexander Decl. ¶¶ 2-3, 4-7, 9-14, 16-17, 19-23, 25-26, 28. Thus, Defendant argues that HP's counsel has not violated any

1 prohibition on communication with Plaintiffs, nor has it misused the waivers to obtain an unfair
2 advantage in this case.

3      Plaintiffs respond that Defendant violated CPRC 2-100(A) by contacting opt-in Plaintiffs
4 about their rights in this litigation. CPRC 2-100(A) provides that, "[w]hile representing a client, a
5 member shall not communicate directly or indirectly about the subject of the representation with a
6 party the member knows to be represented by another lawyer in the matter, unless the member has
7 the consent of the other lawyer." CPRC 2-100(A) is designed to "shield[] a party's substantive
8 interests against encroachment by opposing counsel." *United States v. Lopez*, 4 F.3d 1455, 1458-
9 1459 (9th Cir. 1993). Plaintiffs argue that the fact that HP obtained the waivers through HR and
10 not directly through counsel is irrelevant because counsel was using HR to create a tool for this
11 litigation. Opp. at 4. To support this contention, Plaintiffs rely on *Partida v. Union Pac. R.R. Co.*,
12 221 F.R.D. 623 (C.D. Cal. 2004).

13      In *Partida*, the plaintiff sued his employer regarding a workplace injury. *Id.* at 625. While
14 aware that the plaintiff was represented by counsel, the employer wrote to the plaintiff *ex parte*
15 and ordered him to appear for a medical examination or face discipline and possible termination.
16 *Id.* The plaintiff's counsel then contacted the employer and stated that the employee would appear
17 pursuant to certain conditions. *Id.* The employer refused and then set a disciplinary hearing for the
18 plaintiff's failure to submit to the *ex parte* medical examination. *Id.* at 626.

19      The plaintiff argued that the employer's *ex parte* communications violated CPRC 2-
20 100(A). The employer responded that its attorneys never contacted the plaintiff—rather, the
21 employer's operating department generated the communications and demands—and, therefore,
22 CPRC 2-100(A) did not apply.

23      The court was not persuaded by the distinction the employer drew because "[p]rior history
24 demonstrates that these tactics [by the employer] may be geared toward obtaining an advantage in
25 litigation rather than meeting any non-litigation related company needs." *Id.* at 629. "At the very
26 least, it is obvious that the contacts in question are made with the knowledge and acquiescence of
27 [the employer's] law department and that any information gained thereby may be used as part of
28 their litigation strategy." *Id.* at 629.

The Court finds *Partida* inapposite here. As Defendant explains, its counsel did not direct HR to offer waivers to obtain an advantage in this litigation. Defendant argues that HP did not create these waivers or use the WFR process to target collective action members, as they comprise only 1.5% of employees who have been laid off pursuant to the WFR since this lawsuit began. Mot. at 10. *See* Rowe Decl. ¶¶ 3-4. Nor, Defendant contends, is there any reason to find that the waivers were intended to interfere with this case, as 73% of opt-ins have continued to waive their ability to join the collective action in return for severance pay even after receiving supplemental information about this lawsuit. Mot. at 10. *See* Rowe Decl. ¶¶ 3, 8. Plaintiffs argue that 73% is a meaningful number, as it means that 27% of opt-in Plaintiffs did not accept the severance payment. However, the Court finds that argument unpersuasive. Instead, a comparison of the number of employees laid off pursuant to HP's WFR plan—thousands—and the number of Opt-In Plaintiffs who signed waivers—110—highlights the implausibility of Plaintiffs' contention that, like the employer's counsel in *Partida*, HP's counsel directed HR to institute the waiver for the purposes of this litigation. Moreover, Plaintiffs offer no evidence to support their charges. Thus, the Court finds that Defendant's counsel has not violated CPRC 2-100.[3]

Accordingly, the Court GRANTS Defendant's motion to enforce the collective action waivers and to dismiss all opt-in plaintiffs who signed such a waiver, without prejudice to their individual claims.

Dated: March 29, 2016

BETH LABSON FREEMAN
United States District Judge

---

[3] The parties additionally dispute whether or not HP has engaged in improper class member communications. Mot. at 10; Opp. at 4-7; Reply at 4-5. Because Plaintiffs make this argument with regard to the enforceability of the waivers against Rule 23 class members only and the Court recently denied certification of any such class, this dispute is moot, as noted in footnote 2. For the same reason, the Court disregards the supplemental authority provided by Plaintiffs after the hearing, *see* ECF 384, and OVERRULES Defendants' objection, *see* ECF 385, as moot.